# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THERESA MARIE SIMEONE, Personal     :
Representative of the Estate of Albert Francis     :
Simeone, Jr., Deceased, and THERESA MARIE     :   CIVIL ACTION NO. 02CV4852
SIMEONE, In Her Own Right, and     :
MARY ANN LENGYEL, Personal     :
Representative of the Estate of George Lengyel,     :
Deceased, and MARY ANN LENGYEL,     :   JURY TRIAL DEMANDED
In Her Own Right     :
    :
           Plaintiffs,     :
    :
       v.     :
    :
BOMBARDIER CORPORATION GmbH, et al.     :
    :
           Defendants.     :

---

## BRIEF IN SUPPORT OF DEFENDANT
## BRP-ROTAX GMBH & CO. KG's  MOTION TO DISMISS
## PLAINTIFFS' COMPLAINT FOR LACK OF JURISDICTION and
## DEFENDANTS BOMBARDIER INC.'S  AND BOMBARDIER CORPORATION'S
## MOTION FOR SUMMARY JUDGMENT

---

Robert J. Kelly, Esq.
Of Counsel

Suna Lee, Esq.
Kelly A. Waters, Esq.
On the Brief

## Table of Contents

                                                                                        Page

Table of Authorities ........................................................................................... iii

Preliminary Statement........................................................................................ 2

Statement of Facts.............................................................................................. 4

Legal Argument

Point I

Standard of Review for Motion to Dismiss
For Lack of Personal Jurisdiction: Plaintiff
Bears the Burden of Proof................................................................................... 26

Point II

Governing Law: Plaintiff Must Show Sufficient
Nexus Between the Non-Resident Defendant and
Forum State to Justify the Court's Exercise of
Personal Jurisdiction .......................................................................................... 27

Point III

Plaintiffs Cannot Prove Specific Jurisdiction
Over Rotax as Rotax Had No Contacts with
Pennsylvania ....................................................................................................... 36

Point IV

Plaintiffs Cannot Prove General Jurisdiction
Over Rotax as Rotax Had No Continuous or
Systematic Contacts with Pennsylvania............................................................. 38

Point V

Plaintiffs Cannot Rely Upon the Stream of Commerce
Theory for Proving Jurisdiction Over Rotax Since Plaintiff
Cannot Meet Any of the Three *Asahi* Tests...................................................... 39

Point VI

A Finding of Lack of Personal Jurisdiction is Consistent

380631.1

With Previous Judicial Determinations ........................................................................... 42

Point VII

Standard For Review For Summary Judgment .......................................................... 44

Point VIII

Defendants Bombardier Inc. and Bombardier
Corporation Are Entitled to Summary Judgment
As They Did Not Design, Manufacture, Sell or
Control The Subject Product ........................................................................................ 44

Conclusion .................................................................................................................... 47

380631.1

## TABLE OF AUTHORITIES
## FEDERAL CASES

*Affatato v. Hazet-Werk,*
2003 U.S.Dist., LEXIS 21067,
(E.D. Pa. November 20, 2003)............................................................................33

*Applied Technology International, Ltd. v. Goldstein,*
No. 03-848, 2004 U.S. Dist. LEXIS 21219 ...............................................26,28,31

*Asahi Metal Industry Company v. Superior Court of California,*
Solano County, 480 U.S. 102 (1987)..................................................................33

*BP Chem. Ltd. V. Formosa Chec. & Fibre Corp.,*
229 F.3d 254 (3d Cir. 2000)..........................................................................28,32

*Balczon v. Machinery Wholesalers,*
supra, 933 F. Supp. at 905 (W. Dist. Pa. 1998) ................................................45

*Burger King v. Rudzewicz,*
471 U.S. 462 (1985).........................................................................................27

*Celotex v. Catrett,*
477 U.S. 317 (1986).........................................................................................44

*Connors v. Fawn Mining Corp.,*
30 F.3d 483 (3d 1994)......................................................................................44

*Creative Waste Mgmt., Inc. v. Capitol Environmental Services, Inc.,*
No. 04-1060, 2004 U.S. Dist. LEXIS 21497
(E.D. Pa. October 22, 2004)..........................................................................26,28

*Dayhoff Inc. v. H.J. Heinz Co.,*
86 F.2d 1287, (3d Cir. 1996)............................................................................26

*Gans v. Mundy,*
762 F.2d 338 (3d Cir. 1985).........................................................................31,44

*Guyton v. A.M. General,*
No. 01-cv-3883, 2001 U.S. Dist. LEXIS 21012, ...............................................31

*H.A.S. Protection, Inc. v. Senju Metal Industry Co., Ltd.,*
No. 03-1215, 2003 U.S. Dist. LEXIS 25172,
(E.D. Pa. December 15, 2003) .........................................................................32

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408 (1984).........................................................................................28

iii

*IMO Industries v. Kiekert AG,*
155 F.2d 254 (3d Cir. 1998)....................................................................................26,28

*International Shoe Co. v. Washington,*
326 U.S. 310 (1945)..............................................................................................27,36

*LaRose v. Sponco Manufacturing, Inc.,*
712 F. Supp. 455 (D.N.J. 1989) ................................................................................43

*Max Daetwyler Corp. v. R. Meyer,*
762 F.2d 290(3d Cir. 1985)........................................................................................33

*Mellon Bank (East) v. DiVeronica Brothers,*
983 F.2d 551 (3d Cir.1993).........................................................................................30

*NAPA Development Corp., Inc., v. Pollution Control
Financing Authority of Warren County,*
No. 04-3945, 2004 U.S. Dist. LEXIS 22839,
(E.D. Pa. November 10, 2004) ...................................................................................28

*Nichols v. Searle & Co.,*
991 F.2d (4th Cir. 1993)............................................................................................32

*Pennzoil Products Company v. Colelli & Associates, Inc.,*
149 F.3d 197 (3d Cir. 1998).......................................................................................34

*Portella v. Life-Time Truck Products, Inc.,*
127 F.Supp.2d at 658 (E.D. Pa. 2000) ......................................................................31

*Reliance Steel Products v. Watson, Ess, Marshall, Enggas,*
75 F.2d 587 (3d Cir. 1982)..........................................................................................31

*Saudi v. Acomarit Maritime Services, S.A.,*
No. 03-1609, 2004 U.S. App. LEXIS 19443,
(3d Cir. September 17, 2004) .....................................................................................27

*Schiller-Pfeiffer, Inc. v. Country Home Products, Inc.,*
No. 04-cv-1444, 2004 U.S. Dist. LEXIS 24180,
(3d Cir. September 17, 2004) .....................................................................................26

*Scott v. Plante,*
532 F.2d 939 (3d Cir. 1975) .......................................................................................44

*Time Share Vacation Club v. Atlantic Resorts, Ltd.,*
735 F.2d 61 (3d Cir. 1984)..........................................................................................27

iv

**PRELIMINARY STATEMENT**

This is a product liability action arising out of an ultralight aircraft accident, which occurred on July 22, 2000 in Pennsylvania. Defendant BRP-Rotax GmbH & Co. KG f/k/a Bombardier-Rotax GmbH & Co. KG (hereinafter "Rotax"), by and through its attorneys, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, submits this Memorandum of Law in support of its Motion to Dismiss for lack of personal jurisdiction. Rotax is an Austrian corporation with no "minimum contacts" with the Commonwealth of Pennsylvania. Accordingly, as demonstrated in this memorandum of law, there exists no basis for this Court to exercise personal jurisdiction over this non-resident defendant.

Defendants Bombardier Inc. (hereinafter referred to as "Bombardier") and Bombardier Corporation (hereinafter referred to as "BC") also submit this Memorandum of Law in support of its Motion for Summary Judgment dismissing Plaintiffs' Complaint. Bombardier and BC did not design, manufacture, or otherwise distribute or sell the alleged defective engine which is the subject of this litigation. Accordingly, dismissal is warranted against such defendants.

**PROCEDURAL BACKGROUND**

This is a products liability action arising from an ultralight accident that occurred on July 22, 2000, resulting in the death of Francis Albert Simeone and George Lengyel. Plaintiff Theresa Marie Simeone, widow of Albert Francis Simeone, Jr. and Plaintiff Mary Ann Lengyel, widow of George Lengyel, bring this action in their representative capacities. [See Plaintiffs' State and Federal Court Complaints attached to Certification of Robert J. Kelly, Esq., dated December 22, 2004 as Exhibits A and B, respectively.] On or about July 19, 2002, Plaintiffs filed identical Complaints in the United States District Court, Eastern District of Pennsylvania and in the Court of Common Pleas, Philadelphia County. [Exhibits A and B] Thereafter on June

- 2 -

12, 2003, Plaintiffs filed a First Amended Complaint in the United States District Court, Eastern District of Pennsylvania and in the Court of Common Pleas, Philadelphia County.    [See Plaintiffs' First Amended Complaints filed in the Federal and State Courts attached to Kelly Certification as Exhibits C and D, respectively.]  Plaintiffs' state court action was dismissed.

Plaintiffs bring causes of action sounding in strict product liability, negligence, and breach of warranty against Rotax, the alleged designer, manufacturer and seller of the subject aircraft engine; Bombardier Inc.; and Bombardier Corporation; as well as other entities. [See Exhibit C]. Plaintiffs also bring a cause of action for negligence against Jersey Central Power and Light Company; Metropolitan Edison; Pennsylvania Electric Company; GPU, Inc.; GPU Energy, Inc.; and First Energy Corporation in connection with the maintenance of power lines over the York County airport.

On July 28, 2004, Rotax filed Preliminary Objections to Plaintiffs' Complaint for lack of personal jurisdiction and ineffective service of process.  On August 17, 2004, Plaintiffs filed their Answer to the Objections asserting that Rotax has contacts with the Commonwealth of Pennsylvania and jurisdictional discovery should be permitted to prove same. Plaintiffs aver that Rotax has systematic and continuous contact with Pennsylvania by referencing the internet website of Bombardier-Rotax. Plaintiffs also aver that Rotax engines are sold world-wide and are contained in recreational products such as snowmobiles, Sea-Doo personal watercraft and sports boats, ATVs and RM1 carts and motorcycles manufactured by Aprilia and BMW. [¶ 8] Plaintiffs also assert that Rotax's engines are advertised and marketed repeatedly in *Ultralight Flying!*. [¶ 8]. However, Plaintiffs' averments are not supported by affidavits or other competent evidence.

364497.4

Jurisdictional discovery is now complete.  Discovery reveals no facts illustrating Rotax having "minimum contacts" with Pennsylvania sufficient for this Court to exercise personal jurisdiction, and therefore, dismissal is warranted under Fed. R. Civ. P. 12(b)(2).  Moreover, discovery reveals that Bombardier and BC did not design, manufacturer, or otherwise distribute the allegedly defective engine which is the subject of this litigation.

## STATEMENT OF FACTS REGARDING JURISDICTION OVER ROTAX

Plaintiffs allege that personal jurisdiction is proper in the United States District Court for the Eastern District of Pennsylvania in that Rotax conducts "a continuous and systematic portion of [its] business operations in the Commonwealth of Pennsylvania, availing [itself] of the privilege of doing business in this Commonwealth, including the Court of Common Pleas in Philadelphia County." [Exhibit D, ¶ 10.]  However, Defendant Rotax submits that there exists no competent evidence of "minimum contacts" with Pennsylvania sufficient for this Court to exercise personal jurisdiction as illustrated below:

**A.**    **The Non-Resident Defendant Rotax**

Rotax is an Austrian corporation with its principal place of business in Gunskirchen, Austria. [*See* Affidavit of Josef Fürlinger attached to Kelly Certification as Exhibit E, ¶ 3]. Josef Fürlinger, an executive who has been employed by Rotax for the last fifteen years and is currently its director for new business development testified at his deposition as follows:

> Q.    And you agree to testify here on behalf of Bombardier-
>        Rotax today?
>
> A.    Yes.

- 4 -

364497.4

Q.    From this point forward, do you mind if I just use the term "Rotax" to describe Bombardier-Rotax, which I think is now BRP Rotax?

. . .

A.    Yes.

. . .

Q.    Okay. Let's talk about your work history. How long have you been with Rotax?

A.    Since beginning of 1990.

Q.    And what position did you start in?

A.    I started as a product manager.

Q.    And after you were a product manager what did you become?

A.    Vice president for Rotax aircraft engines.

. . .

Q.    What is your current title?

A.    Director of new business development.

. . .

A.    . . . I mean Bombardier-Rotax GmbH is an Austrian corporation fully under Austrian law . . .

. . .

A.    As I said, Rotax is a fully independent Austrian organization.

[See Excerpts of Transcript of Deposition Testimony of Josef Fürlinger, dated December 3, 2004, attached to Kelly Certification as Exhibit F, T8:L8-16; T13:L23-T14:L13; T29:L19-21; T30:L11-12; *See also* Affidavit of Joseph Fürlinger, attached to Kelly Certification as Exhibit E, ¶ 3].

- 5 -

Rotax designs and manufactures engines for, among other purposes, small aircraft, including ultralight aircraft. [Exhibit E. at ¶ 4]. Mr. Fürlinger testified as follows:

> Q.    Okay.   Give me a broad definition of what Rotax does?
>
> A.    Rotax is the manufacturer of a two-stroke and four-stroke gasoline engine.
>
> . . .
>
> Q.    Well, why don't you start with maybe types, and then I can break them down if I want to get more specific.
>
> A.    We make an engine for applications in watercrafts, ATVs, snowmobiles, motorcycles, and some small application in industrial and aircraft.  That's a general.

[Exhibit F, T17:L24-T18:L2-T19:L6; see also Exhibit E, ¶ 4].

Rotax does not sell engines inside the United States. Mr. Fürlinger testified as follows:

> Q.    Could the – could a United States citizen call up Rotax and purchase an engine?
>
> A.    No.
>
> Q.    They would have go through a distributor; is that correct?
>
> A.    Rotax sells only engines to the authorized distributor.
>
> Q.    So if you want to purchase a new engine from Rotax, you have to go through one of the authorized distributors, right?
>
> A.    Correct.
>
> . . .
>
> Q.    Okay.  Other than aircraft engines, are – are Rotax engines incorporated into products that are sold in the United States?
>
> A.    Rotax does not sell any products into the United States.

[Exhibit F, T83:L2-23-T84:L2; see also Exhibit E, ¶ 5].

364497.4

Rotax sells engines ex-works[2] in Austria and ships engines to separate, independently owned and operated companies, not located within the United States.  Mr. Fürlinger testified as follows:

> Q.  Did you review any documents before coming here, other than Exhibit A?
>
> A.  I had a look on the contract of – the distributor contract between Rotax and our authorized distributor, Kodiak, Nassau, Bahamas.
>
> . . .
>
> Q.  Under the definition section on both of these documents there's a reference to territory, and the question is: On the Rotech document it specifically says that Rotech is a distributor for Canada and for the United States as to certified engines, and I believe that the Kodiak document territory refers to Kodiak being a distributor for the United States for uncertified engines, I believe?
>
> . . .
>
> Q.  Okay.  So that would mean that there are two distributors who can certify engines in the United States, at least two that we see right here?
>
> A.  Yes.
>
> Q.  What are Rotax's markets?
>
> . . .
>
> A.  Rotax sells product ex-works to some customers . . . .

[Exhibit F, T9:L24-T10:10; T72:L18-T73:L1;T75:L14-22; *see also* Exhibit E, ¶ 5].

_____

[2] A sale "ex works" means that the seller fulfills his obligation to deliver when he has made the goods available at his premises (i.e. works, factory, warehouse, etc.) to the buyer. In particular, he is not responsible for loading the goods on the vehicle provided by the buyer or for clearing the goods for export, unless otherwise agreed. The buyer bears all costs and risks involved in taking the goods from the seller's premises to the desired destination. This term thus represents the minimum obligation for the seller. ICOTERM.  In this case, title passes in Austria.

- 7 -

Rotax is not authorized, licensed or registered to do business in the Commonwealth of Pennsylvania or even in the United States. [Exhibit E ¶ 7.] Rotax has no contacts with the Commonwealth of Pennsylvania in that it has no agents located in Pennsylvania. [Exhibit E at ¶ 8.] Rotax has no office, warehouse, or other facility in the Commonwealth of Pennsylvania. [Exhibit E at ¶9.] Rotax has never sold its products in the Commonwealth of Pennsylvania. [Exhibit E at ¶ 10.] Rotax has never had a registered agent in the Commonwealth of Pennsylvania and does not maintain an agent for service of process in Pennsylvania. [Exhibit E at ¶ 11.] Rotax derives no income from business conducted in the Commonwealth of Pennsylvania; does not purchase any goods in Pennsylvania; and pays no taxes here. [Exhibit E at ¶ 12.]

Rotax has never entered into a contract in the Commonwealth of Pennsylvania nor performed under any contract in Pennsylvania. [Exhibit E at ¶ 13.] Rotax has never performed services on behalf of any Pennsylvania company or resident and has never performed any services in Pennsylvania. [Exhibit E at ¶ 14.] Rotax has never engaged in solicitation of customers or directed advertising to the Commonwealth of Pennsylvania and maintains no telephone service, bank accounts or credit line in the Commonwealth of Pennsylvania. [Exhibit E at ¶ 15.] Rotax has not designed or manufactured a particular engine for use in Pennsylvania. [Exhibit E at ¶ 16.] None of Rotax's officers, directors, agents or employees reside in the Commonwealth of Pennsylvania and no business decisions are made in Pennsylvania. [Exhibit E at ¶ 19.] Rotax has no interest in real property in the Commonwealth of Pennsylvania and is not involved in any partnership or joint venture located in or doing business in the Commonwealth of Pennsylvania. [Exhibit E at ¶¶ 20-21.]

Regarding the complete absence of any contacts with Pennsylvania, Mr. Fürlinger confirmed as follows at his deposition:

> Q.    Does Rotax own any land in Pennsylvania?
>
> A.    No.
>
> Q.    Licensed to do business in Pennsylvania?
>
> A.    No.
>
> Q.    Any bank accounts in Pennsylvania?
>
> A.    No.
>
> Q.    Any liens against a Pennsylvania resident?
>
> A.    No.
>
> . . .
>
> Q.    Has Rotax ever sued someone in Pennsylvania?
>
> A.    No.
>
> Q.    Does Rotax own any stock in a Pennsylvania corporation?
>
> A.    No.
>
> Q.    Does Rotax own any stock in a Pennsylvania corporation?
>
> A.    No.
>
> Q.    Does Rotax own any stock in any United States corporation?
>
> A.    No.
>
> Q.    Does Rotax lease any property or facilities in Pennsylvania?
>
> A.    No.
>
> . . .
>
> Q.    Has Rotax ever sent representatives to trade shows that were held in Pennsylvania?

364497.4

A.    No.

Q.    Air shows in Pennsylvania?

A.    No.

Q.    Has Rotax ever conducted seminars in Pennsylvania?

A.    No.

**Q.    Has Rotax sent a representative to Pennsylvania to conduct any type of business?**

**A.    No.**

[Exhibit F, T167:L8-T169:L1] [emphasis added].

Mr. Fürlinger further confirmed that Rotax does not even market to the United States. He testified as follows:

Q.    Okay. Does Rotax advertise in the United States national publications?

A.    No.

. . .

Q.    . . . Do you ever do direct marketing in the United States?

A.    No.

Q.    Have you ever sent, either in a block or individually, e-mails to end users in the United States?

A.    No.

Q.    How about the dealers in the United States?

A.    None.

Q.    Have you ever done telemarketing?

A.    No.

[Exhibit F, T163:L1-T164:L4].

- 10 -

**B.**    **The Distribution and Sale of Rotax Engines Through Independent Authorized Dealer Located in Bahamas**

Rotax sells Rotax aircraft engines to authorized distributors.[Exhibit F, T9:L24-T10:10; T72:L18-T73:L1;T75:L14-22; *see also* Exhibit E, ¶ 5].    The distributors are independent business entities.  Mr. Fürlinger testified as follows:

> Q.    And let me ask it this way:  Do you consider the distributors to be intermediaries between the end user and the customer – end user and Rotax?
>
> A.    The distributor is the authorized distributor of Rotax aircraft engines is, as I said before, an **independent** body from Rotax.  He per—he does business for a defined product in a given distribution area.
>
> . . .
>
> Q.    Do you assist the distributors in any manner to increase their sales?
>
> A.    We expect that the distributor will increase the sales.
>
> Q.    Does Rotax give them suggestions on how to do that within their market – their territory?
>
> A.    No.
>
> Q.    Does Rotax provide them with any displays or brochures or anything of that nature that would help them advertise the product in their territory?
>
> A.    No.
>
> Q.    Does Rotax provide to its distributors sample engines that they could use to display at trade shows?
>
> A.    No.

[Exhibit F, T139:L14-23; T145:L5] [emphasis added].

Kodiak Research, Ltd. ("Kodiak"), a separate, independently owned and operated company, located in Nassau, Bahamas, is an authorized distributor of Rotax aircraft engines.

- 11 -

[Exhibit F, T9:L24-T10:10, Exhibit E, ¶5]. Kodiak is authorized to distribute Rotax engines in Central, North and South America. [Exhibit F, T104:L22-25]. There exists no authorized distributor in the United States. Mr. Fürlinger testified as follows:

> Q. Has anyone ever approached you to become a distributor for the United States?
>
> A. Not that I am aware.
>
> Q. Is there any reason why an authorized distributor is not located in the United States?
>
> A. Kodiak is serving an – the territory – for North, middle and South America, and it's a geographically probably the best place to be in the middle. It is a business decision from Kodiak.

[Exhibit F, T116:L3-13].[1]

Once Rotax sells a Rotax aircraft engine to an authorized distributor, the authorized distributor is then responsible for the sale of the engine in its authorized territory. Mr. Fürlinger explained as follows at his deposition:

> Q. . . . So what are your markets? . . .
>
> A. Rotax makes engines for – as I said before, for different applications. And taking the aircraft engines, Rotech established authorized distributors for Rotax aircraft engines worldwide which are having certain defined territories where they can sell products.
>
> . . .

---

[1] In the present case, Plaintiffs' counsel has conceded that the subject engine was sold to a prior Defendant, Interplane, in the Czech Republic through an Austrian distributor and not through Kodiak. [Exhibit I, June 12, 2003 letter from Plaintiffs' counsel, Arthur Wolk, Esq.]

Q.      . . . The idea of the distributors is to serve certain markets;
        is that correct?

A.      Whatever you mean under "serve," that's the meaning of a
        distributor in a broader sense.

[Exhibit F, T76:L23-T77:L3; T79:L20-23].

After selling the engines to an authorized distributor such as Kodiak, Rotax does not
even know the destination of any particular engine and does not exercise any control over the
engine's distribution.  Mr. Fürlinger testified as follows:

Q.      My first question is on No. – Page 2, Paragraph 6, the last
        sentence here where it says, "Rotax does not know the
        destination of any particular engine or exercise any control
        over the engine," when you say you don't know the
        destination of any particular engine, do you mean you don't
        know when that engine leaves where – where it's actually
        going to, any particular end user?  Is that what you mean,
        or do you mean that when you send it to Kodiak, you have
        absolutely no idea where it may end up?

A.      According to the contract and the – we have defined it in
        the contract, Rotax sells ex-works their products to the
        authorized distributor for Rotax aircraft engines, and from
        there on -- that's the transfer of title of the products in
        Austria.  They will take possession of the product in
        Austria.  From there on we have no control over how the
        transport or where it – the product goes.

        . . .

Q.      So you know that – you know Kodiak's territory but yet
        you don't know where the product will be distributed to?

A.      What we know is that we sell the product ex-works from
        here to transfer of the title to our authorized distributor, in
        this case to Kodiak Research, Nassau, Bahamas; and he is
        then responsible for the territory and for everything else
        what happens.  So we have no control over where the
        product goes.  It may end up in this territory in the given
        distribution area or may end up somewhere else.

        . . .

- 13 -

> Q.    So you are saying once you leave the factory you don't
>       know where they go?
>
> A.    We have no control over where these products may going
>       to end up.

[Exhibit F, T76:L23-T77:L3; T79:L20-23; T84:L20-23 ].

### 1.    Kodiak Authorized Service Centers in the United States – None in Pennsylvania

Kodiak has its own network of authorized service centers in the United States.    Mr.

Fürlinger testified as follows:

> Q.    Kodiak has dealers in the United States; is that correct?
>
> A.    Kodiak has authorized service centers.
>
> Q.    Okay.  And the term "authorized service center," is that the
>       same term and meaning as what's referred to in the contract
>       as "dealer network?"
>
> A.    I would – from my understanding authorized service center
>       of Kodiak stands for a dealer.

[Exhibit F T81:L16-23].

Rotax has no control over Kodiak's distribution network.  Mr. Fürlinger testified as

follows:

> Q.    So if the authorized distributors set up a dealer netwok in
>       the United States, then you would need to go to the dealers
>       to get the engine from Kodiak to get it from Rotax; is that
>       correct?
>
> A.    Rotax has no control over how authorized distributors set
>       up his distribution network within his given territory.
>
> . . .
>
> Q.    Now, the contracts provide for the distributor to be
>       permitted to set up a dealer network or these service

- 14 -

centers. What is Rotax's intent that these service centers or dealers will do? What's the reason for having them in the contract?

A.    Rotax basically allows the authorized distributor to set up his own network of authorized service centers of such distributor to be able to service the product in this given territory.

        . . .

Q.    Does Rotax expect that the dealers will be providing product support for Rotax engines?

A.    We expect that our authorized distributor, Kodiak, makes sure that his authorized service centers provide the relevant service to the product.

[Exhibit F, T83:L13-19; T119:L22-T120:L21].

        Kodiak has established four (4) service centers in the United States; namely, California Power Systems, Inc., located in California; South Mississippi Light Aircraft, located in Mississippi; Leading Edge Air Foil ("LEAF, INC.") located in Wisconsin, and Lockwood Aviation Supply, located in Sebring, Florida. [See Excerpts of Transcript of Deposition Testimony of Pascal Ronveaux, dated April 30, 2002,T34:L7-25, attached to Kelly Certification as Exhibit G].[2]  Mr. Fürlinger testified as follows:

Q.    Can you name for me Kodiak's dealers or service centers in the United States?

_____

[2] Plaintiffs' counsel, The Wolk Law Firm, represented other plaintiffs in a lawsuit against Rotax, in the United States District Court in New Jersey, captioned *Koziol v. Bombardier-Rotax GmbH & Co. KG, et al.,* Civil Action No. 00-1938. The issue of whether the District of New Jersey had personal jurisdiction over Rotax was litigated and the matter was dismissed for lack of personal jurisdiction and transferred to Florida. In *Koziol,* discovery was conducted as to the distribution of Rotax engines, the after sale product support of Rotax engines, the advertising of Rotax engines and the placement of Rotax engines in recreational vehicles. To assist this Court, we attach true and accurate copies of excerpts of transcripts of deposition testimony elicited in *Koziol* by the Wolk Law Firm.

- 15 -

A.    By my best recollection – and I don't know if it's accurate .
. . I think it's LEAF, CPS, California Power Systems, and
there  must be in a total four or five.

[Exhibit F, T119:L15-22].   No Kodiak authorized service center is located in Pennsylvania.
[Exhibit G, T79:L*5-7].

In short, Rotax has no control over the distribution of any aircraft engine once title passes

at the factory in Austria. [Exhibit G, T27:L18-24].   In fact, information developed in *Koziol*

reveals that:

- ❏  Rotax has no knowledge of the territory of each of these dealers and/or service
  centers. [See Excerpts of Transcript of Deposition Testimony of Josef Fürlinger,
  dated December 13, 2002, T34:L7-25, attached to Kelly Certification as Exhibit H,
  T30:L2-8, T20-24; T31:L1] [See previous footnote 3].

- ❏  Rotax has no knowledge of the set-up or the distribution of engines from the service
  center and/or their duties. [Exhibit H, T31:18-21];

- ❏  Rotax has no knowledge of the distribution of or if there is an agreement between
  Kodiak and its dealers. [Exhibit H, T32:21-24];

- ❏  Rotax has no knowledge whether Kodiak and its dealers/service centers have written
  agreements. [Exhibit H, T33:1-3];

- ❏  Rotax has never seen a written agreement between Kodiak and any of its dealers.
  [Exhibit H, T33:4-7];

- ❏  Rotax has never heard of the existence of an agreement between Kodiak and its
  dealers. [Exhibit H, T33:8-11];

- ❏  Rotax has never required Kodiak to have a written agreement between itself and its
  dealers. [Exhibit H, T33:12-15];

- ❏  The service centers located in the United States are authorized by Kodiak, not by
  Rotax. [Exhibit H, T39:10-14.];

- ❏  Rotax did not review the qualification of any of the dealers proposed by Kodiak for
  the sale of Rotax engines or spare parts in the United States. [Exhibit H, T40:11-15];

- ❏  Rotax did not establish any training programs for dealers of Kodiak in the United
  States. [Exhibit H, T40:16-18]; and

- 16 -

- ❑ At no time has Kodiak reported to Rotax regarding what territory in the United States each of the service centers is given. [Exhibit H, T47:1-4].

## 2. Lack of Contacts Between Rotax and Kodiak Authorized Service Centers in the United States

There is no contact between Rotax and any Kodiak authorized service center located in the United States, let alone any individual or entity in the Commonwealth of Pennsylvania. As testified to by the corporate representative of Rotax, Josef Fürlinger:

- ❑ Rotax does not communicate with Kodiak's dealers in the United States. [Exhibit H, T47:5-7];

- ❑ Rotax has not sent any correspondence or documents to any of the Kodiak dealers in the United States. [Exhibit H, 2002 Fürlinger Dep. T47:8-11]; and

- ❑ While Rotax does suggest retail prices for its products, this suggestion is made to the authorized distributor, such as Kodiak and it is suggested as a guideline. [Exhibit H, 2002 Fürlinger Dep. T47:23-24;T48:1-18].

This complete absence of contact between Rotax and the Kodiak authorized service center was also acknowledged by the service centers in *Koziol*. Ronald Smith, of South Mississippi, one of Rotax's authorized service centers, was deposed on December 3, 2002. With respect to his and/or South Mississippi's contacts with Rotax, Mr. Smith testified as follows:

- ❑ Mr. Smith is self-employed with South Mississippi. [See Excerpts of Transcript of Deposition Testimony of Ronald Smith, dated December 3, 2002, attached to Kelly Certification as Exhibit I, T4:10-11];

- ❑ South Mississippi "supports the small plane, ultralight industry." [Exhibit I, Smith Dep. T4:14-15];

- ❑ Mr. Smith became involved as a service center in or about 1987-1988. [Exhibit I, Smith Dep. T5:9-10];

- ❑ Mr. Smith, through South Mississippi, is a Kodiak authorized service center for Rotax aircraft engines. [Exhibit I, Smith Dep. T22:24];

- 17 -

364497.4

- ❑ As a Kodiak authorized service center, South Mississippi sells complete engines, does engine work, sells parts, and supports that part of the industry. [Exhibit I, Smith Dep. T9: 3-5];

- ❑ As a Kodiak authorized service center, South Mississippi has the right to sell Rotax aircraft engines. However, Ronald  Smith and/or South Mississippi do not have a contract or any written documents that says he is an authorized Kodiak service center. [Exhibit I, Smith Dep., T9:6-14, T11:17-21];

- ❑ In connection with the purchase of a Rotax engine, South Mississippi  conducts all of its dealings through Kodiak.  [Exhibit I, Smith Dep., T13:22-25, T14:1 (emphasis added)];

- ❑ If South Mississippi wants to purchase a new Rotax engine, it must go through Kodiak. [Exhibit I, Smith Dep., T14:2-4 (emphasis added)];

- ❑ South Mississippi has never had any dealings with the Rotax factory directly. [Exhibit I, Smith Dep., T14:5-7 (emphasis added)];

- ❑ In an official capacity, South Mississippi has never ordered anything and has had no contact with Rotax. [Exhibit I, Smith Dep., T14:8-10 (emphasis added)];

- ❑ In an unofficial capacity, Mr. Smith has met some representatives of Rotax. [Exhibit I, Smith Dep., T14:12-13].

### 3. Processing of Warranty Claims and After-Sales Service and Product Support

Information regarding the processing of warranty claims and after-sales service and product support was also developed in *Koziol*. Responsibility for such activities lies with the authorized distributor. [Exhibit H, 2002 Fürlinger Dep. T20:24, 21:1-8].   There is no contact by Rotax with any Kodiak authorized service center for the processing of warranty claims or after-sales service or product support.  As attested by Mr. Fürlinger in *Koziol*:

- ❑ Rotax does not make warranty cards or other forms for use by Kodiak authorized service centers. [Exhibit H, 2002 Fürlinger Dep. T61:11-13];

- ❑ Rotax does not sell to Kodiak forms for Kodiak to use in connection with warranty reimbursement. [Exhibit H, 2002 Fürlinger Dep.T61-17-20];

- 18 -

❑ Rotax provides a limited warranty with the engine it sells to Kodiak. The warranty is in writing and is part of the Operator's Manual that accompanies the engine. [Exhibit H, 2002 Fürlinger Dep.T70:7-24];

❑ If the end user of a Rotax engine makes a claim under the warranty, the end user is required to present the claim to the authorized distributor. End users in the United States, present their claims to Kodiak. [Exhibit H, 2002 Fürlinger Dep.T71:10-16];

❑ It is the authorized distributor's responsibility to process the warranty claim. [Exhibit H, 2002 Fürlinger Dep.T71:18-24];

❑ Rotax pays for warranty repairs of a Rotax engine by giving a credit to the authorized distributor. [Exhibit H, 2002 Fürlinger Dep. T100:6-9].

❑ Rotax has established a schedule of warranty reimbursement. [Exhibit H, 2002 Fürlinger Dep.T72:10-12];

❑ Rotax has established the price of replacement spare parts. [Exhibit H, 2002 Fürlinger Dep.T72:13-18]

Pascal Ronveaux, President of Kodiak, testified in *Koziol* that Kodiak is responsible for the warranty claims and after-sales service and product support for Rotax aircraft engines that are distributed by Kodiak [Exhibit G, Ronveaux Dep.,T38:4,13-14]. The warranty claims processed by Kodiak are processed for Kodiak's customers, namely the service centers. [Exhibit G, Ronveaux Dep. T79:19-20]. Ronald Smith, of South Mississippi Light Aircraft, also testified in *Koziol* that:

❑ South Mississippi submits to Kodiak its warranty claims for Rotax engines on a warranty claim form, prepared by Kodiak. [Exhibit I, Smith Dep., T53:8-19];

❑ South Mississippi does not receive any written materials of any kind from Rotax regarding the processing of warranty claims. [Exhibit I, Smith Dep., T54:12-17];

❑ South Mississippi has never received a check from Rotax. [Exhibit I, Smith Dep., T60:20-23];

❑ South Mississippi has never received a credit from Rotax. [Exhibit I, Smith Dep., T61:2-4].

Responsibility for after-sales service and product support lies with the authorized distributor. [Exhibit H, 2002 Fürlinger Dep. T20:24, 21:1-8]. Service bulletins and literature for Rotax engines are issued by Rotax to an authorized distributor. [Exhibit H, 2002 Fürlinger Dep. T100:1-3]. Rotax does not send any technical personnel to the United States to assist anyone in the repair or overhaul of Rotax engines. [Exhibit H, 2002 Fürlinger Dep. T105:11-20]. Kodiak supplies technical directives and bulletins only to its authorized service centers. [Exhibit G, Ronveaux Dep.T63:3-10]. Mr. Smith, in fact confirmed that South Mississippi only received service bulletins issued for Rotax engines from Kodiak [Exhibit I, Smith Dep., T55:20-25], and further testified that he does not have any dealings with Rotax regarding any of the service bulletins. [Exhibit I, Smith Dep., T56:14-19 (emphasis added)].

With respect to accident investigation involving Rotax aircraft engines, the authorized distributor for the territory where the accident occurred is responsible for accident investigation. [Exhibit H, 2002 Fürlinger Dep. T84:17-22]. There is no accident investigation arm of Rotax. [Exhibit H, 2002 Fürlinger Dep.T84:4-6]. Rotax does not employ any individuals who conduct accident investigations anywhere in the world. [Exhibit H, 2002 Fürlinger Dep. T84:7-11]. If there is an accident involving a Rotax engine, the Rotax factory has no accident investigator designated to investigate the accident. [Exhibit H, 2002 Fürlinger Dep. T84:12-16]. Given that accident investigation is the responsibility of the authorized distributor, Rotax does not provide any accident investigation guideline material to Kodiak [Exhibit H, 2002 Fürlinger Dep.T85:3-5] or any guidance on how to investigate accidents. [Exhibit H, 2002 Fürlinger Dep.T85:6-8].

364497.4

4.    **Advertising of Rotax Engines in the United States**

Rotax does not advertise the sale of Rotax engines in the United States. [See Exhibit F, T163:L1-164:L4]. If any advertising is done for the sale of Rotax engines, it is done at the discretion and at the expense of Kodiak or its authorized service centers. In *Koziol*, the following information was developed:

- ❑ Rotax does not require Kodiak to advertise Rotax engines. [Exhibit H, 2002 Fürlinger Dep. T50:23-24;T51:1-2.];

- ❑ Rotax does not pay for any of Kodiak's advertising. [Exhibit H, 2002 Fürlinger Dep. T51:3-5];

- ❑ There is no advertising budget for Rotax with respect to Kodiak. [Exhibit H, 2002 Fürlinger Dep. T51:6-8];

- ❑ Rotax does not recommend an advertising budget for Kodiak. [Exhibit H, 2002 Fürlinger Dep. T51:9-11];

- ❑ Rotax does expect Kodiak to advertise Rotax engines for sale within its distribution territory. [Exhibit H, 2002 Fürlinger Dep. T51:17-23];

- ❑ The decision to advertise Rotax engines for sale in the United States is within the control of Kodiak. Rotax has no control over Kodiak's advertising. [Exhibit H, 2002 Fürlinger Dep. T52-1-5,14-18];

- ❑ The only condition regarding advertising is that authorized distributors follow the uses permitted for the Rotax aircraft engine logo. [Exhibit H, 2002 Fürlinger Dep. T53:16-23.];

- ❑ Rotax does not make signs for authorized service centers to use. [Exhibit H, 2002 Fürlinger Dep.T61:8-10];

- ❑ Rotax does not review advertising placed by Kodiak in publications in the United States. [Exhibit H, 2002 Fürlinger Dep. T62:10-13]; and

- ❑ Rotax does not see any of Kodiak's advertising before it is published. [Exhibit H, 2002 Fürlinger Dep.T62:24;T63:1-3].

Moreover, Ronald Smith confirmed the foregoing policies from the standpoint of his operation of a Kodiak authorized service center:

❑ Mr. Smith advertises under the name of South Mississippi. [Exhibit I, Smith Dep.T31:22-24];

❑ Rotax pays for none of his advertising. [Exhibit I, Smith Dep. T31:25; T32:1-2];

❑ There is no coordination between South Mississippi and Rotax or Kodiak in connection with advertising, other than restrictions on the use of the Rotax logo [Exhibit I, Smith Dep.T32:5-10]; and

❑ Any instructions or restrictions in using the logo were communicated to Mr. Smith at one of Kodiak's meetings in the Bahamas with its authorized service center operators [Exhibit I, Smith Dep. T32:16-18];

## C.    Distribution of Certified Engines Is Irrelevant

Rotech Research Canada, Ltd. ("Rotech"), located in British Columbia, Canada is an authorized distributor for Rotax aircraft engines in Canada.  [Exhibit H, 2002 Fürlinger Dep. T90:24, 91:1-10].  Rotech distributes Rotax certified engines in the United States. [Exhibit G, Ronveaux Dep. T28:8-13].  Upon information, reason and belief, the engine that is the subject of this litigation is an uncertified engine.  Thus Plaintiffs' Exhibit H to their Answer to Preliminary Objections is irrelevant to the analysis of whether Rotax has significant contacts with the Commonwealth of Pennsylvania since the information pertains to certified engines.

## D.    Rotax's Sale of Recreational and Motorcycle Engines Does Not Involve Contact with Pennsylvania

Rotax produces engines for ultralights, snowmobiles, all terrain vehicles ("ATVs"), motorcycles and Sea Doo personal watercraft.  [Exhibit H, 2002 Fürlinger Dep. T6:4-14].  In addition to BRP, Inc., Rotax produces engines for Aprilia, BMW, and Harley Davidson, three motorcycle manufacturers. [Exhibit H, 2002 Fürlinger Dep. T6:17-22; T7:14-17]. Rotax is paid

- 22 -

for the sale of Rotax engines only upon transfer of title in Austria. [Exhibit H, 2002 Fürlinger Dep. T88:5-7].

Rotax has no knowledge of whether BMW imports the type F650 BMW motorcycle into the United States, does not know where BMW's United States entity is physically located, and has no knowledge of how BMW's United States' entity imports BMW motorcycles with Rotax engines. [Exhibit H, 2002 Fürlinger Dep. T8:5-7, 12-15, 16-19.]. Rotax <u>only</u> does business with BMW Motorcycle in Germany. [Exhibit H, 2002 Fürlinger Dep. T8:10-11(emphasis added)]. As attested by Mr. Fürlinger in *Koziol*:

- ❑ Rotax does not have any employees who travel to the United States. [Exhibit H, 2002 Fürlinger Dep. T96:17-19];

- ❑ Rotax does not have any technical employees who come to the United States for company business. [Exhibit H, 2002 Fürlinger Dep.T96:20-22];

- ❑ Rotax does not have any people who visit companies to provide technical assistance for the maintenance of Rotax engines. [Exhibit H, 2002 Fürlinger Dep. T96:23-24;T97:1-6]; and

- ❑ Rotax has no personnel who travel to the United States to provide technical assistance on snowmobiles, SeaDoos or ATVs that contain Rotax engines. [Exhibit H, 2002 Fürlinger Dep. T97:7-11].

## STATEMENT OF FACTS REGARDING SUMMARY JUDGMENT MOTION

Defendants Bombardier Inc. and BC deny that they designed, manufactured, sold, supported, distributed or troubleshooted the alleged defective ultralight engine. [See Defendants' Answer to Plaintiffs' First Amended Complaint, attached to Kelly Certification as Exhibit L]. Rather, Rotax designs and manufactures engines for, among other purposes, small aircraft, including ultralight aircraft. [Exhibit E, ¶ 4]. Mr. Fürlinger testified as follows:

- 23 -

Q.    Okay.   Give me a broad definition of what Rotax does?

A.    Rotax is the manufacturer of a two-stroke and four-stroke gasoline engine.

. . .

Q.    Well, why don't you start with maybe types, and then I can break them down if I want to get more specific.

A.    We make an engine for applications in watercrafts, ATVs, snowmobiles, motorcycles, and some small application in industrial and aircraft.  That's a general.

[Exhibit F, T17:L24-T18:L2-T19:L6; *see also* Exhibit E, ¶ 4].

Rotax selects the design and selection of new materials for use in Rotax engines; makes the parts for Rotax aircraft engines; writes the warranties for Rotax aircraft engines; pays for those warranties; issues service bulletins and literature for said engines; and otherwise supports the engines.  In previous litigation, Mr. Fürlinger explained:

Q.    Who is it who designs Rotax engines, aircraft engines?

A.    Rotax.

Q.    Who is it that selects the materials for use in Rotax engines, aircraft engines?

A.    Rotax.

Q.    Who is it writes the operator's manual Rotax aircraft engines?

A.    Rotax does.

Q.    Who is it that writes the warranties for Rotax aircraft engines?

A.    Rotax.

Q.    Who pays for the warranty of the Rotax engines?

A.    If it's a warranty, we give a credit.

- 24 -

Q.    Who is it that makes parts for Rotax aircraft engines?

A.    Rotax.

Q.    Who is it that designates territories for Rotax aircraft engines' sales?

A.    Rotax.

Q.    Who is it that determines whether an aircraft engine has to be recalled for modification?

. . .

A.    Rotax will determine.

Q.    Who is it who issues Service Bulletins and literature for Rotax engines?

A.    Rotax.

Q.    Who is it that established the logo for Rotax aircraft engines?

A.    Rotax.

[Exhibit H, T99:L17-T101:6].

Mr. Fürlinger confirmed that Bombardier and BC do not play any role in the distribution of Rotax aircraft engines. Mr. Fürlinger testified as follows:

Q.    Okay. Let me talk to you a little bit about the structure of distribution of Rotax aircraft engines. Does Bombardier have any role to play in the distribution of Rotax aircraft engines?

A.    No.

[Exhibit H, T86:L19-24].

- 25 -

## LEGAL ARGUMENT

## POINT I

## STANDARD OF REVIEW FOR MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION:
## PLAINTIFF BEARS THE BURDEN OF PROOF

Federal Rule of Civil Procedure 12 provides that a matter may be dismissed for the court's lack of personal jurisdiction. *Fed. R. Civ. P.* 12(b)(2). Once a defendant has raised a jurisdictional defense, the burden shifts to the plaintiff to prove that jurisdiction exists in the forum state. *Creative Waste Mgmt., Inc. v. Capitol Environmental Services, Inc.*, No. 04-1060, 2004 U.S. Dist. LEXIS 21497, at *5 (E.D. Pa. October 22, 2004) (*citing IMO Indus. V. Kiekert AG*, 155 F.2d 254, 257 (3d Cir. 1998); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.2d 1287, 1302 (3d Cir. 1996)). To survive a 12(b)(2) challenge, the plaintiff must present a prima facie case for the exercise of personal jurisdiction with competent evidence such as affidavits, sworn testimony, and other evidence in the record which demonstrates, with reasonable particularity, sufficient contacts between the non-resident defendant and the forum state. *Id.* at *6; *Applied Technology International, Ltd. v. Goldstein*, No. 03-848, 2004 U.S. Dist. LEXIS 21219, at *2 (E.D. Pa. October 20, 2004); *see also Schiller-Pfeiffer, Inc. v. Country Home Products, Inc.*, No. 04-cv-1444, 2004 U.S. Dist. LEXIS 24180, at *14 (E.D. Pa. December 1, 2004) ("Once a defendant has raised a jurisdictional defense, 'plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction.").

- 26 -

**POINT II**

**GOVERNING LAW: PLAINTIFF MUST SHOW A SUFFICIENT NEXUS BETWEEN THE NON-RESIDENT DEFENDANT AND FORUM STATE TO JUSTIFY THE COURT'S EXERCISE OF PERSONAL JURISDICTION**

A.    **Plaintiff Must Demonstrate Minimum Contacts Under Pennsylvania's Long-Arm Statute and Due Process Clause**

Rule 4(e) allows a District Court to assert personal jurisdiction over a nonresident defendant to the extent allowed by the law of the forum state. *Saudi v. Acomarit Maritime Services, S.A.*, No. 03-1609, 2004 U.S. App. LEXIS 19443, at *6 (3d Cir. September 17, 2004) (*citing Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)). Pennsylvania's long-arm statute provides that a court may exercise personal jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." 42 *Pa. Cons. Stat. Ann.* § 5322(b).   The statute provides:

> [T]he jurisdiction of the tribunals of this Commonwealth shall extend to all persons. . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United Sates."

42 *Pa. Cons. Stat. Ann.* § 5322(b).  Moreover, the statute specifically provides for the exercise of both specific and general jurisdiction. *See* 42 *Pa. Cons. State. Ann.* §§ 5322(a)(1) and 5301.

"The Due Process Clause of the Fourteenth Amendment guarantees *in personam* jurisdiction may only be asserted over a nonresident defendant corporation if that defendant has 'certain minimum contacts with the [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at *6-7 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "In assessing personal jurisdiction, the court must resolve the question based on the circumstances that the particular case presents." *Id.* at *7 (*citing Burger King v. Rudzewicz*, 471 U.S. 462, 485 (1985)).

**B.**    **Plaintiff Must Demonstrate Specific Jurisdiction**

There are two theories under which a non-resident defendant may be subject to personal jurisdiction: (1) specific jurisdiction; and (2) general jurisdiction. *Applied Technology International, Ltd.*, 2004 U.S. Dist. LEXIS 21219 at *4-5; *see also Saudi*, 2004 U.S. App. LEXIS 19443, at *7; *NAPA Development Corp., Inc., v. Pollution Control Financing Authority of Warren County*, No. 04-3945, 2004 U.S. Dist. LEXIS 22839, at * 5 (E.D. Pa. November 10, 2004). Where the plaintiff's cause of action is related to or arises out of the defendant's forum-related activities, the defendant may be subject to specific jurisdiction. *Saudi*, 2004 U.S. App. LEXIS 19443, at *7. (*citing Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 151 (3d Cir. 1996*); Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). "Specific jurisdiction is based upon acts occurring within Pennsylvania from which a plaintiff's injury or claims arise." NAPA, 2004 U.S. Dist. LEXIS 22839, at *7. Thus, specific jurisdiction is appropriate where the defendant "purposefully directed his activities at residents of the forum" and the litigation resulted from alleged injuries that "arise out of or relate to those activities." *Id.* at *8 (*citing BP Chem. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) [citations omitted].

This court applies a two-part test to determine whether specific jurisdiction exists. *Schiller-Pfeiffer, Inc.*, 2004 U.S. Dist. LEXIS 24180, at *12 (*citing IMO Indus. V. Kiekert AG*, 155 F.2d 254, 259 (3d Cir. 1998); *Creative Waste Mgmt., Inc.v. Capitol Envtl. Servs.*, No. 04-1060, 2004 U.S. Dist. LEXIS 21497 (E.D. Pa. October 22, 2004)).

> **First**, the plaintiff must show that the defendant has "minimum contacts with the forum" such that the defendant could "reasonably anticipate being haled into court there." The required minimum contacts must have a basis in "some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." **Second**, we inquire whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." Although this second prong "need only be applied at a court's discretion," the Third Circuit has "generally chosen to engage in this second [part] of analysis in determining questions of personal jurisdiction." Among the factors that a court may consider in this determination are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the interstate judicial system's interest in obtaining the most efficient resolution of controversies."[3]

Id. [citations omitted] [emphasis added].

By way of illustration, in *Saudi*, the Third Circuit Court of Appeals affirmed the District Court's dismissal of the plaintiff's complaint for lack of personal jurisdiction finding no basis to exercise specific personal jurisdiction over the defendant Swiss company with headquarters in Bermuda. *Id* at *7-8. In that personal injury action, the plaintiff alleged that that the defendant was negligent in failing to properly inspect and maintain a crane upon which he sustained injuries in the Gulf of Mexico. *Id.* at *1-4. Although the accident occurred outside of Pennsylvania, the plaintiff alleged jurisdiction was proper in that state because the defendant employed an individual who was a resident of Pennsylvania and carried out the defendant' business from that state. *Id.* at *4 However, the District Court concluded that the plaintiff "presented no evidence illustrating that the underlying accident arose out of or related to the defendant's contacts with or activities in Pennsylvania, such that [the defendant] 'should reasonably expect being haled into court' in Pennsylvania." *Id.* at *9. Third Circuit Court of

---

[3] As the majority of the United States Supreme Court stated in Asahi Metal, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field". 480 U.S. at 115. The Court also stated, "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." Id. at 113.

364497.4

Appeals agreed finding that the plaintiff's claims for negligence, unseaworthiness, breach of warranty, and strict liability against the defendant Swiss company related only to an accident which occurred in the Gulf of Mexico, not in Pennsylvania or its territorial waters, and that his injuries did not arise from any activities the defendant "purposefully directed" at Pennsylvania. *Id.*

Likewise, in *NAPA*, this Court dismissed Plaintiff's complaint for breach of contract against a New Jersey municipal authority finding no basis to exercise specific jurisdiction. Plaintiff alleged that jurisdiction was proper in Pennsylvania because the defendant advertised for bids in newspapers which circulated in that state as well as conducted some contractual negotiations in Pennsylvania with a Pennsylvania corporation. *Id.* at *2-3. However, this Court disagreed reasoning that the advertisement was not specifically directed at Pennsylvania and that "[e]ven national advertising would not alone make it reasonable to require defendant to defend itself in this forum." *Id.* at *10. The Court explained, "[h]ere [the defendant's] advertisement only circulated accidentally and incidentally in Pennsylvania, rendering specific personal jurisdiction untenable without further contacts." *Id.* at *11. With regard to the contractual negotiations in Pennsylvania, the Court held that "[t]hese contacts must be weighed; the inquiry is whether the totality of all of these contacts establish minimum contacts required to assert jurisdiction over a defendant." *Id.* [citation omitted].

Indeed, the Third Circuit Court of Appeals has held that a non-resident's contacts, even occurring in the forum state but otherwise incidental and random, do not justify a finding of specific jurisdiction. *See Mellon Bank (East) v. DiVeronica Bros.*, 983 F.2d 551 (3d Cir. 1993) (no jurisdiction even though nonresident defendant cashed checks drawn on a Pennsylvania bank, submitted a claim to a Pennsylvania insurance company and signed and returned a letter

- 30 -

agreement to Pennsylvania); *Reliance Steel Products v. Watson, Ess, Marshall, Enggas*, 675 F.2d 587, 589 (3d Cir. 1982) (no jurisdiction even though nonresident defendant made telephone calls to Pennsylvania, advertised in a legal directory distributed in Pennsylvania , and sent a bill to the plaintiff in Pennsylvania. "In none of these cases were the established contacts enough for jurisdictional reach . . . [t]he courts found that the defendants could not have anticipated being haled into Pennsylvania litigation." *NAPA*, 2004 U.S. Dist. LEXIS 22839, at *13.

### C.     If No Specific Jurisdiction Exists, Plaintiff Must Demonstrate General Jurisdiction.

If the cause of action does not "arise out of" the non-resident corporation's activities, a court may assert general jurisdiction if the corporation has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 414-15. "Under both theories, a plaintiff defending a motion to dismiss for lack of personal jurisdiction must show that the defendant has constitutionally sufficient "minimum contacts" with the forum. *Applied Technology International, Ltd.*, 2004 U.S. Dist. LEXIS 21219 at *5. However, the standard for evaluating whether these exist minimum contacts to satisfy the test for general jurisdiction is more stringent than the test applied to the questions of specific jurisdiction. *Saudi*, 2004 U.S. App. LEXIS 19443, at *8; *see also Portella v. Life-Time Truck Products, Inc.*, 127 F. Supp. 2d 652, 655 (E.D. Pa. 2000) ("The standard for general jurisdiction 'is not an easy one to meet' . . . [i]n fact, only a showing of 'significantly more than mere minimum contacts' will suffice." [citation omitted].

The basis for general jurisdiction is generally found where a non-resident defendant makes a substantial number of visits to the forum state, solicits business regularly from the forum state, or advertises regularly to the forum state. *Guyton v. A.M. General*, No. 01-cv-3883, 2001 U.S. Dist. LEXIS 21012, at * 7 (E.D. Pa. December 17, 2001) [citation omitted]. In short, "where a defendant has deliberately created continuing obligations between himself and

residents of the forum, he manifestly has availed himself of the privilege of conducting business

there. . . ." *Id.* (*citing Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950)).

In *Saudi*, the Third Circuit Court of Appeals found no basis to exercise general

jurisdiction over the defendant. *Id.* at *9-10. The Court reasoned that even if the defendant did

in fact employ the Pennsylvania resident, that employment was insufficient to warrant imposition

of general jurisdiction. *Id.* at * 10. The Court noted the following lack of "continuous and

substantial activities" to justify the finding the existence of "minimum contacts" with the forum

state:

> At most, Garrett traveled to and from Pennsylvania to Osprey-
> Acomarit's office in Maryland, where he had an office, sent some
> reports from his home in Pennsylvania, and made some telephone
> calls and some e-mails to and from Pennsylvania.    With the
> exception of one vessel that paid a port call after the Saudi
> accident, no Acomarit-managed vessels entered Pennsylvania
> waters.  As such these actions in Pennsylvania are not sufficient to
> establish continuous and systematic contacts with Pennsylvania.

*Id.* at *10-11 [*citing BP Chem. Ltd.*, 229 F.3d at 262 (finding lack of continuous and systematic

contacts where the defendant corporation has no personnel or facilities in the forum and has not

advertised or solicited business in the forum); *Nichols v. Searle & Co.*, 991 F.2d 1195, 1200 (4th

Cir. 1993)(finding insufficient "continuous and substantial actives" to justify general jurisdiction

despite defendant's solicitation activities and employment of representatives in the forum state)].

Indeed, in *H.A.S. Protection, Inc. v. Senju Metal Industry Co., Ltd.*, No. 03-1215, 2003

U.S. Dist. LEXIS 25172, at *14 (E.D. Pa. December 15, 2003), this Court concluded that the

plaintiff failed to establish general jurisdiction over a Japanese corporation despite plaintiff's

assertion that the non-resident corporation maintained a website which boasted of its global

presence and North American network.   This Court stated that "[c]ourts have consistently held,

however, that maintaining an informational website does not confer personal jurisdiction in

every jurisdiction in which that website can be accessed." *Id.* [citation omitted]. The Court further concluded that the non-resident defendant's assertion on its website that it maintains a global network is not even sufficient for a finding of general jurisdiction. *Id.* at *14-15.

**D.**    **If Relying Upon the Stream of Commerce Theory for a Finding of Minimum Contacts, Plaintiff Must Show More than the Fortuitous Occurrence of Defendant's Product Ending Up in the Forum State.**

With regard to producers or sellers of goods, the "mere foreseeability that a product one sells may end up in the forum state' does not warrant the exercise of personal jurisdiction over the producer/seller. *Portella*, 127 F. Supp. 2d at 656. Indeed, the unilateral activities of third party distributors, over which the non-resident defendant may have no control, in causing the defendant's products to end up in the forum state does not constitute a basis for jurisdiction over the defendant. *Affatato v. Hazet-Werk*, No. 01-cv-4345, 2003 U.S. Dist. LEXIS 21067, at * 11 (E.D. Pa. November 20, 2003) [citations omitted]. Even "a defendant's awareness that the stream of commerce . . . will sweep the product into the forum State does not convert the mere act of placing the product into the stream into minimum contacts acceptable under the Due Process Clause." *Portella,* 127 F. Supp. 2d at 658 (*citing Asahi*, 480 U.S. at 112).

The stream of commerce theory permits the exercise of personal jurisdiction "over a nonresident defendant which injected its goods, albeit indirectly, into the forum state and either 'derived [a] substantial benefit from the forum state or had a reasonable expectation of [deriving a substantial benefit from it]." *Id.* [quoting *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 300 (3d Cir. 1085)]. The Supreme Court addressed this theory *in Asahi Metal Industry Company v. Superior Court of California, Solano County*, 480 U.S. 102 (1987) and presented three separate tests to finding jurisdiction. *Visual Security Concepts, Inc. v. KTV, Inc.*, 102 F. Supp. 2d 601, 606-07 (E.D. Pa. 2000), *aff'd without opinion*, 2001 U.S. App. LEXIS 23555 (2001). However,

- 33 -

"the third Circuit has declined to select one of these approaches and has tended to analyze cases under all three theories." *Id.* at 607 [*citing Pennzoil Products Company v. Colelli & Associates, Inc.*, 149 F.3d 197, 204-05 (3d Cir. 1998) and *Renner v. Lanard Toys, Ltd.*, 33 F.2d 277, 282-83 (3d Cir. 1994)]; *see also Affatato*, 2003 U.S. Dist. LEXIS 21067, at * 9 ("Since the Supreme Court's decision in *Asahi*, the Third Circuit has repeatedly declined to adopt any one of the three tests announced in Asahi, preferring to analyze questions of jurisdictions via the stream of commerce under all three tests. [citation omitted]. Indeed, in *Affatato*, a product liability action, the Court did not adopt any particular stream of commerce test in declining to exercise jurisdiction over the non-resident defendant upon finding that the defendant "has no employees or assets in the forum, and does not market or sell any products in the forum . . . [a]ny HAZET products that end up in Pennsylvania arrive as a result of the actions of third party distributors over which HAZET has not control." *Id.* at *11-12.

### 1.    Justice O'Connor's Test of "Additional Conduct" in the Forum State

To meet Justice O'Connor's standard for personal jurisdiction, the placement of a product into the stream of commerce must be accompanied by some "additional conduct of the defendant that may indicate an intent or purpose to serve the market in the forum State." *Asahi,* 480 U.S. at 112. Examples of additional conduct include designing the product for the forum market, advertising in the forum, marketing through a distributor that has agreed to serve as a sales agent in the state, or establishing channels to provide advice to customers in that state. *Id.*

In *Visual Security Concepts*, this Court declined to exercise jurisdiction over the non-resident defendant manufacturer upon finding that the defendant did not advertise in Pennsylvania; did not design the product for use in the forum; did not know where the product would be sold; and was not aware of the third party distributor's actions. *Visual Security*

- 34 -

*Concepts*, 102 F. Supp. 2d at 607. Likewise in *Portella*, another product liability action, this Court also declined to exercise jurisdiction over the non-resident defendant, finding that the defendant never directly sold its products or services in Pennsylvania; never advertised in Pennsylvania, and never established channels to provide regular advice or product information to Pennsylvania consumers either directly or through a Pennsylvania distributor or sales agent. *Portella*, 127 F. Supp. 2d at 658.

### 2.    Justice Brennan's Test of "Regular and Anticipated Flow" in the Forum State

To meet Justice Brennan's standard for personal jurisdiction, there must be a "regular and anticipated flow of the defendant's products" into the forum and that the defendant "is aware that the final product is being marketed in the forum State, that the possibility of a lawsuit in that state cannot come as a surprise." *Id.* at 117.    Accordingly, Justice O'Connor deemed unnecessary the additional conduct described by Justice O'Connor. *Affatato*, 2003 U.S. Dist. LEXIS 21067, at * 8 [citing *Asahi*, 480 *U.S.* at 117].

Likewise in *Visual Security*, this Court found that the plaintiff failed to meet its burden to prove jurisdiction under the Brennan test. In declining to exercise jurisdiction over the defendant manufacturer, the Court found that plaintiff failed to adduce any evidence contradicting the defendant's assertion that it was unaware that any products were being sold in Pennsylvania. *Visual Security*, 102 F. Supp. 2d at 607.

### 3.    Justice Stevens' Test of "Volume"

To meet Justice Stevens' test, the defendant must have placed products into the stream of commerce of sufficient "amount, value, and hazardous character." *Asahi*, 480 U.S. at 122. In Visual Security, the Court found that plaintiff also failed to meet the Stevens test. The Court noted that "there is no evidence before the court that any of the television sets were sold in

- 35 -

Pennsylvania, much less the quantity or value of such sales." *Visual Security*, 102 F. Supp. 2d at 607.

While the above tests are somewhat distinct, what is common to each is the notion of whether the court's exercise of personal jurisdiction over the non-resident defendant would offend "traditional notions of fair play and substantial justice." See *Portella*, 127 F. Supp. 2d 659 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In *Portella*, this Court declined to exercise jurisdiction over a non-resident defendant upon finding that the defendant's corporate activities were limited to another state and that Pennsylvania had no interest in adjudicating a contract dispute which would have required the application of another State's law. *Id.* The Court held that the defendant's contacts with Pennsylvania were so fortuitous and incidental that an exercise of personal jurisdiction would be unreasonable and unfair. *Id.*

## POINT III

### PLAINTIFFS CANNOT PROVE SPECIFIC JURISDICTION OVER ROTAX AS ROTAX HAD NO CONTACTS WITH PENNSYLVANIA

It is undisputed that Plaintiffs' causes of action are not related to and do not arise out of any alleged activities on the part of Rotax in the Commonwealth of Pennsylvania since Rotax had no contacts with Pennsylvania. There exists no evidence illustrating that Rotax purposefully directed any activities at Pennsylvania from which Plaintiffs can argue that there exists a factual basis for this Court to find specific jurisdiction. Rotax is an Austrian corporation, not authorized, licensed or registered to do business in the Commonwealth of Pennsylvania or even in the United States. [Exhibit E ¶ 7.] Rotax has no contacts with the Commonwealth of Pennsylvania in that it has no agents located in Pennsylvania. [Exhibit E at ¶ 8.] Rotax has no office, warehouse, or other facility in the Commonwealth of Pennsylvania. [Exhibit E at ¶9.] Rotax has never sold its

- 36 -

products in the Commonwealth of Pennsylvania. [Exhibit E at ¶ 10.]  Rotax has never had a registered agent in the Commonwealth of Pennsylvania and does not maintain an agent for service of process in Pennsylvania. [Exhibit E at ¶ 11.]  Rotax derives no income from business conducted in the Commonwealth of Pennsylvania; does not purchase any goods in Pennsylvania; and pays no taxes here. [Exhibit E at ¶ 12.]

Rotax has never entered into a contract in the Commonwealth of Pennsylvania nor performed under any contract in Pennsylvania. [Exhibit E at ¶ 13.]  Rotax has never performed services on behalf of any Pennsylvania company or resident and has never performed any services in Pennsylvania. [Exhibit E at ¶ 14.]   Rotax has never engaged in solicitation of customers or directed advertising to the Commonwealth of Pennsylvania and maintains no telephone service, bank accounts or credit line in the Commonwealth of Pennsylvania.  [Exhibit E at ¶ 15.]  Rotax has not designed or manufactured a particular engine for use in Pennsylvania. [Exhibit E at ¶ 16.]  None of Rotax's officers, directors, agents or employees reside in the Commonwealth of Pennsylvania and no business decisions are made in Pennsylvania.  [Exhibit E at ¶ 19.]  Rotax has no interest in real property in the Commonwealth of Pennsylvania and is not involved in any partnership or joint venture located in or doing business in the Commonwealth of Pennsylvania. [Exhibit E at ¶¶ 20-21.].

Moreover, Rotax has never advertised or marketed its products in the United States, let alone, in Pennsylvania.  [Exhibit F, T163:L1-T164:L4].  Rotax has never sued anyone in Pennsylvania; sent representatives to trade shows or air shows that were held in Pennsylvania, conducted seminars in Pennsylvania. [Exhibit F, T167:L8-T169:L1].  Finally Rotax does not own any stock in a corporation located in Pennsylvania or even the United States. *Id.*

- 37 -

In short, Plaintiffs cannot present any evidence demonstrating even incidental or random contacts Rotax may have had with Pennsylvania, let alone, sufficiently "minimum contacts" to argue that the underlying accident arose out of or was related to such contacts. In the absence of any such contacts, Rotax could not have reasonably have expected to be haled into Court in this forum. Accordingly, there exists no basis for this Court to exercise specific jurisdiction against Rotax.

## POINT IV

### PLAINTIFFS CANNOT PROVE GENERAL JURISDICTION OVER ROTAX AS ROTAX HAD NO CONTINUOUS OR SYSTEMATIC CONTACTS WITH PENNSYLVANIA

Likewise, Plaintiff cannot present any evidence illustrating that Rotax has "continuous and systematic" contacts with Pennsylvania. While Rotax does design and manufacture engines for, among other purposes, use in small aircraft, Rotax does not sell or ship any of those engines to customers inside the United States, let alone to Pennsylvania. [Fürlinger Aff. at ¶ 5; 2002]. Rotax sells engines only to authorized distributors, who are separate, independently owned and operated companies. [Exhibit F, T139:L14-23; T145:L5; Exhibit H, Fürlinger Dep. T23:9-18]. The authorized distributor for aircraft engines in North, South and Central America, is Kodiak, which is located in Nassau, Bahamas. [Exhibit F, T9:L24-T10:10; Fürlinger Aff. at ¶ 5]. Once Rotax sells an aircraft engine to an authorized distributor such as Kodiak, the authorized distributor is then responsible for the sale of the engine in its authorized territory. [Exhibit F, T76:L23-T77:L3; T79:L20-23]. Rotax does not know, dictate or learn the destination of any particular engine and has no control over the distribution of any engine. [Exhibit F, T76:L23-T77:L3; T79:L20-23; T84:L20-23; Fürlinger Aff. at ¶ 6].

- 38 -

Here Rotax's contact, if any, with the Commonwealth of Pennsylvania is limited to the designing and manufacturing of an engine that ended up in Pennsylvania after being sold in Austria and distributed from an authorized distributor. The minimum contacts cited to establish a basis for general jurisdiction, such as a substantial number of visits to Pennsylvania; regular solicitation of business from Pennsylvania; or regular advertising to Pennsylvania are completely absent in the present case.   There is no evidence that Rotax manifestly availed itself of the privilege of conducting business in Pennsylvania.  In short, there is no contact that is "systematic and/or continuous" in the manufacture of a product that ends up in an aircraft in Pennsylvania. Accordingly, Plaintiff cannot point to any competent evidence in the record for this Court to find a basis to exercise general jurisdiction over Rotax.

### POINT V

### PLAINTIFFS CANNOT RELY UPON THE STREAM OF COMMERCE THEORY FOR PROVING JUSRISDICTION OVER ROTAX SINCE PLAINTIFF CANNOT MEET ANY OF THE THREE *ASAHI* TESTS

#### A.    Plaintiffs Fail the Justice O'Connor  Test for "Additional Conduct"

The mere fact that Rotax placed its engine into the stream of commerce is insufficient to assert jurisdiction over Rotax.   Rotax had no control over the unilateral activities of its independent distributor not even located in Pennsylvania in causing the engine to end up in Pennsylvania.  As this Court has already held, even if Rotax was aware that its engines would be swept into Pennsylvania, which it was not, such awareness would not reach the level of minimum contacts sufficient under the Due Process Clause for a finding of jurisdiction.

Plaintiffs cannot point to any evidence illustrating "additional conduct" on the part of Rotax demonstrating an intent or purpose specifically to serve the market in Pennsylvania. Rotax does not sell its products in Pennsylvania and none of its authorized distributors are even

- 39 -

located in Pennsylvania.    [Exhibit F, T119:L15-22; Exhibit G, T23:L7-25; T79:L5-7].

Moreover, there is no evidence that Rotax advertised its engines or any products in

Pennsylvania; designed the engines specifically for use in Pennsylvania; controlled the actions of

its independent distributors not even located in Pennsylvania; or was aware where the engines

would be sold in Pennsylvania.    [Exhibit F, T163:L1-T164:L4; T139:L14-23; T145:L5;

T76:L23-T77:L3; T79:l20-23; T84:l20-23].

Finally, product support is handled by the authorized distributor through its network of

service centers, not Rotax. [Exhibit H, T20:L24; T21:L1-8].   Rotax does not send any technical

personnel to the United States to assist anyone in the repair or overhaul of Rotax engines.

[Exhibit H, 2002 Fürlinger Dep. T105:11-20]. Kodiak supplies technical directives and bulletins

only to its authorized service centers. [Exhibit G, Ronveaux Dep.T63:3-10]. Mr. Smith, in fact

confirmed that South Mississippi only received service bulletins issued for Rotax engines from

Kodiak. [Exhibit I, Smith Dep., T55:20-25], and further testified that he does not have any

dealings with Rotax regarding any of the service bulletins. [Exhibit I, Smith Dep., T56:14-19].

Thus, Plaintiffs cannot prove that Rotax's placement of the product into the stream of commerce

was accompanied by any additional conduct indicating an intent or purpose to serve the market

in Pennsylvania sufficient for this Court to exercise jurisdiction.

### B.    Plaintiffs Fail Justice Brennan's Test for "Regular and Anticipated Flow"

While Rotax is aware that its independent authorized distributor, located in the Bahamas,

serves Central, North, and South America, Mr. Fuerlinger testified unequivocally that once the

engines are sold in Austria, Rotax does not even know where they end up. [Exhibit F, T76:L23-

T77:L3; T79:L20-23; T84:L20-23].  There are simply no facts that Plaintiffs can point to which

illustrate that Rotax was specifically aware that its engines were being marketed for

- 40 -

Pennsylvania and there existed a "regular and anticipated flow" of its engines to that forum. Thus, Plaintiff cannot meet Justice Brennan's test.

### 3.    Plaintiffs Fail Justice Steven's Test for "Volume"

Plaintiffs have failed to present any evidence specifically identifying the number and value of Rotax engines sold in Pennsylvania.  Moreover, such evidence is impossible given that Rotax did not sell any engines in Pennsylvania.  However, even if Plaintiffs were to argue that, through a third party, significant numbers of engines did in fact end up in Pennsylvania, the argument fails since Plaintiffs have not produced evidence of any such volume.  Accordingly, Plaintiffs cannot meet Justice Stevens' test for volume to establish jurisdiction against Rotax.

In short, Rotax did not purposely avail itself of the privilege of conducting business or any activities within the Commonwealth of Pennsylvania.  While the requirements of the long arm statutes may be satisfied by the foreseeability of an indirect shipment of a product into the Commonwealth, or by the possibility that an act performed outside of the Commonwealth may cause an effect within the Commonwealth, foreseeability alone is not a sufficient benchmark for personal jurisdiction under the due process clause of Fourteenth Amendment.  Plaintiffs' own evidence demonstrates that Rotax did not purposefully avail itself of the privilege of conducting business in Pennsylvania.  The subject engine did not even follow the established distribution scheme of Kodiak for the sale of Rotax engines in the United States. Plaintiffs' have admitted that the subject engine was sold in Austria and distributed to former Defendant Interplane, in the Czech Republic, through an Austrian distributor. As such, there is no basis for this Court to exercise specific personal jurisdiction over Rotax.

Rotax is a foreign defendant with a principal place of business located in Austria.  As such, Rotax's documents and employees are located outside of the Commonwealth of Pennsylvania and nearly half way around the world.  To litigate this matter in Pennsylvania would be difficult and expensive for Rotax and its employees. The serious burdens on Rotax substantially outweigh any interest on the part of Plaintiffs or the Commonwealth of Pennsylvania in resolving this case here.  In sum, to subject Rotax to the jurisdiction of this Court, if minimum contacts were found to exist, would not comport with "fair play and substantial justice."

**POINT VI**

**A FINDING OF LACK OF PERSONAL JURISDICTION IS CONSISTENT WITH PREVIOUS JUDICIAL DETERMINATIONS**

In the matter of *Lipp v. Air Fun, Inc., et. al.*, Case No. 01-C-1219, the State of North Dakota , District Court, for the County of Morton, found that the State of North Dakota could not exercise personal jurisdiction over Rotax on facts nearly identical to those presented here. [See, Exhibit K, Order dated January 4, 2002, of the Honorable Gail Haggerty, District Judge, p.11-12].  In *Lipp*, plaintiff's husband was a passenger on a Six-Chuter brand powered-parachute.  During the flight, the engine of the powered-parachute stalled and the powered-parachute crashed into the Missouri River. Jerome Lipp, who was paraplegic, drowned.  Plaintiff asserted claims of strict product liability, negligence and breach of implied warranty against all defendants on the ground that the powered parachute and the engine were defectively designed and manufactured.  [Exhibit K, Lipp Opinion, pp1-2].  In *Lipp*, Rotax did nothing more than sell the subject engine to Kodiak.  As the North Dakota Court correctly held, Rotax "did not do much

- 42 -

more than place its manufactured engine into the stream of commerce when it sold its product to Kodiak" and as such, this one act was not sufficient to establish personal jurisdiction over Rotax. [Exhibit K, Lipp Opinion, pp11-14].

Likewise, in *Koziol v. Bombardier-Rotax GmbH & Co. KG, et al* a case prosecuted by The Wolk Law Firm, in the District of New Jersey and later in the Southern District of Florida, both District Courts dismissed the matter for lack of jurisdiction. In the New Jersey litigation, the Honorable Garrett E. Brown, Jr., U.S.D.J. found that the Court did not have personal jurisdiction over Rotax. [Exhibit J]. For reasons unrelated to the issue of whether Rotax had significant contact with the forum, Judge Brown, in his discretion, transferred the matter to the Southern District of Florida, *Koziol v. Bombardier Rotax GmbH, et al.*, Case number 02-61807-Civ.-Cohn. ("Koziol Florida Action"). In the *Koziol Florida Action*, Rotax moved to dismiss the matter for lack of subject matter jurisdiction. In reviewing <u>Asahi Metal</u>, the Court found that the State of Florida lacked "sufficient interest in the adjudication of the dispute to warrant exercising jurisdiction across national borders" and dismissed the Complaint against Rotax for lack of personal jurisdiction. [Exhibit J].

In *Koziol*, the Court noted that Plaintiffs could not attempt to attribute unilateral activities of third parties to Rotax in an attempt to establish minimum contact with the forum. The same is true here. Rotax simply designed and manufactured the subject engine and did nothing to purposefully avail itself of the benefits of doing business in Pennsylvania. <u>See also</u>, <u>LaRose v. Sponco Mfg., Inc.</u>, 712 F. Supp. 455, 460 (D.N.J. 1989)(Exclusive distributor that merely transferred title of aerial truck ladder which was ultimately sold to a New Jersey business did not have minimum contacts with the State of New Jersey where seller knew that the consumer was purchasing the product for primary use in the forum state). In sum, Rotax respectfully submits

that the requisite "minimum contacts" are lacking to permit this Court to exercise *in personam* jurisdiction.

## POINT VII

### STANDARD FOR REVIEW FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure sets forth that a motion for summary judgment is proper:

> . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c)

See also, Celotex v. Catrett, 477 U.S. 317, 322 (1986).  It is well established that if a party can show there is no genuine issue of material fact, it may move for summary judgment as to the opponent's claims and thereby terminate the litigation against it.  Gans v. Mundy, 762 F.2d 338, 343 (3d Cir. 1985);Cert. Denied 474 U.S. 1010 (1985); Scott v. Plante, 532 F.2d 939, 945 (3d Cir. 1975).  An issue is genuine only if there is a sufficient evidentiary basis upon which a reasonable jury could find for the non-moving party.  *Connors v. Fawn Mining Corp.*, 30 F.3d. 483, 489 (3d. 1994)).  The moving party must point to portions of the record which demonstrate the absence of genuine issues and material fact.  The opposing party must then set forth a specific showing of a genuine issue for trial.  *Id. Citing Celotex Corp. v. Cartret*, 477 U.S. at 323 (1986).

## POINT VIII

### DEFENDANTS BOMBARDIER INC. AND BOMBARDIER CORPORATION ARE ENTITLED  TO SUMMARY JUDGMENT AS THEY DID NOT DESIGN, MANUFACTURE, SELL OR CONTROL THE SUBJECT PRODUCT.

**A.    Pennsylvania Product Liability Law Requires Control Over the Allegedly Defective Product**

Plaintiffs' claims of strict liability, negligence, and breach of warranty against Defendants Bombardier and BC fail as a matter of law. Pennsylvania adopted §402A of the Restatement (Second) of Torts for products liability cases, which provides that:

(1)    One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a)    the seller is engaged in the business of selling such a product, and

(b)    it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. Restatement (Second) of Torts § 402A (1965). Webb v. Zern, 422 Pa. 424, 220 A.2d 853 (1966).

To prevail on a cause of action in products liability, the plaintiff must prove that: 1) the product was defective, 2) that the defect existed when it left the hands of the defendant, and 3) that the defect proximately caused injury to him or her. See Putt v. Yates-American Machine Co., 722 A.2d 217, 220 (Pa. Super. 1998); Riley v. Warren Manufacturing, Inc., 455 Pa. Super. 384, 390, 688 A.2d 221, 224 (1997). Thus, "the plaintiff must prove that the defendant sold the product involved in a defective condition." Azzarello v. Black Brothers Co., 480 Pa. 547, 550; 391 A.2d 1020, 1022 (1978). Liability applies to any manufacturer, wholesaler or retail dealer, distributor and all suppliers of a defective product in the chain of distribution, including retailers, partmakers, and assemblers. See Balczon v. Machinery Wholesalers Corp., 993 F. Supp. 900, 903-904 (W. Dist. Pa. 1998), citing Restatement (Second) of Torts § 402A cmt f. (1965).

A defendant that exercises no control or possession over the defective product is not liable for injuries sustained by a plaintiff in the use or consumption of that product. Balczon v. Machinery Wholesalers, supra, 933 F. Supp. at 905. The Plaintiff in Balczon filed a products liability action against several defendants, including Machinery Wholesalers, after sustaining

- 45 -

injuries to his left hand while operating a defective machine. Machinery Wholesalers subsequently moved for summary judgment on the ground that it was not a "seller" as defined by Section 402A of the Restatement (Second) of Torts. Id. at 901. In granting summary judgment, the Court held that Machinery Wholesalers could not be held liable for the plaintiff's injuries because Machinery Wholesalers did not have any control or involvement in the manufacture or design of the defective product which caused the plaintiff's injuries. Id. at 905. The court also held that Machinery Wholesalers had not made any representations as to the product's quality or soundness, had no physical possession of the product and did not store the product in a facility that was under its ownership or control. Id.

### B. Plaintiffs Cannot Prove that Bombardier and BC Had Control Over the Allegedly Defective Rotax Engine

Similarly, in the instant case, Bombardier and BC are entitled to summary judgment as they never had control over the alleged defective product. As stated in their Answer to Plaintiffs' First Amended Complaint, Bombardier and BC did not design, manufacture, sell, support, distribute or troubleshoot the alleged defective ultralight engine. Rather, Rotax designs and manufactures engines for, among other purposes, small aircraft, including ultralight aircraft. [Exhibit E, ¶ 4; see also Exhibit F, T17:L24-T18:L2-T19:L6].

Rotax selects the design and selection of materials for use in Rotax engines; makes the parts for Rotax aircraft engines; writes the operator's manuals and warranties for Rotax aircraft engines; pays for those warranties; and issues service bulletins and literature for said engines. [Exhibit H, T86:L19-24]. Moreover, Rotax established its own logo. Id. Thus, the subject engine was never within the hands or control of Bombardier and BC.

Accordingly, Bombardier and BC submit that Plaintiffs have failed satisfy their burden of proof to establish any connection between Bombardier and BC to the alleged defective engine and their injuries.  Since Bombardier and BC were not within the chain of distribution of the alleged defective engine, Plaintiffs' claims against them must be dismissed in their entirety as a matter of law.

## CONCLUSION

Based on the aforementioned reasons, BRP Rotax GmbH & Co. KG respectfully submits that Plaintiffs' First Amended Complaint be dismissed, as this Court does not have *in personam* jurisdiction over BRP-Rotax GmbH & Co. KG.   Defendants Bombardier Inc. and Bombardier Corporation also respectfully submit that Plaintiffs' First Amended Complaint be dismissed, as they did not design, manufacture, sell, or otherwise distribute alleged defective engine which is the subject of this litigation.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorney for Defendant BRP-Rotax GmbH & Co. KG

BY: _____
Robert J. Kelly, Esquire
33 Washington Street – 18th Floor
Newark, N.J.  07102

And

By:    Jonathan Dryer, Esq.
P.A. Attorney ID 34496
The Curtis Center-Suite  1130 East
Independence Square West
Philadelphia, PA 19106

Date:  December 22,2004

- 47 -

364497.4