# EXHIBIT B

344036.1



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA



THERESA MARIE SIMEONE, Personal
Representative of the Estate of Albert
Francis Simeone, Jr., Deceased, and
THERESA MARIE SIMEONE,
In Her Own Right
52 Pusey Mill Road
Cochranville, PA 19330

    and

MARY ANN LENGYEL, Personal
Representative of the Estate of George Lengyel,
Deceased, and MARY ANN LENGYEL,
In Her Own Right
3 Cannoner Circle
Chadds Ford, PA 19317

    v.

BOMBARDIER-ROTAX GmbH, Individually
and as a Joint Venture and/or d/b/a Rotax
A-4623 Gunskirchen, Austria

    and

BOMBARDIER INC., Individually and as a Joint
Venture and/or d/b/a Rotax
800 Rene-Levesque Boulevard
29th Floor
Montreal, Quebec
Canada H3B 1Y8

    and

BOMBARDIER CORPORATION, Individually
and as a Joint Venture and/or d/b/a Rotax
c/o CT Corporation System
1515 Market Street, Suite 1210
Philadelphia, PA 19102

    and

CIVIL ACTION NO.

02cv4852

FILED

9 2002

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

JURY TRIAL DEMANDED

INTERPLANE USA, INC., Individually and as a                    :
Joint Venture and/or d/b/a Skyboy Sport Aircraft              :
30 Lee Gate Lane                                             :
Grosse Point Farms, MI 48236                                 :
                                                              :
        and                                                   :
                                                              :
INTERPLANE USA LLC, Individually and as a                    :
Joint Venture and/or d/b/a Skyboy Sport Aircraft             :
30 Lee Gate Lane                                             :
Grosse Point Farms, MI 48236                                 :
                                                              :
        and                                                   :
                                                              :
INTERPLANE LLC, Individually and as a                        :
Joint Venture and/or d/b/a Skyboy Sport Aircraft             :
39440 South Avenue                                           :
Zephyrhills, FL 33540                                         :
                                                              :
        and                                                   :
                                                              :
JERSEY CENTRAL POWER AND                                     :
LIGHT COMPANY, Individually and/or as a Joint                :
Venture and/or d/b/a GPU ENERGY, INC.                        :
METROPOLITAN EDISON, PENNSYLVANIA                            :
ELECTRIC, GPU, INC., AND FIRST ENERGY                        :
CORPORATION                                                  :
c/o CT Corporation Systems                                   :
1515 Market Street, Suite 1210                               :
Philadelphia, PA 19102                                       :
                                                              :
        and                                                   :
                                                              :
FIRSTENERGY CORPORATION, Individually                        :
and/or as a Joint Venture and/or d/b/a GPU                   :
ENERGY, METROPOLITAN EDISON                                  :
COMPANY, PENNSYLVANIA ELECTRIC                               :
COMPANY, GPU, INC., AND JERSEY                               :
CENTRAL POWER AND LIGHT COMPANY                              :
76 South Main Street                                         :
Akron, OH 44308                                              :

## CIVIL ACTION

**The Parties**

1.    Plaintiff, Theresa Marie Simeone, is an individual, a citizen and resident of the Commonwealth of Pennsylvania, who resides at 52 Pusey Mill Road, Cochranville, Pennsylvania, and is the widow and Administratrix of the Estate of the Albert Francis Simeone, Deceased.

2.    Plaintiff, Mary Ann Lengyel, is an individual, a citizen and resident of the Commonwealth of Pennsylvania, who resides at 3 Cannoner Circle, Chadds Ford, Pennsylvania, and is the widow and Executrix of the Estate of George Lengyel, Deceased.

3.    Defendant, Bombardier-Rotax GmbH ("Bombardier-Rotax"), is believed and therefore averred to be an entity organized under the laws of Austria, with its principal place of business in Gunskirchen, Austria, and at all times material hereto is engaged individually and/or as a wholly-owned subsidiary of Bombardier, Inc. and/or as a joint venture in the design, manufacture, product support, and sale of engines used in aircraft and in other applications, including the Rotax engine installed on a certain ultralight aircraft involved in an aircraft accident on July 22, 2000.

4.    Defendant, Bombardier Inc. ("Bombardier"), is believed and therefore averred to be a corporation organized and existing under the laws of Canada, with its principal place of business in Montreal, Quebec, Canada, and it is further alleged that Bombardier is a partner and in partnership and/or is doing business as Rotax and/or Bombardier-Rotax and/or as the Bombardier Group and/or as the Bombardier Motorized Consumer Products Group and/or Bombardier Recreational Products and/or is trading as

the joint venture Bombardier-Rotax, and has made and continues to make money from the sale of Rotax engines, engine components, and product support materials.

5.    Defendant Bombardier Corporation ("Bombardier Corp.") is believed and therefore averred to be a corporation operating under the laws of the Canada with its principal place of business in Montreal, QC Canada.

6.    Defendant, Kodiak Research Ltd., Nassau, Bahamas ("Kodiak"), is believed and therefore averred to be a company and/or joint venture and/or a partnership organized and existing under the laws of the Commonwealth of the Bahamas, with its principal place of business in Nassau, The Bahamas, but maintains a research and testing facility in Vernon, British Columbia, Canada, and at all times material hereto was an organization established for the sole purpose of importing Rotax aircraft engines within the United States, and has been set up for purposes of being the vehicle to provide information to owners, manufacturers, and maintenance facilities concerning issues that relate to the reliability of the Rotax powerplants, is the importer and exclusive distributor of uncertified Rotax aircraft engines within the United States, maintains authorized Rotax service centers in the United States, and is responsible for the distribution of service bulletins, service information, and maintenance information after sale for Rotax products.

7.    Defendant, Rotech Research Canada Ltd. a/k/a Kodiak Research Canada Ltd. ("Rotech"), is believed and therefore averred to be a company and a joint venture and a partnership organized and existing under the laws of Canada, with its principal place of business in Vernon, British Columbia, Canada, and at all times material hereto is a distributor of Rotax aircraft engines, provides to owners, manufacturers, and maintenance facilities concerning issues that relate to the reliability of the Rotax powerplants, maintains

5 -

authorized Rotax service centers in the United States, and is responsible for the distribution of service bulletins, service information, and maintenance information after sale for Rotax products. It is also the exclusive distributor of certified Rotax aircraft engines in the United States, for defendants Bombardier, Rotax, and Kodiak, and is responsible for processing warranty claims and investigation of aircraft accidents involving Rotax engines.

8.    At all times material hereto, defendants Rotax, Bombardier, Bombardier Corp., Kodiak, and Rotech (hereinafter collectively referred to as "the Bombardier defendants"), and each of them, were the agents, employees, servants, joint adventurers, partners, parents, subsidiaries, relatives, wholly-owned entities, or concerted actors of or with each of the remaining defendants in that, in performing or failing to perform the actions herein alleged, each was acting individually and through or in the foregoing alleged capacity and within the course and scope of said agency, employment, joint venture, partnership, subsidiary, wholly-owned entity, or concerted action, and with the permission and consent of each of the other defendants.

9.    Defendant, Interplane USA, Inc., individually and as a joint venture and/or d/b/a Skyboy Sport Aircraft, is believed and therefore averred to be a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Lakeland, Florida, and does business within the Commonwealth of Pennsylvania by advertising its products, utilizing its agents, and shipping ultralight aircraft into this Commonwealth, including the one that was involved in this accident, and was agent, servant, workman or employee of the other Interplane defendants.

10.    Defendant, Interplane USA, Inc., individually and as a joint venture and/or d/b/a Skyboy Sport Aircraft, is a corporation organized and existing under the laws of the

- 6 -

State of Michigan, with its principal place of business in Grosse Point Farms, Michigan, and does business within the Commonwealth of Pennsylvania by advertising its products, utilizing its agents, and shipping ultralight aircraft into this Commonwealth, including the one that was involved in this accident, and was agent, servant, workman or employee of the other Interplane defendants.

11.    Defendant, Interplane, spol.s.r.o., individually and as a joint venture and/or d/b/a Skyboy Sport Aircraft, is believed and therefore averred to be a corporation organized and existing under the laws of the Czech Republic, with its principal place of business there, and at all times material hereto was the designer, manufacturer, builder and seller of the ultralight aircraft involved in this accident, who sought and achieved distribution of its aircraft and the Rotax engine with which it was equipped in the United States and the Commonwealth of Pennsylvania through the other Interplane defendants and the plaintiffs' decedents.

12.    Defendant Inter-Plane, Inc., individually and as a joint venture and/or d/b/a Skyboy Sport Aircraft, is believed to be and therefore averred to be a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in that state, and at all times material hereto was the designer, manufacturer, builder and seller of the ultralight aircraft involved in this accident, who sought and achieved distribution of its aircraft and the Rotax engine with which it was equipped in the United States and the Commonwealth of Pennsylvania through the other Interplane defendants and the plaintiffs' decedents.

13.    Defendant Interplane USA, LLC, individually and as a joint venture and/or d/b/a Skyboy Sport Aircraft, is believed to be and therefore averred to be a corporation

organized and existing under the laws of Michigan, with its principal place of business in that state, and at all times material hereto was the designer, manufacturer, builder and seller of the ultralight aircraft involved in this accident, who sought and achieved distribution of its aircraft and the Rotax engine with which it was equipped in the United States and the Commonwealth of Pennsylvania through the other Interplane defendants and the plaintiffs' decedents.

14.    Defendant Interplane USA LLC, individually and as a joint venture and/or d/b/a Skyboy Sport Aircraft, is believed to be and therefore averred to be a corporation organized and existing under the laws of the State of Florida, with its principal place of business in that state, and at all times material hereto was the designer, manufacturer, builder and seller of the ultralight aircraft involved in this accident, who sought and achieved distribution of its aircraft and the Rotax engine with which it was equipped in the United States and the Commonwealth of Pennsylvania through the other Interplane defendants and the plaintiffs' decedents.

15.    Defendant Interplane LLC, Individually and as a joint venture and/or d/b/a Skyboy Sport Aircraft, is believed to be and therefore averred to be a corporation organized and existing under the laws of the State of Florida, with its principal place of business in that state, and at all times material hereto was the designer, manufacturer, builder and seller of the ultralight aircraft involved in this accident, who sought and achieved distribution of its aircraft and the Rotax engine with which it was equipped in the United States and the Commonwealth of Pennsylvania through the other Interplane defendants and the plaintiffs' decedents.

- 8 -

16.    At all times material hereto, defendants Interplane USA, Inc., Interplane USA, Inc., Interplane, spol.s.r.o., Inter-Plane, Inc., Interplane USA, LLC, Interplane USA LLC, Interplane LLC (hereinafter collectively referred to as "the Interplane defendants"), and each of them, were the agents, employees, servants, joint adventurers, partners, parents, subsidiaries, relatives, wholly-owned entities, or concerted actors of or with each of the remaining defendants in that, in performing or failing to perform the actions herein alleged, each was acting Individually and through or in the foregoing alleged capacity and within the course and scope of said agency, employment, joint venture, partnership, subsidiary, wholly-owned entity, or concerted action, and with the permission and consent of each of the other defendants.

17.    Defendant Jersey Central Power and Light Company, individually and as a joint venture and/or d/b/a GPU Energy, Inc., Metropolitan Edison Company, Pennsylvania Electric Company, GPU, Inc. and FirstEnergy Corporation, is believed to be and therefore averred to be a public utility, organized and existing under the laws of the State of New Jersey, and at all times material hereto, owned, maintained, operated and controlled power lines that ran southeast of the York County Airport, with an authorized agent for service of process located in Philadelphia County.

18.    Defendant, FirstEnergy, individually and as a joint venture and d/b/a Jersey Central Power and Light, GPU Energy, Pennsylvania Electric Company, GPU, Inc. and Metropolitan Edison, is believed and therefore averred to be a corporation organized and existing under the laws of the State of Ohio, and was co-owner, sole owner, or maintained, operated and/or controlled the power lines southeast of the York County Airport.

19.    FirstEnergy and Jersey Central Power and Light are collectively referred to as the "energy company defendants."

**Jurisdiction and Venue**

20.    Personal jurisdiction is proper in Pennsylvania in that defendants, and each of them, conduct a continuous and systematic portion of their business operations in the Commonwealth of Pennsylvania, availing themselves of the privilege of doing business in this Commonwealth and subjecting themselves to the jurisdiction of the courts of this Commonwealth, including the Court of Common Pleas of Philadelphia County.  All defendants do business within the Commonwealth of Pennsylvania, by availing themselves to the business opportunities here, advertising, providing goods, and providing services in the Commonwealth of Pennsylvania, and receiving money from those businesses in this state who order goods, services, and publications and pay for them.

21.    The Interplane and Bombardier defendants further availed themselves of the services of plaintiffs' decedents in the Commonwealth of Pennsylvania to promote and sell their products here.  In addition, defendants supply literature to aircraft owners located within the Commonwealth of Pennsylvania, and to mechanics, fixed base operators, and others who perform aircraft engine maintenance in this state for purposes of providing information and knowledge as to parts that can be purchased from the defendants for the repair or replacement of aircraft and their components.

22.    Subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1332(a)(1) due to the diversity of citizenship between the parties, the amount in controversy being certified in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs.

- 10 -

23.    Venue is proper pursuant to 28 U.S.C. § 1391 in that certain of the defendants are subject to personal jurisdiction within the Eastern District of Pennsylvania and/or substantial facts giving rise to the lawsuit took place here.

**Background**

24.    On July 22, 2000, the plaintiffs' decedents were traveling in an aircraft designed, built, manufactured, sold, and supported by the Interplane defendants, with an engine designed, manufactured, sold, and supported by the Bombardier defendants, and were attempting a landing at the York County Airport in York, Pennsylvania.

25.    Long prior to July 22, 2000, the Bombardier defendants supplied Rotax powerplants to the Interplane defendants, manufacturers of ultralight aircraft.

26.    The Bombardier defendants, and each of them, are in the business of designing, manufacturing, selling, distributing and/or providing troubleshooting and product support for Rotax engines used in ultralight aircraft.

27.    While the engines are actually manufactured by Rotax, Bombardier, as the parent, co-partner, and in joint venture with Rotax, acted in a supervisory capacity by providing guidance, instructions, and management of the Rotax organization, and at all times material hereto Bombardier is one of the world's largest manufacturers of certified aircraft and, therefore, provides information to Rotax on the subject of the requirements as to reliability of engines manufactured by Rotax for use in aircraft, and it is by Bombardier's imprimatur that Rotax engines are supplied for aircraft use.

28.    The Bombardier defendants, and each of them, knew at all times material hereto that the ultralight aircraft for which its engines were supplied would be used for

flight, and the in-flight occurrence of an engine failure or sudden stoppage would require an emergency landing of the ultralight.

29.    The Bombardier defendants knew at all times material hereto that ultralights, being aircraft, fly everywhere, and from time-to-time can be over areas where a safe landing cannot be accomplished in the event of an engine failure.

30.    The Bombardier defendants also knew, long prior to July 22, 2000, that the engines they were selling to ultralight manufacturers for use in aircraft was prone to sudden and unexplained stoppages, such that it was unpredictable as to when and where the engine would stop.

31.    The Bombardier defendants were aware from other sudden stoppages of other aircraft engines they produced that this engine was notoriously unreliable, unpredictable and could, and did, suffer engine failures that would result in serious personal injury or death.

32.    Notwithstanding the actual knowledge by the Bombardier defendants that their engines could cause serious personal injury or death and did suffer from unexplained stoppages that resulted in emergency landings, which caused injuries and deaths, defendants did continue to sell these engines to ultralight manufacturers for the express purpose of using these engines in aircraft that would be flown by both experienced and inexperienced pilots, but more importantly, would have passengers or students from time to time who would be completely unaware of this sudden stoppage propensity.

33.    Rather than address the defects or cease selling the engines for use in aircraft, defendants instead purported to issue so-called "legal notices" posted on the Internet and elsewhere, and placed a purported "warning" mounted on the engine itself

- 12 -

where it would not be seen by passengers or pilots who were not owners of aircraft equipped with the Rotax engines, the sole purpose of which was not to provide notice of a danger but to evade and/or limit the Bombardier defendants' liability for their defective products.

34.    No warning whatsoever was provided to passengers or pilots or owners of aircraft equipped with the engines to enable them to know that defendants were aware that the engines were so completely and unpredictably unreliable.

35.    The Interplane defendants likewise knew, or should have know, long prior to July 22, 2000 that Rotax engines were inappropriate for use in aircraft given their unreliability and propensity for sudden stoppages.

36.    As the aircraft in which plaintiffs' decedents were traveling approached the airport on July 22, 2000, it was required to execute a go-around because of other aircraft on the runway, and while executing that go-around, the engine of the aircraft failed, requiring plaintiffs' decedents to commence an emergency landing procedure.

37.    Defendants FirstEnergy Corporation and Jersey Central Power and Light Company, owned, maintained, operated and controlled power lines southeast of the York County Airport which, notwithstanding the close proximity to the airport, were completely unmarked. There were no balls, flashers or other customary markings to advise pilots who were flying in the vicinity of an airport of the location, or even the existence, of the power lines.

38.    As the aircraft attempted to maneuver for the emergency landing, it struck the power lines and crashed, killing both aboard.

- 13 -

39.    This action is brought pursuant to the wrongful death and survival statutes of the Commonwealth of Pennsylvania for all such compensatory and exemplary damages recoverable under such statutes, and under the applicable law including, but not limited to, conscious pain and suffering, fear of impending death by mutilation, loss of life's pleasures, loss of inheritance, loss of care, comfort, companionship, guidance, tutelage, loss of net accumulations, and such other damages as are recoverable under the law.

40.    Plaintiff Theresa Marie Simeone, the wife of Albert Francis Simeone, brings this action in her capacity as personal representative of her late husband's estate and in her own behalf, on behalf of the estate, as parent and natural guardian, and on behalf of all persons entitled to recover under the Pennsylvania wrongful death statute, including her three children: Stacey Marie, born August 13, 1979; Kimberly Ann, born October 7, 1981; and Kelly Lee, born July 12, 1985.

41.    Plaintiff Mary Ann Lenygel brings this action in her capacity as personal representative of her late husband's estate and in her own behalf, on behalf of the estate, as parent and natural guardian, and on behalf of all persons entitled to recover under the Pennsylvania wrongful death statute, including of her three children: George A. Lenygel, born July 24, 1982; Virginia L. Lenygel, born September 17, 1984; and Christina M. Lenygel, born April 8, 1987.

Theories of Recovery

## COUNT I

### Strict Liability

### *Plaintiffs v. The Bombardier Defendants*

42.    Plaintiffs incorporate by reference paragraphs 1 through 41 as though set forth at length herein.

43.    The Bombardier defendants, and each of them, are sellers and/or suppliers as defined by section 402A of the RESTATEMENT (SECOND) OF TORTS.

44.    The Rotax engine on the accident aircraft was in substantially the same condition at the time of this accident as it was when sold, delivered and supplied by the Bombardier defendants.

45.    The Rotax engine was defective and totally unsuitable for its intended use and function, as it was acknowledged by defendants to be subject to sudden and unpredictable engine stoppages in-flight as the results of assorted defects, which would and did result in crashes and serious personal injury and death.

46.    The defects in the engine include, but are not limited to, the following, which made the engine not reasonably safe for its intended and reasonably foreseeable uses:

  a.    lack of adequate tolerance of component parts;

  b.    lack of proper instructions with respect to maintenance, assembly, and operation;

  c.    insufficient manufacture and design tolerances to allow consistent, reliable operation;

- 15 -

d.    high degree of probability of engine failure;

e.    improperly monitored and controlled fuel flows;

f.    inadequate design of pistons that would result in their seizure;

g.    inadequate selection of materials that would result in engine seizures;

h.    inadequate instructions with respect to preventing engine seizures; and

i.    failure to warn of the fact the engine was subject to sudden and unpredictable engine stoppages in-flight and was otherwise dangerous and not suitable for use in aircraft,

j.    inadequate design and manufacture of the oil supply system,

k.    inadequate design and manufacture of the fuel system. and

l.    inadequate design and manufacture of the engine cooling system.

47.    The defects, as described above, existed at the time of manufacture and sale of the engine and before the engine left the control of the defendants.

48.    The Rotax engine installed on the accident aircraft was being used for its intended purpose and in a way that was reasonably foreseeable, was not being misused, and had not been substantially altered in a way that was not reasonably foreseeable.

49.    The defects in the engine, as described above, resulted in engine failure on the aircraft in which plaintiffs' decedents were flying, and were a substantial factor in the happening of the accident of the crash and the fatal injuries suffered by plaintiffs' decedents.

WHEREFORE, plaintiffs pray for judgment against the Bombardier defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs, and for punitive damages in an amount to be determined at trial.

## COUNT II

### Negligence

### *Plaintiffs v. The Bombardier Defendants*

50.    Plaintiffs incorporate by reference paragraphs 1 through 49 as though set forth at length herein.

51.    The Bombardier defendants, and each of them, owed a duty to supply an engine that was airworthy and to otherwise act in a reasonable manner for the safety of others.

52.    As a consequence of all of the design defects, manufacturing defects, and failure to warn defects described in paragraph 47 hereof, the Bombardier defendants became aware and had actual knowledge that the powerplant could quit at any time as a result of sudden stoppage, and when applied to aircraft, would result in an emergency landing.

53.    In spite of the fact that Bombardier defendants were aware of the defects in the engines of their own design and manufacture, which could, would, and did result in engine stoppage, they continued to sell the engines for use in aircraft, knowing the defects would guarantee serious personal injury or death as a result of emergency landings.

54.    In spite of the fact that the engine was not reasonably safe for its intended and reasonably foreseeable uses, the Bombardier defendants took no steps to correct or to warn of the defects but instead mounted an alleged "warning" on the engine and out of

# FACSIMILE COVER SHEET



**SAUL EWING** LLP
ATTORNEYS AT LAW
A DELAWARE LLP

Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186

**From:** PAUL M. HUMMER
Pages (including cover): 32
Client/Matter #: 99998/00210
User #: 515

**Date:** August 13, 2002
**Direct Phone:** (215) 972-7788
**Direct Fax:** (215) 972-1851
**Sender's Floor:** 38

| To: Name | Fax Number | Phone Number |
|---|---|---|
| Yves St. Arnaud | 450-461-7748 | |

| CC: Name | Fax Number | Phone Number |
|---|---|---|

**Comments:**

Per your request.

☐ The Original will be sent by regular mail.
☐ The Original will be sent by overnight delivery.
☑ No Original will be sent.

**IMPORTANT NOTICE**

This transmission is intended only for the addressee named above and may contain information that is privileged, confidential, or otherwise protected from disclosure to anyone else. Any review, dissemination or use of this transmission or its contents by persons other than the addressee is strictly prohibited. If you have received this facsimile in error, please telephone us immediately at (215) 972-8699 and return the original to us by mail at the address stated above.

# Confirmation Report — Memory Send

Date & Time: Aug-13-2002 03:04pm
Tel line   : +450 461 7748
Machine ID : BOMBARDIER RECREATIF

Job number          :   280

Date & Time         :   Aug-13 03:04pm

To                  :   95142881781

Number of pages     :   002

Start time          :   Aug-13 03:04pm

End time            :   Aug-13 03:04pm

Pages sent          :   002

Status              :   OK

Job number    : 280            *** SEND SUCCESSFUL ***

ordinary sight to the effect that the engine does not comply with federal safety regulations for standard aircraft and is for use in experimental and uncertified aircraft only in circumstances in which an engine failure will not compromise safety, which is tantamount to no warning at all.

55.  The negligence of the Bombardier defendants, in breach of their duty of care, consisted of the following:

  a. selling and supplying an engine with lack of adequate tolerance of component parts;

  b. failing to provide proper instructions with respect to maintenance, assembly, and operation;

  c. selling and supplying an engine with insufficient manufacture and design tolerances to allow consistent, reliable operation;

  d. selling and supplying an engine with high degree of probability of engine failure;

  e. selling and supplying an engine with improperly monitored and controlled fuel flows;

  f. selling and supplying an engine with inadequate design of pistons that would result in their seizure;

  g. inadequately selecting materials that would result in engine seizures;

  h. inadequately proving instructions with respect to preventing engine seizures;

i.      failing to warn of the fact the engine was subject to sudden and unpredictable engine stoppages in-flight and was otherwise dangerous and not suitable for use in aircraft;

j.      inadequately designing and manufacturing of the oil supply system;

k.      inadequately designing and manufacturing of the fuel system; and

l.      inadequately designing and manufacturing of the engine cooling system.

56.     As a direct and proximate result of the negligence of the Bombardier defendants, in breach of their duty of care, the engine stopped and plaintiffs' decedents were killed, causing plaintiffs to sustain the damages alleged herein.

WHEREFORE, plaintiffs pray for judgment against the Bombardier defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs, and for punitive damages in an amount to be determined at trial.

## COUNT III

### Reckless, Willful and Wanton Misconduct, Fraud and Deceit

### *Plaintiffs v. The Bombardier Defendants*

57.     Plaintiffs incorporate by reference paragraphs 1 through 56 as though set forth at length herein.

58.     The Bombardier defendants, and each of them, were aware at all times material hereto that their engines were so unreliably designed, built, and manufactured that a sudden stoppage could, without any degree of predictability, occur.

- 19 -

59.    Defendants knew that ultralight aircraft in which their engines are installed fly in airspace that is regulated by the Federal Aviation Administration.

60.    Defendants knew, because they produced a certified aircraft engine, that the Federal Aviation Administration would never allow the use of such an unreliable powerplant in an aircraft.

61.    Defendants knew that the Ultralight Aircraft Association had obtained certain variances from the Federal Aviation Administration that allowed aircraft manufactured or assembled by its members to be exempt from certain, but not all, Federal Aviation Regulations.

62.    Notwithstanding the above, defendants knew that by their conduct they would be allowing persons in the position of plaintiffs' decedents to occupy aircraft powered by an engine that had no acceptable reliability testing and had no level of reliability, and which could otherwise not be used in aircraft that were certified for flight.

63.    Notwithstanding that knowledge, the fact that the engine was unreliable, and the fact that it could not be predicted when the engine would suddenly fail, resulting in an emergency, serious personal injury, and death, defendants sold this powerplant for use in aircraft.

64.    The unreliability of the engines and their lack of suitability for use in aircraft application was material information not known to members of the flying public or to plaintiffs' decedents or to persons in the position of plaintiffs' decedents and concealed by defendants.

65.    In the face of this actual knowledge of a danger unknown to others, defendants not only sold the powerplant for use in aircraft, but engaged in a scam of deceit,

designed to assure that any owner or operator would assume a legal risk of injury or death caused by defendants' defective and dangerous engine by publicly promoting their product through oral and written misrepresentation in trade publications and trade shows for at least the last ten years.

66.    Notwithstanding actual knowledge that the engines were completely unsuitable for use in aircraft, defendants nevertheless sold the engines for use in aircraft, knowing that the unpredictable failure rate of the engine would result in serious personal injury or death, and attempted instead to conceal the danger and pass along liability for the defective engine by making purported disclaimers to the effect that there was an inherent risk in using Rotax engines in aircraft and that operators of aircraft equipped with their engine assumed any and all risk relating to such use, knowing that aircraft manufacturers and owners would never take such alleged disclaimers seriously to the extent they were even aware of same.

67.    Defendants knew that the efforts to disclaim liability were a scam, and were fraudulent and deceitful in that they would go only to the owner and/or manufacturer of the aircraft, but not to any passenger or other person who was not an owner and/or manufacturer of the aircraft.

68.    Defendants engaged in a deliberate attempt to artificially impose knowledge upon people who were uninformed of something that was unpredictable and unpreventable, when the defendants knew at all times that by selling and marketing the engine for use in aircraft, they were diminishing and eliminating the effectiveness of any alleged warnings or disclaimers provided.

69.    Defendants were deceitfully, fraudulently, and with the intent to mislead selling an engine for use in aircraft that by the sale itself implied that any warnings and disclaimers were not true or not to be regarded by aircraft manufacturers or owners.

70.    Notwithstanding the foregoing, plaintiffs had no warning, nor were any steps taken to provide plaintiffs with a warning, of the unreliability and unpredictability of sudden stoppage of the engine.

71.    As a result of the false, fraudulent, and deceitful conduct of the defendants, the engines were marketed and sold for use in aircraft, and ultralight aircraft manufacturers and owners flew these aircraft, which in this instance resulted in a crash and the deaths of plaintiffs' decedents.

72.    Plaintiffs' decedents did not know that the engines were unsuitable for use in aircraft nor did they know of any purported disclaimers and warnings and relied on the absence of any contrary information in justifiably flying the accident aircraft on July 22, 2000, and had they known of the lack of suitability of the engines, they would not have flown the accident aircraft.

73.    The conduct of defendants in exposing plaintiffs' decedents, persons on the ground below, and those who were unaware of the lack of unreliability and unsuitability of the engine for aircraft to serious personal injury or death was a substantial factor in the happening of the accident and the fatal injuries suffered by plaintiffs' decedents, and is outrageous, wanton, and unjustified behavior, entitling plaintiffs to punitive damages.

WHEREFORE, plaintiffs pray for judgment against the Bombardier defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs, and for punitive damages in an amount to be determined at trial.

## COUNT IV

### Breach of Warranty

#### Plaintiffs v. The Bombardier Defendants

74.    Plaintiffs incorporate by reference paragraphs 1 through 73 as though set forth at length herein.

75.    The Bombardier defendants are now, and were at all times material hereto, merchants engaged in the business of selling aircraft engines, including the engine used on the accident aircraft.

76.    The Bombardier defendants described and advertised the accident aircraft engine for use by ultralight manufacturers.

77.    Such descriptions and advertisements included, but were not limited to, advertising, Internet publications on various websites, information in brochures, specification sheets, and other product statements, which resulted in express warranties that the accident aircraft engine and components were safe for their intended use, notwithstanding any other purported disclaimers to the contrary.

78.    By selling defective goods, the Bombardier defendants have breached their express warranties that the aircraft engine and its components were safe for their intended use, notwithstanding any other purported disclaimers to the contrary.

79.    There also arose, by operation of law, certain implied warranties of merchantability and that the engines were fit for their intended purpose; to wit, safe flight.

80.    The Bombardier defendants breached those implied warranties in that the engines were neither of a fair or average quality or fit for their intended purpose, but

- 23 -

instead, were defective and dangerous for the reasons aforementioned. By filing this lawsuit, plaintiffs have provided reasonable notice to the defendants that they have breached their express warranties, and any disclaimers and limitations of the above warranties constitute bad faith in commercial dealing, are unconscionable, and cause the said warranties to fail their essential purpose.

81.    The aforementioned breaches of warranties by these defendants were a direct and proximately caused the crash of the accident aircraft, and the deaths of plaintiffs' decedents, as enumerated herein.

WHEREFORE, plaintiffs pray for judgment against the Bombardier defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs, and for punitive damages in an amount to be determined at trial.

## COUNT V

### Strict Liability

### _Plaintiffs v. the Interplane Defendants_

82.    Plaintiffs incorporate by reference paragraphs 1 through 81 as though set forth at length herein.

83.    The Interplane defendants, and each of them, were sellers within the meaning of section 402A of the RESTATEMENT (SECOND) OF TORTS.

84.    The aircraft in which the plaintiffs' decedents were flying was in substantially the same condition as it was as when sold by the Interplane defendants.

85.    The aircraft was at all times material hereto defective in that it was equipped with a defective powerplant, as more particularly set forth in detail in the

- 24 -

averments relating to the Bombardier defendants, and the defects in which include but are

not limited to:

a.    lack of adequate tolerance of component parts;

b.    lack of proper instructions with respect to maintenance, assembly,

and operation;

c.    insufficient manufacture and design tolerances to allow consistent,

reliable operation;

d.    high degree of probability of engine failure;

e.    improperly monitored and controlled fuel flows;

f.    inadequate design of pistons that would result in their seizure;

g.    inadequate selection of materials that would result in engine

seizures;

h.    inadequate instructions with respect to preventing engine seizures;

i.    failure to warn of the fact the engine was subject to sudden and

unpredictable engine stoppages in-flight and was otherwise dangerous and not suitable for

use in aircraft;

j.    inadequate design and manufacture of the oil supply system;

k.    inadequate design and manufacture of the fuel system; and

l.    inadequate design and manufacture of the engine cooling system.

86.    Long prior to the sale of the aircraft with its powerplant, these defendants

were aware, or should have been aware, of the unpredictable engine stoppage defect in the

powerplant.

- 25 -

87.    Notwithstanding that knowledge, these defendants did not either warn the plaintiffs' decedents or the public-at-large of the existence of that defect, nor did they equip the aircraft with a powerplant that was not subject to the sudden stoppage defect as was the Bombardier powerplant.

88.    At all times material hereto, the defects in the aircraft and powerplant were such that they made the aircraft defective.

89.    The defects in the aircraft and powerplant were a substantial factor in the occurrence of the crash, which caused the injuries and deaths to the plaintiffs' decedents and the damages for which plaintiffs seek relief.

WHEREFORE, plaintiffs pray for judgment against the Interplane defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs, and for punitive damages in an amount to be determined at trial.

## COUNT VI

### Negligence

#### *Plaintiffs v. the Interplane Defendants*

90.    Plaintiffs incorporate by reference paragraphs 1 through 89 as though set forth at length herein.

91.    The Interplane defendants, and each of them, owed a duty to sell and/or supply and/or support an aircraft that was airworthy and safe for flight.

92.    The negligence of the Interplane defendants, in breach of their duty, consisted of the following:

a.    Carelessly and recklessly selecting a Rotax powerplant for the aircraft;

- 26 -

b.    Carelessly and recklessly failing to select a powerplant that did not have sudden stoppage characteristics;

c.    Carelessly and recklessly failing to warn the plaintiffs' decedents of the realities of the sudden stoppage history of the Rotax powerplant;

d.    Carelessly and recklessly failing to equip the aircraft with the means by which it could determine the likelihood of a powerplant failure;

e.    Carelessly and recklessly failing to equip the aircraft with a wire cutter;

f.    Carelessly and recklessly failing to equip the aircraft with a safe and reliable fuel system;

g.    Carelessly and recklessly failing to equip the aircraft with a safe and reliable powerplant;

h.    Carelessly and recklessly failing to train the plaintiffs' decedents in the operation of the aircraft;

i.    Carelessly and recklessly failing to train the plaintiffs' decedents in the unpredictability of powerplant failures;

j.    inadequate design and manufacture of the oil supply system;

k.    inadequate design and manufacture of the fuel system;

l.    inadequate design and manufacture of the engine cooling system;

m.    Carelessly and recklessly failing to provide guidance and information concerning the aircraft's glide characteristics in the event of a powerplant malfunction;

96.    Arising with the sale of the aircraft were certain implied warranties of merchantability and fitness for a particular purpose.

97.    The warranty of merchantability was that the aircraft and its powerplant were of fair or average quality as other aircraft and other powerplants used for the powering of aircraft, and fitness for a particular purpose in that the aircraft was fit for safe flight.

99.    At all times material hereto, the aircraft and its powerplant were unfit for safe flight and, therefore, the Interplane defendants violated the implied warranty of fitness for a particular purpose.

100.    At all times material hereto, the Interplane defendants violated their implied warranty of merchantability in that the aircraft and its engine were not of fair or average quality in that there were other ultralight engines that did not suffer from sudden, unpredictable engine stoppage.

101.    As a direct and proximate result of the breach of warranties by the Interplane defendants, the plaintiffs' decedents suffered serious personal injuries and death, causing the damages claimed herein.

WHEREFORE, plaintiffs pray for judgment against the defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs, and for punitive damages in an amount to be determined at trial.

## COUNT VIII

### Negligence

#### *Plaintiffs v. The Energy Company Defendants*

102.    Plaintiffs incorporate by reference paragraphs 1 through 101 as though set forth at length herein.

103.    The energy company defendants, and each of them, owed a duty to exercise reasonable care with respect to certain power lines each maintained.

104.    The negligence of these defendants, in breach of their respective duties of care, consisted of the following:

    a.    failing to comply with the Federal Aviation Regulations with respect to identification and marking of power lines;

    b.    failing to comply with industry standards with respect to the identification and marking of power lines;

    c.    failing to exercise reasonable care and judgment with respect to the marking of power lines in close proximity to an airport;

    d.    failing to comply with custom and usage in the industry for marking of power lines in close proximity to an airport;

    e.    failing to comply with the regulatory requirements, suggestions and recommendations of Governmental authorities with respect to the marking of power lines in close proximity to an airport;

    f.    failing to heed warnings from industry and trade sources with respect to the importance of the marking of power lines in close proximity to an airport;

g.    failing to exercise reasonable care with respect to the ownership, maintenance and control of power lines;

h.    failing to heed warnings from their own experience with regard to aircraft wire strike accidents to ensure that those power lines in close proximity to an airport are marked so as to preclude impacts between aircraft and power lines;

i.    otherwise violating the obligations of an owner, maintainer or lessee of power lines to mark them in the vicinity of an airport; and

j.    failing to advise agents, successors, assigns, employees and others that the power lines in close proximity to the York County Airport were unmarked.

105.    As a direct and proximate consequence of these defendants' failure to mark the power lines in close proximity to an airport and breach of their duty of care, the power lines were not seen by plaintiffs' decedents, and the aircraft came in contact with them, resulting in the aircraft going out of control and crashing to the ground, killing plaintiffs' decedent.

WHEREFORE, plaintiffs pray for judgment against the Energy Company defendants in an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs, and for punitive damages in an amount to be determined at trial.

WOLK & GENTER

By: _____
Arthur Alan Wolk, Esquire
1710-12 Locust Street
Philadelphia, PA 19103
(215) 545-4220
Attorney for Plaintiff

- 31 -

# EXHIBIT C

RAWLE & HENDERSON LLP
By:     John E. Salmon, Esquire, Joel I. Herzfeld
Identification Nos. 30148, 77994
One South Penn Square
The Widener Building
Philadelphia, PA 19107
(215) 575-4200

Attorneys for Defendants
Interplane USA, Inc.
Interplane USA, LLC
Interplane, spol.s.r.o., Inter-Plane, Inc. and
Interplane, LLC

| | | |
|---|---|---|
| THERESA MARIE SIMEONE, Personal Representative of the Estate of Albert Francis Simeone, Jr., Deceased, and THERESA MARIE SIMEONE In Her Own Right | : : : : : | COURT OF COMMON PLEAS PHILADELPHIA COUNTY |
| and | : | |
| MARY ANN LENGYEL, Personal Representative of the Estate of George Lengyel Deceased and MARY ANN LENGYEL, In Her Own Right | : : : : | JULY TERM, 2002 |
| v. | : | |
| BOMBARDIER-ROTAX GmbH, Individually and as a Joint Venture and/or d/b/a Rotax A-4623 Gunskirchen, Austria | : : : | NO. 02746 |
| and | : | |
| BOMBARDIER, INC., Individually and as a Joint Venture and/or d/b/a Rotax | : : | |
| and | : | |
| BOMBARDIER CORPORATION, Individually and as a Joint Venture and/or d/b/a Rotax | : : | |
| and | : | |
| KODIAK RESEARCH, LTD., Nassau, Bahamas, Individually and as a Joint Venture and/or d/b/a Rotax | : : : | |
| and | : | |
| ROTECH RESEARCH CANADA LTD. a/ka KODIAK RESEARCH CANADA, LTD. Individually and as a Joint Venture and/or d/b/a Rotax | : : : : | |
| and | : | |
| INTERPLANE USA, LLC, Individually and as a Joint Venture and/or d/b/a Skyboy Sport Aircraft | : : | |
| and | : | |
| INTERPLANE, spol.s.r.o., Individually and as a Joint Venture and/or d/b/a Skyboy Sport Aircraft | : : | |
| and | : | |
| INTER-PLANE, INC., Individually and as a Joint Venture and/or a Skyboy Sport Aircraft | : : | |

and                                          :
INTERPLANE USA, INC., Individually and as a   :
Joint Venture and/or d/b/a Skyboy Sport Aircraft :
                and                          :
INTERPLANE USA LLC, Individually and as a    :
Joint Venture and/or d/b/a Skyboy Sport Aircraft :
                and                          :
INTERPLANE LLC, Individually and as a        :
Joint Venture and/or d/b/a Skyboy Sport Aircraft :
                and                          :
JERSEY CENTRAL POWER AND LIGHT               :
COMPANY, Individually and/or as a Joint Venture :
and/or d/b/a GPU ENERGY, INC.,
METROPOLITAN EDISON, PENNSYLVANIA            :
ELECTRIC, GPU, INC., AND FIRST ENERGY        :
CORPORATION                                  :
                and                          :
FIRSTENERGY CORPORATION, Individually        :
and/or as a Joint Venture and d/b/a GPU       :
ENERGY, METROPOLITAN EDISON                  :
COMPANY, PENNSYLVANIA ELECTRIC              :
COMPANY, GPU, INC., AND JERSEY              :
CENTRAL POWER AND LIGHT COMPANY             :

## STIPULATION GRANTING PLAINTIFF LEAVE
## TO FILE AMENDED COMPLAINT

It is hereby stipulated and agreed by and between Arthur Alan Wolk, counsel for

Plaintiffs, Theresa Marie Simeone  and Mary Ann Lengyel, and John E. Salmon, counsel for the

Interplane defendants that the plaintiffs be granted leave to file an amended Complaint.

WOLK & GENTER                          RAWLE & HENDERSON LLP

By:_____            By:_____
    Arthur Alan Wolk                       John E. Salmon
    Counse l for Plaintiffs                 Philadelphia, PA 19107
    Theresa Marie Simeon                   Counsel for Defendants
    and Mary Ann Lengyel                   Interplane USA, Inc, Interplane,USA
                                           LLC, Interplane, spol.s.r.o.,
                                           Inter-plane, Inc. Interplane LLC

BY THE COURT:

_____

                                                    J.

832133 v.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on June 12, 2003, a true and correct copy of the foregoing was served upon the following by first class mail, postage prepaid:

### Attorney for Bombardier Corporation

Jonathan Dryer, Esq.
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER
The Curtis Center, Suite 1130 East
Independence Square
Philadelphia, PA 19106

### Attorney for Jersey Central Power & Light and First Energy Corporation, Pennsylvania Electric Co., GPU Inc. GPU Energy Inc. and Metropolitan Edison

Nathaniel E.P. Ehrlich, Esq.
ANAPOL, SWARTZ, WEISS, COHAN,
   FELDMAN & SMALLEY
1710 Spruce Street
Philadelphia, PA 19103

### Attorneys for Interplanes in Michigan

John E. Salmon, Esq.
RAWLE & HENDERSON
The Widener Building
One South Penn Square
Philadelphia, PA 19107

Alan L. Farkas, Esq.
MADSEN, FARKAS & POWEN, LLC
Suite 1550 Burnham Center
111 West Washington Street
Chicago, IL 60602-2709

**Unrepresented Parties**

BOMBARDIER-ROTAX GmbH, Individually
and as a Joint Venture and/or d/b/a Rotax
A-4623 Gunskirchen, Austria

BOMBARDIER INC., Individually and as a Joint
Venture and/or d/b/a Rotax
800 Rene-Levesque Boulevard, 29th Floor
Montreal, Quebec
Canada  H3B 1Y8

KODIAK RESEARCH LTD., Nassau, Bahamas,
Individually and as a Joint Venture and/or d/b/a
Rotax
P.O. Box N9455
Nassau, The Bahamas

ROTECH RESEARCH CANADA
LTD. a/k/a KODIAK RESEARCH
CANADA, LTD., Individually and as a Joint
Venture and/or d/b/a Rotax
6235 Okanagan Landing Road
Vernon, British Columbia,
Canada  V1H 1MS

INTERPLANE USA, INC., Individually and as a
Joint Venture and/or d/b/a Skyboy Sport Aircraft
3460 Airplane Drive
Lakeland, FL  33540

INTERPLANE USA, LLC, Individually and as a
Joint Venture and/or d/b/a Skyboy Sport Aircraft
39440 South Avenue
Zephyrhills, FL  33540

INTERPLANE, spol.s.r.o., Individually and as a
Joint Venture and/or d/b/a Skyboy Sport Aircraft
285 21 Zbraslavice
Czech Republic

INTERPLANE LLC, Individually and as a
Joint Venture and/or d/b/a Skyboy Sport Aircraft
39440 South Avenue
Zephyrhills, FL  33540

Arthur Alan Wolk, Esquire
Philip J. Ford, Esquire
Christopher J. Cerski, Esquire
WOLK & GENTER
1710-12 Locust Street
Philadelphia, PA 19103
(215) 545-4220
*Attorneys for Plaintiffs*