# EXHIBIT K

01/07/02 14:29 FAX 701 223 7865        PEARCE & DURICK PLLP        ☒003/018

STATE OF NORTH DAKOTA

COUNTY OF MORTON

IN DISTRICT COURT

Case No. 01-C-1219



ORDER

This action is before the Court on motions filed by defendants Bombardier inc., Bombardier Recreational Products and Bombardier-Rotax GmbH.

The plaintiff, Lynette Lipp, brought this action individually, as personal representative of the Jerome Lipp estate and as natural guardian of Justin and Brandon Lipp. The plaintiff will be referred to as Lipp.

On June 5, 1999, Lipp's husband, Jerome Lipp, was a passenger on a Six-Chuter brand powered-parachute. The powered-parachute was being operated by its owner, Joseph Weinrirl. During the flight, the engine of the powered-parachute stalled and the powered-parachute crashed into the Missouri River- Jerome Lipp, who suffered from paraplegia and was unable to move his body below his waist, died of drowning on June 9, 1999.

Lipp asserts the powered parachute's engine was "designed, manufactured,

I

assembled, distributed, and sold" by Bombardier, Inc., Bombardier Recreational Products and / or Bombardier-Rotax GmbH.

Lipp has asserted claims of strict product liability, negligence, and breach of implied warranty against all the defendants. 'She alleges the powered-parachute and its engine were defective in design or manufacture.

Air Fun, Inc. is the entity from which Joseph Weinzirl purchased the powered-parachute. The powered-parachute was purchased in North Dakota and was designed, manufactured, assembled, distributed, and sold to Air Fun by Six-Chuter. The engine in the powered-parachute was designed, manufactured, assembled, and distributed by Bombardier-Rotax GmbH.

Bombardier Inc. is a Canadian corporation organized under the laws of the Province of Quebec, with its principal place of business in Montreal. Bombardier Recreational Products is a business group of Bombardier, Inc., and not a separate corporate entity. These defendants will be referred to as Bombardier.

Bombardier-Rotax GmbH is an Austrian Corporation, organized under the laws Of Austria. Its principal place of business is in Gunskirchen, Austria. Bombardier-Rotax GmbH is a subsidiary of Bombardier, It is a separate and independently operated company, This party will be referred to as Rotax.

Lipp has consented to entry of summary judgment in favor of Bombardier, without costs or disbursements assessed against any party.

### ISSUES

I.    Whether Rotax was properly served?

II.   Whether this Court may properly exercise personal jurisdiction over Rotax?

2

01/01/02  14:30 FAX 701 223 7865        PEARCE & DURICK        PLLP        005/018

## LAW AND ANALYSIS

### I.

Lipp obtained an order from Judge Robert O. Wefald under N.D.R.Civ.P. 4(f)(3) directing Rotax be served in two different ways. First, Lipp was directed to serve Rotax by delivering a copy of the Summons to the North Dakota Secretary of State. Second, Lipp was directed to mail a copy of the Summons to an officer, director, superintendent or managing agent of Rotax by certified, restricted delivery, U.S. mail. Rotax contends it was improperly served.

**A.    Attempted mail service on Rotax by serving the ND Secretary of State.**

The Rule 4(f)(3) order issued by Judge Wefald in the present case directed Lipp to serve Rotax by "delivering a copy of the Summons to the North Dakota Secretary of State. . , in accordance with N.D.C.C. § 10-19.1-142." Section 10-19.1-142(3) of the North Dakota Century Code provides that a foreign corporation appoints the Secretary of State as its agent for service when it transacts business here without a certificate of authority. Rotax argues that such service should be void because they do not transact business in North Dakota as provided for under Section 1 0-19.1-142(3) of the North Dakota Century Code.

Lipp argues that the plain language of Rule 4(f)(3) authorizes a court to direct service of process as it sees fit. Therefore, Lipp argues it is irrelevant whether or not Rotax "transacts business" within the state. Instead, the court provided a method of service on Rotax which would give Lipp a means of promptly commencing her action, and at the same time provide Rotax with a reasonable means of notice.

N.D.R.Civ.P. 4(f)(3), provides in relevant part that service on a foreign corporation, partnership, or other unincorporated association, that is subject to suit

3

under a common name, in a place not within any judicial district of the United States

may be effected by any other means not prohibited by international agreement as may

be directed by the court. The language between North Dakota's Rule 4(f) and Federal

Rule 4(f) are basically identical in substance. The plain language of Rule 4(f)(3) allows

a court to authorize any particular method of service of its own choosing, so long as

the order does not contradict any applicable international agreement. See *Mayoral-*

*Amy v. BHI Corporation,* 180 F.R.D. 456,459 (S.D.Fla. 1998); see also *Forum*

*Financial Group v. President and Fellows of Harvard College,* 199 F.R.D. 22, 23-

24 (D.Maine 2001) (acknowledging that Rule 4(9's plain language unambiguously

indicates that the only limit it imposes on court-directed service under the Rule 4(f)(3)

is that the means must not be prohibited by international agreement). Austria is not a

signatory to the Hague Convention.

According to the existing case/ law dealing with Federal Rule 4(f)(3), the rule

was adopted in order to provide flexibility and discretion to the federal courts in dealing

with questions of alternative methods for service of process in foreign countries. *In re*

*International Telemedia Associates, Inc.,* 245 B.R. 713, 719 (N.D. Ga. 2000).

Therefore, the rule is utilized to empower courts to fit the manner of service utilized to

the facts and circumstances of the particular case. *Id.*

In the present case, Judge Wefald properly utilized Rule 4(f)(3) as a means of

establishing a method of service on Rotax. His rule 4(f)(3) order satisfies the plain

language of the rule: it does not provide a means of service that is prohibited by

international agreement. As stated earlier, Austria is not a signatory to the Hague

Convention and Rotax has not provided the court with evidence regarding any other

type of international agreement betwden the US. and Austria. While Section 10-19.1-

4

142 of the North Dakota Century Code appears only to allow service on the Secretary of State on behalf of foreign corporations who "transact business" in N.D. without a certificate of authority, the actual purpose for issuing the Rule 4(f)(3) order under this statutory section appears to have been to provide the plaintiff with an agent the court determined would be proper to accept service on behalf Of Rotax. Such a determination by the court is within the broad discretionary powers granted to courts under Rule 4(f)(3). Based on the plain language of Rule 4(f)(3) and the broad discretion it grants to courts in fitting the manner of service utilized to the facts and circumstances of a particular case, service on Rotax via the Secretary of State was proper.

**B.    Lipp's failure to attempt to try diplomatic channels before obtaining a Rule 4(f)(3) order.**

The next issue under Rule 4(f)(3) is whether an attempt to effect service through diplomatic channels is requited. Rotax argues that Austria has a procedure for set-vice by a foreign plaintiff that was never utilized by Lipp. Rotax cites to *Graval v. P.T. Bakrie & Brothers,* 886 F.Supp. 1326 (C.D. Cal. 1996), to support this argument. In *Graval,* the court denied a request to direct service of process under Federal Rule 4(f)(3). The court cited to the Advisoy Committee's Notes regarding Rule 4(f)(2). *Id.* at 1330. The advisory notes state that when a court directs service of process; under that provision, "earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law." *Id.* (citing Fed.R.Civ.P. 4(f), Advisory Committee Notes, 1993 Amendment). Based on these accompanying notes to Rule 4(f)(2), the court denied the request for a Rule 4(f)(3) order.

It is important to note that the court's holding in *Graval* was based on the

advisory committee notes regarding Rule 4(f)(2), not Rule 4(f)(3). This was recognized by the court in *Forum Financial* Group, 199 F.R.D. at 24, n.3. when that court refused to extend the notes under Rule 4(f)(2) to stand for a proposition contrary to the plain language of Rule 4(f)(3).   The court in Forum Financial *Group* determined that the plain language of Rule 4(f)(3) established that it is not an alternative of last resort, nor is it any less favored than service under subsections (1) and (2). *Id.* at 23.

The holding in *Graval* is distinguishable on other grounds, as well. First, the time constraints in the present case appear to be different than in *Graval.* The time frame in the present case did not appear to allow for the attempt at utilizing diplomatic channels to effect service pursuant to Austrian law. This clearly may have been a consideration by the court when it directed service under Rule 4(f)(3). Further, the holding in *Graval* involved a denial of a requested Rule 4(f)(3) order. In the present case, the order has already been granted. Therefore, the failure of Lipp to pursue diplomatic channels does not appear to void the Rule 4(f)(3) order.

C.    **Failure of Lipp to address the summons to an individual office holder.**

Rotax finally argues that the attempted mail service by Lipp is void because of a failure to mail the envelope to an "officer, director, superintendent or managing or general agent" of Rotax, pursuant to the Rule 4(f)(3) order. It appears the Rule 4(f)(3) order parroted the language of Rule 4(d)(2)(D) which provides one of the methods of personal service within the state. See N.D.R.Civ.P. 4(d)(2)(D) (allowing service of process within the state by delivering a copy of the summons to "an officer, director, superintendent or managing general agent, or partner, or associate. .."). The mailing was sent by certified. restricted delivery, U.S. mail, but Lipp did not identify an actual officer holder. Instead, Lipp addressed her envelope to an "Officer, Director, or

6

Managing Agent" of Rotax.

The issue of whether service has been properly commenced upon serving a summons and complaint by addressing them to the attention of an officer, without specifically naming an individual has reached mixed conclusions. Much of the existing case law deals with service pursuant to Rule 7004(b)(3) of the Federal Rules of Bankruptcy Procedure. Rule 7004(b)(3) allows service by first class mail, postage prepaid by mailing a copy of the summons and complaint to the attention of "an Officer, a managing agent or general partner. . ." Some jurisdictions have determined that failure to discover and serve an officer, rather than an office fails to meet the minimum due process requirements. See *In re Pittman* Mechanical Contractors, *Inc.*, 180 B.R. 453, 457 (E.D. Va. 1995); see *also In* re *Schoon*, 153 B.R. 48 (N.D. Cal. 1993). These courts held that service of process by first class mail is a rare privilege and is not to be abused or taken lightly. *Id.* at 456. Other jurisdictions have held to the contrary. See In *re C.V.H. Transport, Inc.*, 254 B.R. 331, 333(M.D. Pa. 2000) (stating that the Advisory Committee Notes to old bankruptcy rule 704(c), which is virtually identical to current Rule 7004(b)(3), states it is not necessary for the officer or agent of the defendant to be named in the address so long as mail is addressed to the defendant's proper address and directed to the attention of the officer or agent by reference to his position or title).

While these jurisdictions have reached different outcomes, the North Dakota Supreme Court appears to have reached this issue as well. In *Eggl v. Fleetguard, Inc.*, 1998 ND 166, ¶8, 583 N.W.2d 812, the Supreme Court held that mail service on a foreign Corporation under Rule 4(d)(3)(C) is valid only if it is addressed to a person listed in Rule 4(d)(2)(D).   At the time service occurred in *Eggl*, N.D.R.Civ.P.

7

01/07/02 14:31 FAX 701 223 7865        PEARCE & DURICK PLLP                    ☒010/018

4(d)(3)(C) allowed service "by any form of mail addressed to the person to be served and requiring a signed receipt and resulting in delivery to that person." *Id.* at ¶ 7. The Court reasoned that because personal jurisdiction under Rule 4 may be acquired based on minimum contacts, Rule 4(d)(3)(C) should be construed to require mail service directed to an officer, director, or someone otherwise in a position of management within the corporation. *Id.* at ¶ 8.

However, the Court did not clarify whether mail service must be to an individual officer or just directed to any officer. The court only held that attempted mail service addressed only to the corporation's office, received and signed for by a janitor, does not comport with the spirit or policy of Rule 4. *Eggl*, 1998 N.D. at ¶ 8. The case did not deal with mail service addressed to an "Officer, Director, or Managing Agent." Unlike the mailing in *Eggl*, Lipp's mailing was sent by certified mail, restricted delivery, as directed by the court under Rule 4(f)(3). Delivery of the envelope was restricted to an officer, director or managing agent of Rotax. Unlike the Defendant in *Eggl*, Rotax timely received notice of the current action.

II.

A.    Personal Jurisdiction.

The next issue to be determined is whether this Court may properly exercise personal jurisdiction over Rotax.

The parties agree that two requirements must be met in order to establish personal jurisdiction. First, it must be determined if the requirements of the applicable subparagraphs contained in N.D.R.Civ.P. 4(b)(2) have been satisfied. *Hust v. Northern* Log, Inc., 297 N.W.2d 429, 431 (N.D. 1980). Rule 4(b)(2) is often referred to as the state's long arm statute. Rotax does not dispute that this first requirement is

8

01/07/02 14:31 FAX 701 223 7865    PEARCE & DURICK PLLP    @011/018

met.

The second requirement for personal jurisdiction requires the exercise of jurisdiction to comply with due process. *Hust,* 297 N.W. 2d at 431. Personal jurisdiction consists of two types; specific jurisdiction and general jurisdiction. *Lumber Mart, Inc. v. Haas Int'l Sales & Serv., Inc.,* 269 N.W.2d 83, 88-89 (N-D. 1978). Specific jurisdiction is jurisdiction that results when a non-resident party has made "minimal contacts in the forum state which are directly related to and connected with the cause of action involved to permit the forum state to acquire personal jurisdiction of the nonresident party. *Id.* at 89. In other words, the plaintiff's claim arises out of or is related to the defendant's contacts with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, n.8 (1984). General jurisdiction is jurisdiction over a defendant because of the defendant's 'continuous and systematic" contacts with the forum state and extends to any claim brought against the nonresident defendant. *Id.* at 414, n.9. Lipp concedes that general jurisdiction over Rotax is lacking in the present case. The remaining issue is whether this court may exercise personal jurisdiction over Rotax as a result of specific jurisdiction in a manner which complies with due process. *Hust,* 297 N.W. 2d at 431.

A state may exercise personal jurisdiction over a nonresident defendant consistent with due process when the defendant has "certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Falkirk* Mining Co., *v. The Japan Steel Works,* Ltd., 906 F.2d 369, 373 (8th Cir. 1990). The Supreme Court has held that in order to exercise personal jurisdiction, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting

9

01/07/02  14:31 FAX 701 223 7885        PEARCE & DURICK PLLP                                    @012/018

activities within the forum state, thus invoking the benefits and protections of its laws."

*Id.* at 374 (quoting *Hanson v. Denckla*. 357 U.S. 235, 253 (1958)).

North Dakota has never directly addressed whether personal jurisdiction may be exercised over a foreign corporation that merely places its products into the stream of commerce. *World-Wide Volkswagen Corp. v. Woodson*, 444 US. 286 (1980), is often utilized by courts in determining whether the exercise of jurisdiction over a foreign corporation may be exercised based on no more than the act of placing a product in the stream of commerce. Some courts have deemed such a limited act as sufficient to establish personal jurisdiction, while others have held that a nonresident's mere awareness that the component it manufactures or sells outside the forum state will reach the forum in the stream of commerce is insufficient to establish personal jurisdiction under the due process clause. See *Felix v. Bomoro Kommanditgesellschaft*, 241 Cal. Rptt. 670, 674 (Cal, Ct. App. 1988) (providing a list of the courts who have reached both types of conclusions regarding a "stream of commerce" analysis). In *World-Wide*, the U.S. Supreme Court held that an automobile retailer and its wholesaler, both New York corporations, could not be subjected to personal jurisdiction in Oklahoma because a New York resident who purchased an automobile from the retailer was injured in a car accident while passing through Oklahoma. *Id.* at 295. The court determined that foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due process Clause *Id.* at 296. The foreseeability that is critical to due process is not the mere likelihood that a product will find its way into the forum, but the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *Id.* at 297,

10

The dictum language in *World-Wide* that has been relied on by courts in determining whether a manufacturer may be subject to personal jurisdiction based on a stream of commerce basis states:

> Hence if the sale of a product of a manufacturer or distributor. . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297-298. Although the Supreme Court has attempted to solve the issue regarding the stream of commerce analysis, it has yet to provide an authoritative answer. In Asahi *Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987), four justices, led by Justice O'Connor, were of the view that placing a product in the stream of commerce with awareness of its ultimate destination is not enough to satisfy the minimum contacts standard. *Felix*, 241 Cal. Rptr. 670, 674 (Cal. Ct. App. 1988) (discussing *Asahi*). Four other justices opined that jurisdiction may be upheld as against any participant in the manufacture and distribution process who is aware that the final product will be brought into the forum state. *Id.* at 674-675. What appears to remain clear is that the court in *World-Wide* and in cases up to the present have continued to hold that the "mere likelihood" that a product will find its way into the forum State may not support personal jurisdiction and that a defendant's conduct and connection with the forum state must be such that he should "reasonably anticipate being haled into court there." *World-Wide*, at 297.

In the present case, it appears that Rotax did not do much more than place its manufactured engine into the stream of commerce when it sold its product to Kodiak, a

11

company located in the Bahamas. While it may be foreseeable that one of its manufactured engines could end up in North Dakota, foreseeability alone has never been a sufficient benchmark for personal jurisdiction.  In *Falkirk Mining Company*, 908 F.2d at 371,  Falkirk's parent company contracted with Marion Power Shovel ("Marion") for construction of a dragline crane.  Marion agreed to purchase the six eccentric cams needed for the draglines from Mitsui, who 'contracted with Japan Steel for the manufacture of the six cams. *Id.* Japan Steel, a foreign corporation incorporated under the law of Japan, completed the manufacture of the cams, and they were eventually incorporated into the completed dragline by Marion. *Id.* Based on a crack in one of the cams, Falkirk filed an action against Japan Steel. *Id.* at 372. Japan Steel moved to dismiss, arguing there was a lack of personal jurisdiction. *Id.*

The Eighth Circuit Court of Appeals, applying North Dakota law, granted Japan Steel's motion to dismiss and ruled that there was an absence of minimum contacts to establish personal jurisdiction. *Falkirk*, at 376. The court held that "unless it can be shown that appellees purposefully directed their activities towards North Dakota, the mere fact that Marion brought two of the cams it purchased from Japan Steel into North Dakota does not justify the exercise of personal jurisdiction over appellees [Japan Steel]." Id. at 375-376. The court noted that Japan Steel, by selling the cams to Marion, did nothing more than place its products in the stream of commerce. *Id.* at 376.  The court held the case was factually analogous to *Asahi*, in which a plurality of the U.S. Supreme Court found that Asahi, Japanese manufacturer of tire valves, did not perform an act of purposeful availment towards the forum state by merely placing its tire valves within the stream of commerce. *Asahi*, at 112. Similar to Rotax, Japan Steel and Asahi were both foreign corporations; the companies do not have offices,

12

agents, employees, or property in the state. Further, neither of the companies

created, controlled, or employed the distribution system that brought their products to

the forum state.

Another case that appears factually similar to the (resent case is *Felix.* 241

Cal. Rptr. 670. In *Felix*, a Californian plaintiff sued Felix, a West German

manufacturer of a door latch, based on injuries incurred during a car accident. *Id.* at

670-71. Felix had sold the door latch to a West German car manufacturer. *Id.* at 671

After acknowledging the different holdings among jurisdictions regarding the stream of

commerce approach, the court was of the opinion that the strictures of the due process

clause forbid a court from exercising personal jurisdiction over a foreign corporation

that merely places its products into the stream of commerce even though it may

foresee that those products will ultimately wind their way into the forum state. *Id.* at

675. The court reiterated the holding of the U.S. Supreme Court in *World-Wide* that

the defendant's conduct and connection with the forum must be such that he should

reasonably anticipate being sued there. See Id. (citing *World-Wide,* 444 U.S. at 297).

The *Felix* court based its holding in part on their belief that the degree to which a

foreign corporation interjects itself into the forum state directly affects the fairness of

subjecting it to jurisdiction. *Id.*

Finally, in *Hust v. Northern* Log, Inc., 297 N.W.2d at 433., the North Dakota

Supreme Court held there was a lack of personal jurisdiction over a Minnesota

company who sold log materials to a North Dakota resident. The court determined

that the contacts between the Minnesota company and N&h Dakota could be equated

to the "fortuitous circumstances" mentioned by the U.S. Supreme Court in *World-

Wide.*  In *Hust,* there were more extensive contacts between the defendant and North

13

Dakota than in the present case. The plaintiffs in *Hust*, North Dakota residents, wrote company headquarters in Minnesota, and requested information concerning log homes. *Id.* at 430. They were sent a brochure and on the eventual purchase of log materials from Northern Log, an agent from the company provided on-site construction aid. *Id.* Even with such contacts, the Supreme Court found a lack of minimum contacts to establish personal jurisdiction.

In the present case, there are not sufficient contacts or activity on the part of Rotax to establish personal jurisdiction.

**B.     Fair Play and Substantial Justice.**

Even if Rotax had sufficient contacts warranting the exercise of personal jurisdiction, that exercise of jurisdiction would be required; to comport with fair play and substantial justice. In certain cases, the "minimum requirement inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even though the defendant has purposefully engaged in forum activities." Burger *King Corp. v. Rudzewics*, 471 U.S. 462, 477-78 (1985). In determining whether the assertion of personal jurisdiction would comport with fair play and substantial justice, courts are instructed to examine the burden on the defendant, the interests of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolutions of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. See *Asahi* at 1 13. The burden on Rotax would be substantial,

On the other hand, the second factor, the interests of the forum state in adjudicating the dispute, would appear to favor the exercise of jurisdiction, because

01/07/02 14:32 FAX 701 223 7865    E         A      7    R         @017/018    E

North Dakota has an interest in providing its residents with a forum. See *Falkirk*, at 376. However, even though Lipp's interest in obtaining convenient and effective relief also warrants in favor of exercising jurisdiction, this interest could be vindicated by an action against Kodiak and/or other parties who interjected the engine into the United States and ultimately North Dakota. See *Falkirk*, at 376.

The final two factors, the interests 'of the several states in obtaining the efficient resolution of disputes and the advancement of substantive policies, do not appear to favor the exercise of personal jurisdiction in the present case based on the findings in *Asahi*. In *Asahi*, the Supreme Court noted that the procedural and substantive policies of other nations, as well as the federal government's interest in foreign nations, must again counsel caution in the exercise of personal jurisdiction over alien defendants. *Falkirk*, at 376 (discussing *Asahi*, 480 U.S. at 115). Based on the factually analogous situation in *Falkirk*, it is clear exercising personal jurisdiction over Rotax would not comport with fair play and substantial justice.

## CONCLUSION

Based on the facts and circumstances of the present case, the Rule 4(f)(3) order issued by Judge Wefald properly conferred service on Rotax. However, minimum contacts on the part of Rotax with North Dakota are lacking., preventing the exercise of personal jurisdiction. Even if personal jurisdiction was determined to exist in the @resent case, the exercise of that jurisdiction would not comport with the notions of fair play and substantial justice.

15

01/07/02 14:32 FAX 701 223 7865         PEARCE & DURICK PLLP                    @018/018



Dated January 4, 2002.

BY THE COURT:

Gail Hagerty ii
District Judge

16