IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA MARIE SIMEONE, Personal Representative of the Estate of Albert Francis Simeone, Jr., Deceased, and THERESA MARIE SIMEONE, In Her Own Right, and MARY ANN LENGYEL, Personal Representative of the Estate of George Lengycl, Deceased, and MARY ANN LENGYEL, In Her Own Right<br><br>  Plaintiffs,<br><br>v.<br><br>BOMBARDIER CORPORATION GmbH, et a].<br><br>  Defendants. | CIVIL ACTION NO. 02CV4852<br><br>JURY TRIAL DEMANDED |

**REPLY BRIEF IN SUPPORT OF DEFENDANT
BRP-ROTAX GMBH & CO. KG's MOTION TO DISMISS
PLAINTIFFS'COM PLAINT FOR LACK OF JURISDICTION and
DEFENDANTS BOMBARDIER INC.'S AND BOMBARDIER CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

Robert J. Kelly, Esq.
Of Counsel

Suna Lee, Esq.
On the Brief

390076.1

**TABLE OF CONTENTS**

TABLE OF **AUTHORITI**

**Page**

**PRELIMINARY** STATEMENT ..........................

SUPPLEMENTAL STATEMENT OF FACTS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     . 2

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .         .      3

A.        Rotax is a Separate Corporate Entity From Bombardier Inc.

B.         Rotax's Limited Shipments of Spare Motorcycle Parts to Pennsylvania

LEGAL ARGUMENT

POINT I

Plaintiffs Cannot Rely Upon The Alter Ego Theory to Establish Jurisdiction Over Rotax ....................... ................................... . . 7

A. The Alter Ego Theory Is Used to Impute the Jurisdictional Contacts of the Subsidiary to the Non-resident Parent Corporation Based Upon the Parent Corporation's Control of the Subservient Subsidiary.

B. Plaintiffs Cannot Impute the Jurisdictional Contacts of Bombardier - the Parent Corporation -- to Rotax Since Plaintiffs Fail to Assert that Bombardier is the Alter Ego/Agent for Rotax.

POINT 11

Plaintiffs Cannot Demonstrate that Rotax is the Alter Ego of Bombardier Inc. to Establish Either Jurisdiction Over Rotax or Liability for Alleged Product Defects Against Bombardier ................................ . 10

A. To Establish an Alter Ego Relationship, There Must be Evidence of the Parent Corporation's Undue Domination and Control of the Subsidiary Corporation.

Bombardier Inc. Did Not Exert Undue Domination and Control Over Rotax.

C. As Plaintiffs Cannot Establish That Rotax is the Alter Ego of Bombardier Inc., Plaintiffs Cannot Rely Upon the Alter Ego Theory to Impute Product Liability against Bombardier for the Allegedly Defective Rotax Engine.

Point III

Plaintiffs Cannot Establish Jurisdiction Against Rotax Via the Limited Shipments of Spare Motorcycle Parts to Pennsylvania as Such Conduct Does Not Rise to The Level of Minimum Contacts

**390829.1**

A. Sporadic, Isolated Shipment of Products to the Forum State is Insufficient to Confer Personal Jurisdiction Over a Non-resident Defendant.

B. Rotax's Limited Shipments of Spare Motorcycle Pans to Pennsylvan=ia is Insufficient to Confer Personal Jurisdiction Over a Non-resident Defendant.

.............................................................................
CONCLUSION ............................................................. 19

390829.1

**TABLE OF AUTHORITIES**

Allied Leather Corp. v Altama Delta Cgrp.
785 F.Supp. 494 (M.D. Pa. 1992) ....

Arch v. American Tobacco Co., Inc.,

984 F.Supp. .......................................... 830 (E.D. Pa. 1997) .................................................................. ............ 10-12

Page(s)

Asahi Metal Industry Company v. Superior Court of California, Solano County,
480 U.S. 102 (1987)

Calvert v. Huckins
 875 F.Supp. 674 (E.D. Cal. 1995) ............................................... 12

Cannon Mfg. Co. v. Cudahy Packing Co.,
267 U.S. 33)3 (1925) ..........

Capizzano v. Walt Disney World Co.
826 F.Supp. 53 (D.R.I. 1993)

Central States v. Reimer Express World Com.,
 230 F.2d 934 (7" Cir. 2000) ..................................................... 12

. ... . . . . .            7,8

Clark v. Matsushita Electrical Industrial Co., Ltd.,
 8 11 F.Supp. 1061 (M.D. Pa. 1993) ........................................ I

Clemens v. Gerber Scientific Inc..
No. 87-5949, 1989 U.S. Dist. LEXIS 376 (E.D. Pa. 1989)., ....................................

Colmen Financial Services v. Charter Equipment Leas.,
708 F.Supp. 664, 669 (E.D. Pa. 1989)

1,12

7,10-11

Croyle v. Texas Eastem Com.,
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 464 F. Supp.
377 (W.D. Pa. 1979) ..................................................... I I

Dunn v. A/S Em. Z. Svitzer,
 885 F.Supp. 980 (S.D. Tex. 1995) ............................................ 12

Freudensprung v. Offshore Technical Services. Inc.,
379 F.3d 327, 346 (5h Cir. 2004)

Gallagher v- Ma7da Motor of America Inr

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .                  . ..................................
. . . . . . . . . . . . . . . . . . . . . . [1]

781 F.Supp. 1079 (E.D. Pa. 1992)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

General Acc. Insurance Co.. v. Old Repblic Intem. Com.,
648 F.Supp. 634 (N.D. Ill. 1986)

**390829.1**

**390929.1**

Hargrave Fibreboard CoM,
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 710 F.2d 1154 (5"
Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Ingersoll Milling Machine Co. v. J.E. Bemard & Co..
508 F. Supp. 907 (N.D. 111. 1981) .......................................................................

Modem Mailers, Inc. v. Johnson & Quin, Inc.,
844 F.Supp. 1048 (E.D. Pa. 1994) ...........

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   . 16

Molnlycke Health Care AB v. Dumex Medical Surgical,
64 F.Supp.2d 448 (E.D. Pa. 1999) .......

. . . . . . . . . . . . . . . . . . . . . . . . . . .   . 17

Oranp,e Products, Inc. v. Winters.
 1995 WL 118461 (E.D. Pa. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Parker v. Bell Asbestos Mines. Ltd
607 F.Supp. 13 )97, 1499 (E.D. Pa.

Poe v. Babcock Int'l, pic,
 662 F. Supp. 4 (M.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . ..........    ..................................

Provident Nat'l Bank. v. Califomia Fed. S&L Ass'n.
819 F.2d 434 (3d Cir. 1987) .................

Quarles v. Fuqua Industries, Inc.,
504 F.2d 13 )58 (10" Cir. 1974)

Reverse Vending Associates v. Tomra Systems U.Sjgc,
655 F.Supp. 1122 (E.D. Pa. 1987)

Romann v. Geissenger Manufacturing Corp.,
865 F.Supp. 255 (E.D. Pa. 1994)

Savin Corp. v. Heritap
                 ge Copy Prods.. Inc.,
 661 F.Supp. at 469 (M.D. Pa. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Tutu Wells Contamination Litigation v. Texaco,
846 F.Supp. 1243 (D. Vir. Is. 1993)

Visual Security Concepts, Inc. v. KTV, Inc.,
102 F.Supp.2d 601(E.D. Pa. 2000) ...............................................................

William Rosenstein & Sons Co. v. BBI Produce, Inc.
123 F.Supp.2d 268 (M.D. Pa. 2000) ...............

iii

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    . 9

.15

l

## PRELIMINARY STATEMENT

**GivenGiven** that the record is clear that Defendant that the record is clear that Defendant BRP-Rotaxthat the record is clear tha && Co. KG (hereinafter "Rotax"), an Austrian corporation, & Co. KG (hereinafter "Rotax"), an Austrian corporation, has& Co. KG (h nownow rely upon the altenow rely upon the alter ego theornow rely upon the alter ego theory to assert jurisdiction against Ro wrong.wrong. Under this theory, the jurisdictional contacts of the subsidiary,wrong. Under this theory, the jurisdictional contacts thethe controllingthe controlling entity, i.e., the parent corporation,the controlling entity, i.e., the parent corporation, under the rati the privilege of conducting business inthe privilege of conducting business in the forum by usingthe privilege of conducting bus case,case, Plaintiffscase, Plaintiffs essentially argue the reverse -- thatcase, Plaintiffs essentially argue the reverse -- that the jurisdict BombardierBombardier Inc. (hereinafter referred to Bombardier Inc. (hereinafter referred to as "BombardBombardier Inc. (her Rotax,Rotax, yet Plaintiffs point to how Bombardier controlled Rotax and not the other way around. Thus, tRotax, yet Plaintiff falls.

EvenEven assuEven assuming Even assuming that Plaintiffs can rely upon the alter e2o theory to assert Jurisdiction PlaintiffPlaintiffsPlaintiffs still cannoPlaintiffs still cannot demonstrate that Rotax is the alter ego of Bombardier. The record BombardierBombardier exerted undue domination and contBombardier exerted undue domination and control over RotaBom piercingpiercing the corporate veilpiercing the corporate veil in order to establish jurisdiction over Rotax. Thus,piercing the corpor theorytheory to either assert jurisdiction overtheory to either assert jurisdiction over Rotax or product liability against Bombardie Rotax engine.

RecentlyRecently Rotax uncovered limitedRecently Rotax uncovered limited shipments of spareRecently Rotax uncovered atat the direction of its Wisconsin customer on an emergent basis. The shipments represent only 1.81% of Rotax's total business with that customer. Such isolated,

390076.1

sporadic contacts with the forum state do not rise to the level of minimum contacts sufficient to assert jurisdiction. Accordingly Defendants' Motion to Dismiss and Summary Judgment should be granted.

## SUPPLEMENTAL STATEMENT OF FACTS

**A.      Rotax is a Separate Corporate Entity From Bombardier Inc.**

Josef FUrlinger, an executive who has been employed by Rotax for the last fifteen years and is currently its director for new business development testified at his deposition as follows:

> Q.          Let's talk a little bit about the governing structure of
> Rotax? Do you understand my question?

>   A.                                                    Yes.
>   Q.         Okay. Who runs - and when I say "who," I mean title, the
>       person. Who runs Rotax at the top on a day-to-day basis?
>
>   B.         Geschaetsfuehrer.
>
>   [THE INTERPRETER: It's translated either as manager director or as general manager]
>
>   Q    And as owner the owner of Rotax, Bombardier. Inc., is involved in the day-to-day
>       operations of Rotax, is it not?
>
>   A.     No.
>
>   Q.   So you do not agree that they have some substantial control over how Rotax operates
>       on a day-to-day basis?
>
>   A.                  I do not agree to your - soM,. They have no involvement
>       on the day-to-day business.

[See Transcript of Deposition Testimony of Josef Fcirlinger, dated December 3, 2004, attached to Certification of Robert J. Kelly as Exhibit 1, T28:1-4-14; T33:1,17-T34:1-3]. Pursuant to the corporate structure, the General Manager is chosen by the shareholders. [Exhibit 1, T3 I:L9-121.

-3 -

- Rotax has its own management team. Claude Ferland, an executive with Bombardier

testified as follows:

>   Q.      Can you describe the upper level management Rotax
>       working down from this vice-president/general manager
>       position?
>
>   A.       Yes. Harold had a management learn where he had a vice-
>       president of finance responsible for all of the financial
>       reporting and the financial performance of Rotax. He had a
>       VP for human resources, HR VP. He had a VP
>       engineering. So basically he had the full organization, like
>       any typical entity what you would find....

[See Plaintiffs' APP-0032 - T32:1- I - 10].

   Mr. Furlinger testified that Rotax makes its own decision regarding negotiating contracts.

He testified as follows:

>   Q.      Who would have knowledge whether Rotax has to get
>       approval from Bombardier with regard to contracts that it's
>       about to enter into?
>
>   A.      In the normal course of business of Rotax, we would not
>       need to inform Bombardier, Inc., unless it has a significant

impact to the shareholders.

[Exhibit 1, T61:L]3-22]. Additionally, Rotax maintained its own liability insurance. [See Ferland Deposition Testimony, T68:L2-14, Plaintiffs' APP-00068]. Finally, Rotax owns its own property in Austria. Mr. Furlinger testified as follows:

> Q. Who owns the property that Rotax facilities are on in Austria?
>
> A. Rotax.

Exhibit 1, T65: L I 1- 13 ].

With regard to the Bombardier Inc. policy manual, Mr. Furlinger testified as follows:

> Q. Okay. Does Rotax have the Bombardier policy manual?
>
> A. Yes.

-4-

3900761

> Q. And are there certain Bombardier policies that because of Austrian law do not apply to Rotax?
>
> A. That's correct.
>
> Q. Can you provide me with any of those policies that don't apply to Rotax?
>
> A. Just as an example I would make the traveling policy. Rotax has its own traveling policies to comply with the Austnian law, system and regulations.
>
> Q. Any other examples that you can think of.?
>
> A. There might be some more. Because we have a different working law as - may be not as accomplished. So we have to respect the working law as - for one thing, assessing the working law as one very critical law, and there would be definitely a different system and policy in place.

[Exhibit 1, T4111-L21]. Moreover, Rotax considers the policy manual to be more of a reference tool or guideline rather than a directive. Mr. Furlinger testified as follows:

> Q. ...When we're referring to this scope here on 63 1, is it your testimony that the way it's written it does apply to Rotax unless there's some Austrian law that would essentially trump this?
>
> A. I would say that it would be used as a reference document or a guideline for Rotax Austria and Rotax as to follow **their own procedure** according to Austrian law.

[Exhibit 1, T40:1,9-25] [emphasis added].

### B. Rotax's Limited Shipments of Spare Motorcycle Parts to Pennsylvania

During the period 1997-2002, Rotax made limited shipments of spare motorcycle parts to Pennsylvania which totaled 18.136,36 Euros at the direction of its customer, Harley Davidson located in Wisconsin. [See Affidavit of Josef Furlinger, dated February 14, 2005]. The total value of those shipments represents only 1.81% of Rotax's overall sales to Harley Davidson

-5-

during the referenced time period. Id. Rotax conducted corporate offices located in Milwaukee, Wisconsin. Id. With the exception of the transactions A, all deliveries to Harley Davidson were Ex works Gunskirchen, Austria. Id. It is Rotax's business practice to designate all sales Ex works Gunskirchen. The limited sales of emergent basis at the request of Harley due to Harley's obligation to properly service its States military. Id. Due to the emergent nature of these requests, Harley required 24 hour be arranged through UPS expedited, as reflected in the invoices. Id

The invoices reflect that Harley's purchase order originated Rotax had with Pennsylvania in connection with these transactions was as a point aforementioned special circumstances. Id. Rotax's customer and in Wisconsin. Id.

Invoices addressed to Rotax from the Society of Automotive Engineers and Avant Pennsylvania addresses. Id. However, the principal place of business of the S located outside of Pennsylvania. Id. The total amount of the invoices written materials necessary for Rotax business and which could not be obtained elsewhere. Id.

-6-

## LEGAL ARGUMENT
## POINT I

### PLAINTIFFS CANNOT RELY UPON THE ALTER EGO THEORY TO ESTABLISH JURISDICTION OVER ROTAX.

A. **The Alter Ego Theory Is Used to Impute the Jurisdictional Contacts *of* the Subsidiary to the Non-resident Parent Corporation Based Upon the Parent Corporation's Control *of* the Subservient Subsidiary.**

In general, piercing the corporate veil is permitted in only exceptional circumstances. *Clemens v. Gerber Scientific Inc.,* No. 87-5949, 1989 U.S. Dist. LEXIS 376, at *4 (E.D. Pa. January 13, 1989) *(citing Reverse Vending Assocs. V. Tomra Systems U.S.,* Inc., 655 F. Supp. 1122, 1128 (E.D. Pa. 1987); *Parker v. Bell Asbestos Mines. Ltd.,* 607 F. Supp. 1397, 1399 (E.D. Pa. 1985). "As a general rule, the proper exercise of a personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated." *Freudensprung v. Offs~hore Technical Services, Inc.,* 379 F.3d 327, 346 (5" Cir. 2004) *(citing Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333 (1925)). There is a "presumption of institutional independence of related corporate entities" which may be rebutted only by "clear evidence" which requires a showing of "something beyond the mere existence of a corporate relationship

between a resident and nonresident entity to warrant the exercise of jurisdiction over the nonresident." Id. [citation omitted].

Thus, the acts of a parent corporation should not be attributed to the subsidiary corporation for the purpose of assessing jurisdiction where there is no exercise of control. *Financial Set-vices v. Charter Equip. Leas.,* 708 F. Supp. 664, 669 (E.D. Pa. 1989) [citation omitted]. In *CapiZZa? v. Walt Disney World*

-7-

**390076.1**

Co., 826 F. Supp. 53, 56-57 (D.R.I. 1993), the Court held that non-resident subsidiary corporation based upon the jurisdictional contacts failed to show that the parent corporation acted as an agent for the subsidiary. *v. Old Republic Intern. Corp.,* 648 F. Supp. 634, 637 (N.D. Ill. 1986), the Court held that it did not have jurisdiction over the nonresident subsidiaries since there was no evidence that the parent corporation. In that case, the non-resident defendants had no contacts with the forum. The Court explained:

> ........ Thus, the only way that these two defendants could have transacted business within the meaning of the long-arm statute is through the activities of the [parent corporation] as an agent." **However, in determining the existence of an agency relationship, the most important element a court must consider is the extent to which the principal controls the actions of the agent with respect to the matters entrusted by him ... [there is no evidence that the subsidiaries had a] right to "control" the [parent's] activities in any** way .... Accordingly, we cannot construe the [parent corporation] to have been an agent of the [subsidiaries] for purposes of submitting those subsidiary corporate entities to the jurisdiction of this Court.

Id. at 637 *[citing Restatement (Second) of Agency § 14 (1958)* and *Ingersoll Milling Machine Co. v. J. Ingersoll Milling Machine Co.,* 508 F. Supp. 907, 912 (N.D. Ill. 1981)]* [Emphasis added].

**B. Plaintiffs Cannot Impute the Jurisdictional Contacts of Bombardier - the Parent Corporation -- to Rotax Since Plaintiffs Fail to Assert that Bombardier is the Alter Ego/Agent for Rotax.**

Likewise, in the present case, Plaintiffs fail to assert that Rotax - had any control over the parent corporation - Bombardier Inc. so that the jurisdictional contacts of the parent corporation - Bombardier Inc. - should be imputed to Rotax. Plaintiffs allege at length how Bombardier Inc. controlled Rotax - not the other way around [Plaintiffs' Brief in Opposition, pp. 10-19].

-8-

390076.1

Plaintiffs expressly assert that "Rotax. is the [alter ego/agent of Bombardier]" [Plaintiffs' Brief, p. 10]. But if the logic of the alter ego in the context of a jurisdictional inquiry is to apply, Plaintiffs must assert that Bombardier - the entity which allegedly had the contacts - is the alter ego/agent of the non-resident entity - Rotax. Plaintiffs do not follow that logic.

The fundamental requirement of control by the parent corporation of the subservient [subsidiary] is the heart of the equitable doctrine of the alter ego corporation. The rationale is that the parent corporation, by virtue of

the forum state, purposefully availed itself of the privilege of conducting business through the subsidiary so that jurisdiction over the non-resident parent may be asserted. *Motor of America, Inc.,* 781 F. Supp. 1079, 1085 (E.D. Pa. 1992). Indeed, the factual scenario in each opinion cited in Plaintiffs' opposing brief involved an attempt to assert jurisdiction over a parent corporation based upon the parent corporation's control over the subservient subsidiary and not as in the present case. *See Clemens,* 1989 U.S. Dist. LEXIS 376 at *3; *Parker,* 607 F. Supp. at 1399; *R.I. Vending Assoc.,* 655 F. Supp. at 1127; *In re Paques, Inc.,* 277 B.R. at 634; *Tutu Wells Contamination Litigation v. Texaco,* 846 F. Supp. 1243 (D. Vir. Is. 1993).

However, the goal of the equitable doctrine of alter ego is not served by applying it in the present case since it cannot be logically argued that Rotax availed itself of the privilege of conducting business in Pennsylvania so as to allow this Court to assert jurisdiction because Rotax controlled Bombardier Inc. In contravention of the alter ego theory, Plaintiffs argue the opposite - that Bombardier controlled

-9-

**390076.1**

Rotax, 'Me doctrine simply does not fit into the facts of this case and therefore, exercise of jurisdiction would offend the "traditional notions of fair play and substantial justice" under the Due Process Clause.

## POINT 11

### PLAINTIFFS CANNOT DEMONSTRATE THAT ROTAX IS THE ALTER EGO OF BOMBARDIER INC. TO ESTABLISH EITHER JURISDICTION OVER ROTAX OR LIABILITY FOR ALLEGED PRODUCT DEFECTS AGAINST BOMBARDIER.

**A.   To Establish an Alter Ego Relationship, There Must be Evidence of the Parent Corporation's Undue Domination and Control of the Subsidiary Corporation.**

Even assuming *arguendo* that Plaintiffs can rely upon the alter ego theory to establish jurisdiction over Rotax, Plaintiffs still cannot demonstrate that Rotax is the alter ego of Bombardier Inc. An alter ego relationship is found only where "ftlhe degree of control exercised by the parent [is] greater than normally associated with common ownership and directorship." *Arch v. American Tobacco Co., Inc.,* 984 F. Supp. 830, 837 (E.D. Pa. 1997) (citing *Savin Corp. v. Heritage Copy Prods., Inc.,* 661 F. Supp. 463, 469 (M.D. Pa. 1987) (quoting *Fibreboard Corp.,* 710 F.2d 1154, 1160 (5" Cir. 1983)). "To establish an alter-ego relationship, plaintiff must prove that [the parent corporation] controls the day-to-day operations of [the subsidiary corporation] subsidiary corporation] can be said to be a mere department of [the parent corporation]." *Id.* Plaintiff must prove that the parent corporation exerted direct undue domination and control over the subsidiary.

In *Clemens,* the Court held that a number of factors are considered in determining whether the subsidiary is an alter ego of its parent:

1) common *officers and* directors; 2) extent of the parent's decision over the subsidiary's policies and practices; the parent's ownership of the subsidiary; 3) lack of separation of daily operations; _10

**390076.1**

4) consolidation of financial statements and tax returns; and 5) failure to obsme corporate formalities. *Clemens,* 1989 U.S. Dist. LEXIS 376 at *5 [citations omitted].

However, it is well settled that the existence of a factor, alone, is insufficient to find an alter ego relationship. For instance, a finding of a 100% ownership of the subsidiary by the

parent corporation is not dispositive. *Savin Corp.,* 661 F. Supp. at 469 *(citing Hargrave,* 710 F.2d at 1060; *Quarles v. Fuqua Industries, Inc.,* 504 F.2d 1358, 1364 (10' Cir. 1974); *Croyle v. Texas Eastern Corp.,* 464 F. Supp. 377, 379 (W.D. Pa. 1979)).

Likewise, significant "[o]verlapping directors and officers do not alone establish an alter ego." *Arch,* 984 F. Supp. at 838 *(citing Poe v. Babcock Intl, plc,* 662 F. Supp. 4, 6 (M.D. Pa. 1985) (refusing to alter ego theory of Jurisdiction where there are several overlapping directors stating that 'where [the parent] constitutes one hundred percent of the stockholders of the subsidiary, it is which are common to the boards of both."); *see also Clark v. Matsushita Elec. Indus. Co.,* 1068 (M.D. Pa. 1993) ("Common officers and directors . . . are not ne[cessarily dispositive]"); *Savin Corp.,* 661 F. Supp. at 469. In *Savin* Corp., four of twelve directors of a subsidiary were also director of its parent corporation, and four of the twelve directors of the subsidiary were also director of its parent corporation. Id. at 470. In addition, a director of the corporation had input regarding the operations of the subsidiary, and the parent company had input regarding the operations of the executives. Id. Yet, the Court in *Savin Corp.* concluded that there was insufficient evidence to "conv[ince the court] that [the parent] exercised the type of control over [the subsidiary's] day-to-day [operations to establish] an alter ego relationship." Id.

Finally, reporting the subsidiary's financial information within the parent corporations' annual [report does] not equate with an alter ego relationship. In *Clark*, the Court held that a[ggregation of] financial information for [the parent] and its subsidiaries i[n one report did not establish alter ego]. Clark, 811 F. Supp. at 1069.

Indeed, courts have recognized that "a corporate parent may prov[ide services to its] subsidiary in the ordinary course of business without calling into question [its separate status] . . ." *Central States v. Reimer Express World Corp.,* 230 F.2d 934, 945 (7'[th Cir. 2000]); 885 F. Supp. 980, 988-89 (S.D. Tex. 1995); *Calvert v. Huckins,* 875 F. Supp. 674, 678-79 (E.D. Cal. 1995). In Central States, the Court explained that "[p]a[rents of wholly owned] subsidiaries . . . [such] parents do not expect that performing these[ services will expose them to liability for] the actions of the subsidiaries." Central States, 230 F.2d at 945. [Unless the parent imposes] detailed rules concerning every facet of the subsidiary's business, the subsidiary ca[nnot be the alter ego] of the parent. See Arch, 984 F. Supp. at 838.

### B. Bombardier Inc. Did Not Exert Undue Domination and Control Over Rotax.

In the present case, Plaintiffs cannot prove that Rotax was the a[lter ego of Bombardier]. [The law] in this jurisdiction is clear that Plaintiffs' allegations of Bombardier's ownership of Rotax; [common officers] between the two entities; or Rotax's submission of financial statements [does not establish that Rotax] is the alter ego of Bombardier. As courts have recognized, such commonalties are to [be expected as a result] of Bombardier's ownership of Rotax. What is dispositive in the[se cases is whether Bombardier is involved in the day] to day activities of Rotax. However, Josef Hirlinger, an executive who has been employed by Rotax [for over] fifteen years and is currently its director for new business

development confirmed unequivocally that Bombardier is not involved in the day-to-day operations of Rotax. [Exhibit I ,T28:L4-14; T3311 7-T3 )4:L3].

Moreover, Mr. Furlinger testified that Rotax makes its own decision regarding negotia[tions;] maintained its own liability insurance; and owns its own property in Austria. [Exhibit 1, T61:L]3-22; T65:Ll)-13; and Plaintiffs' AAPAPP-00068 -T68:L2-14]. Claude Ferland, an executive [of] Bombardier, testified that Rotax had its own management team consisting

human resources, a vice president of finance, and a vice president for engineering. [See T32:LI-101. He characterized Rotax's organization as a full [See Plaintiffs' APP-0032 -T32:LI-10].

The fact that Rotax has a copy of the Bombardier manual does not mean that Bombardier controls it. Rotax has its own policies and procedures separate from the Bombardier manual. [Exhibit 1, T41:LI-L211. Moreover, Rotax considers the policy manual to be more of a reference tool or guideline rather than a directive. [Exhibit 1, T40:L9-25]. The existence of a policy manual promulgated by a parent corporation to its subsidiary does not call the parent-subsidiary relationship without calling into question. As the Circuit Court of Appeals recognized, parent corporations regularly provide services for their subsidiaries and should not be the basis for finding liability.

Finally, Plaintiffs make a number of inaccurate statements regarding Rotax in their opposing brief in an attempt to mischaracterize it as an agent of Bombardier. Plaintiffs assert that Bombardier hires the Rotax General Manager and cites to Mr. Ferland's deposition testimony. [See Plaintiffs' brief, p. 12]. However, Mr. Ferland makes no such statement in the

referenced section. In fact, at his deposition, Mr. Furlinger clarified that pursuant to the corporate structure of Rotax, the general manager is chosen by the shareholders. [Exhibit 1, T3 I:L9-12]. Rotax's ten member board consists of only three employees of Bombardier. [Plaintiffs' App0028-0030-T28:LI9-T30:L14]. The rest of the board consists of employees of Rotax and others outside of Bombardier. Id. Plaintiffs also mistakenly assert that Rotax: submits joint financial statements to Bombardier and again cites to Mr. Ferland's deposition testimony. [See Plaintiffs' brief, p. 12]. Again, Mr. Ferland makes no such statement. Mr. Ferland testified only that Rotax submitted financial statements to him so that certain results could be consolidated. [See Plaintiffs' APP-0033 -T33:Ll-]Oj. In no way did Mr. Ferland testify that joint financial statements are prepared between the two corporations. Id. Finally, Plaintiffs incorrectly asserts that Rotax has no independence with regard to its budgets or strategic plans since it is required to submit same to Bombardier. [See Plaintiffs' brief, p. 14]. The mere fact that a subsidiary submits such reports to the parent corporation does not illustrate undue control or domination. As part of the nature of the parent and subsidiary relationship, that is to be expected. Indeed, Plaintiffs point to no evidence that Bombardier controlled the preparation of those budgets or plans. In short, Plaintiff-, cannot establish that Bombardier controlled the day-to-day activities of Rotax sufficient to find an alter ego relationship.

    C.    As Plaintiffs Cannot Establish That Rotax is the Alter Ego of **Bombardier Inc., Plaintiffs Cannot Rely Upon the Alter Ego Theory to Impute Product Liability against Bombardier for the** Allegedly Defective Rotax Engine.

Defendants Bombardier Inc. and Bombardier Corporation (hereinafter referred to as "BC") move for Summary Judgment dismissing Plaintiffs' Complaint on the ground that Bombardier and BC did not design, manufacture, or otherwise distribute or sell the alleged defective Rotax engine which is the subject of this action. In their opposition, Plaintiffs argue,

- 14-

*inter alia,* that Bombardier Inc. should be held liable for the alleged product defects because Bombardier is the alter ego of Rotax. Even Plaintiffs' argument of a joint venture between Rotax and Bombardier with the alter ego to the production of the engine essentially relies upon the alter

claims against BC. [See Plaintiffs' Brief, p. 34, fn. 8]. However, as demonstrated that Rotax is the alter ego of Bombardier. Accordingly, Plaintiffs cannot re[cover on] product liability against Bombardier.

## POINT III

### PLAINTIFFS CANNOT ESTABLISH JURISDICTION AGAINST ROTAX VIA THE LIMITED SHIPMENTS OF SPARE MOTORCYCLE PARTS TO PENNSYLVANIA AS SUCH CONDUCT DOES NOT RISE TO THE LEVEL OF MINIMUM CONTACTS.

A.   **Sporadic, Isolated Shipment of Products to the Forum State is Insufficient to Confer Personal Jurisdiction Over a Non-resident Defendant.**

In *Asahi Metal Industry Company v. Superior Court Of California, Solano County,* U.S. 102 (1987), the Supreme Court presented three separate tests to finding jurisdiction with respect to actions against producers and sellers of goods via the stream of commerce theory. The Third Circuit applies all three tests to ascertain whether a non-resident defendant's contacts with the forum state was sufficiently continuous and systematic to justify the exercise of jurisdiction. *Visual Security Concepts, Inc. v. KTV, Inc., 102 F.* Supp. 2d 601, 606-07 (E.D. Pa. 2000), *aff'd without opinion, 2001 U.S. App.* LEXIS *23555 (2001)* Justice O'Connor's test required that the placement of a product into the stream of commerce must be accompanied by some "additional conduct of the defendant that may indicate an intent or purpose to serve the market in the forum State." Asahi, 480 U.S. at 112. Justice Brennan's standard for personal jurisdiction requires a "regular and anticipated flow of the defendant's products" into the forum and that the defendant

-15 -

**390076.1**

"is aware that the final product is being marketed in the forum State, that [suit] cannot come as a surprise." Id. at 117. Justice Stevens' test requires [placement of a product] into the stream of commerce of sufficient "amount, value, and hazardous character." *Asahi,* 480 U.S. at 122.

Consistent with the *Asahi* tests, the District Courts of this jurisdiction have recognized that defendant's limited sales of a product into the forum [are not] sufficient to rise to the level of minimum contacts to justify [jurisdiction]. *Co. v. BBI Produce, Inc.,* 123 F. Supp. 2d 268, 272 (M.D. Pa. 2000); *Orange Products,* 118461 (E.D. Pa. *1995)* (no jurisdiction despite 2.7% of its precision plastic balls in Pennsylvania); *Romann v.*

*Geissener Mfg. Corp., 865 F. Supp. 255* (E.D. Pa. *1994)* (no jurisdiction despite 24% of its 9

auto-related sales within Pennsylvania); *Modern Mailers, Inc. v. Johnson & Quin,* Inc., 844 F. [Supp.] (E.D. Pa. *1994)* (no jurisdiction despite .5% direct sale to Pennsylvania); [*___ v. ___* ] *Corp.,* 785 F. Supp. *494 (M.D. Pa.* 1992) (no jurisdiction despite 1% of sales of footwear in Pennsylvania).

In *Rosenstein,* Plaintiff alleged that the Court should exercise jurisdiction on the ground that the defendant sold its products in the forum state. [However,] the Court declined to exercise jurisdiction finding that the sales were so limited that Defendant could [not be] on notice that it would be subject to suit in that state. "Pennsylvania strawberry sales do provide the minimum contacts required [despite] .05% of its produce to Pennsylvania purchasers. This small amount of busi[ness gave no] notice that it might be haled into court in Pennsylvania." Id.

-16-

3900761

Moreover, exercise of jurisdiction is improper where the limited business with the state is not even central to the non-resident's business. "A court should also consider whether a corporation's contacts with a given forum are 'central to the conduct of its business." *Molnlycke Health Care AB v. Dumex Medical Surgical,* 64 F. Supp.2d 448, 450 (E.D. Pa. 1999) *(citing Provident Nat'l Bank v. Cal. Fed S & L Ass'n,* 819 F.2d 434, 438 (3d Cir. 1987)). In *Molnlycke Health,* the court, finding that "there is no indication that Pennsylvania is an essential part of the conduct of [the nonresident's] business . . . [d]efendant has attested that it has no regular business in Pennsylvania and generates less than one percent of all its product line in this state." Id. at 452. The Court refused to allow the court to find that the small percentage of sales constitute 'continuous and systematic business within the state." Id. [citations omitted].

### B. Rotax's Limited Shipments of Spare Motorcycle Parts to Pennsylvania is Insufficient to Confer Personal Jurisdiction Over a Non-resident Defendant.

Rotax recently discovered purchase orders and invoices illustrating limited shipments of parts which were shipped to Pennsylvania at the direction of a customer. During the period 1997-2002, Rotax made limited shipments of spare motorcycle parts to Pennsylvania which totaled 18.136,36 Euros at the direction of its Wisconsin customer, Harley Davidson. [See Affidavit] The total value of those shipments represents only 1.81% of Rotax's overall sales to Harley during the referenced time period. Id. Rotax conducted all business with Harley Davidson through

' The records were produced to Plaintiffs' counsel subsequent to Plaintiffs' submission of their opposing brief because Rotax was not initially requested to produce same. *See* para. 12 of Affidavit of Josef Furhinger.

-17-

390076.)

Harley's corporate offices located in Milwaukee, Wisconsin. As reflected in Exhibit A, all deliveries to Harley Davidson were Ex works Gunskirchen, Austria. Id. It is Rotax's practice to designate all sales Ex works Gunskirchen. Id. The limited sales were made on a basis at the request of Harley due to Harley's obligation to properly service its customers. Id. Due to the emergent nature of these requests, Harley required 24 hour delivery which could only be accomplished through UPS or DHL expedited, as reflected in the invoices. Id.

Moreover, the invoices reflect that Harley's purchase order originated in Wisconsin. The only contact Rotax had with Pennsylvania in connection with these transactions was as a point of delivery under the special circumstances. Id. Rotax's customer and the final consumer are located in Wisconsin. Id. Likewise, the Society of Automotive Engineers' principal place of business is located outside Wisconsin. Id. The total amount of the invoices was necessary for Rotax business and which could not be obtained elsewhere. Id

In short, these isolated, sporadic shipments of spare motorcycle parts of limited volume, along with a small amount of written material, cannot constitute systematic and continuous contacts sufficient for this Court to exercise jurisdiction over Rotax.

-18-

-390076 1

### CONCLUSION

Based upon the reasons set forth above, BRP Rotax GmbH & Co. KG respectfully requests

FirstFirst Amended ComplaintFirst Amended Complaint be dFirst Amended Complaint be dismissed, as this Court does not ha
GmbHGmbH &GmbH & Co. KG. Defendant Bombardier Inc. also respectfully requestsGmbH & Co. KG. Defendant Bombardier
bebe dismissed, as it did not design, manufacture, sell, or otherwise distributebe dismissed, as it did not design, manufacture, sell,
subject of this litigation.

        Respectfully submitted,

        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
        Attorney for Defendants BRP-Rotax GmbH & Co. KG and Bombardier Inc.

  BY:

        Robert J. Kelly, Esquire
        ₃ ) 3 Washington Street - 18" Floor
        Newark, N.J. 07102
        And

  By:                          Jonathan Dryer, Esq.
        P.A. Attorney ID 34496
        The Curtis Center-Suite 1130East
        Independence Square West
        Philadelphia, PA 19106

Date: February 14, 2005

              _19-

390076.1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA MARIE SIMEONE, et al. | CIVIL ACTION NO. 02CV4852 |
| Plaintiffs, | **CERTIFICATION OF ROBERT J. KELLY, ESQ. IN SUPPORT OF DEFENDANTS' MOTION TO** |
| v. | **DISMISS PLAINTIFFS' COMPLAINT AND MOTION FOR** |
| BOMBARDIER-ROTAX GmbH & Co. KG, et al., | **SUMMARY JUDGMENT** |
| Defendants. | |

  1, ROBERT J. KELLY, Esq., of full age certifies as follows:

  I.  I am an attorney at law of the State of New Jersey and am a partner of the firm of

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys for Defendants, BRP-Rotax GmbH

& Co. KG f/k/a Bombardier-Rotax GmbH & Co. KG, Bombardier, Inc. and Bombardier

Corporation in the above-entitled matter.

  2.  1 am in active charge of handling this file and in such capacity, am fully familiar

with the facts stated herein.

3.  Annexed hereto as Exhibit I is a true and accurate copy of the Transcript of the Deposition Testimony of Josef Fiirlinger, dated December 3, 2004.

1 certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Dated: February 14, 2005                                             Robert J. Kelly, Esq.