IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA MARIE SIMEONE, Personal Representative of the Estate of Albert Francis Simeone, Jr., Deceased, and THERESA MARIE SIMEONE, In Her Own Right, and MARY ANN LENGYEL, Personal Representative of the Estate of George Lengyel, Deceased, and MARY ANN LENGYEL, In Her Own Right : : : : : : : : : : : | CIVIL ACTION NO. 02CV4852 JURY TRIAL DEMANDED |
| Plaintiffs, : : | |
| v. : : | |
| BOMBARDIER-ROTAX GmbH, et al. : : | |
| Defendants. : | |

**PLAINTIFFS' MOTION IN LIMINE
TO EXCLUDE HANDWRITTEN NOTES**

It is believed that Defendants may attempt to utilize certain handwritten notes that that Officer Yatsko found relating to the accident. At his deposition, Defendants marked three (3) pages of handwritten notes as Yatsko Exhibit No. 1. [Exhibit "A"] [1] While the first two (2) pages were written by Officer Yatsko, the third was prepared by an unknown individual and contains what are believed to be hearsay statements from a number of different sources:

> Q.   The third page of Yatsko 1 is more handwritten notes and I see you've got it in front of you. Is all the writing on that page yours?
>
> A.   *<u>No, none of it is.</u>*
>
> Q.   None of it is.
>
> MR. MATTIONI:  I'm sorry, which page?

---

[1] The opinions of Officer Yatsko contained within the first two (2) pages of these notes is the subject of a separate motion in limine which is incorporated herein by reference.

MR. KELLY:  Brother Ronald Francis –

BY MR. KELLY:

Q. Do you know whose writing it is?

A. I couldn't tell you.  There's no initials on it.  No, ***I don't know who wrote these notes.***

Q. ***Do you know how they became part of your notes for your file?***

A. ***Well, this isn't a file per se.***  This was just stuff that, when the investigation was terminated by our department, I felt that I should -- should keep some notes on it, so I collected everything that was pertinent or given to me as part of the investigation.

Q. Even though you didn't write what's on the third page of Yatsko 1, I'm going to just go through it with you briefly to see if you have any knowledge of where this information came from.  About a quarter of the way down it begins Blue/white aircraft pulled out in front of.  Do you see that?

A. Right.

Q. Do you have any knowledge of what that refers to?

A. ***Mr. Fuess had mentioned that the plane may have aborted its approach*** due to the fact that there was another airplane, ***which was never confirmed***, whether another airplane had lifted off in front of it causing it to reroute.

Q. The next line says, as best I can read it, FAA dash turbulence, air in front of other plane.

A. Yes, I don't --

Q. Do you have any knowledge of that?

A. ***That may have been speculation*** by the, you know, what -- what could have caused something like this.  Whoever took the notes may have been talking to someone and wrote a question down that they may have asked.  I can't tell you.  It's hard for me to comment on this page.

Q. I'm just asking in case anything does strike a chord with you in your memory.  The next line is dash right slash, do you see that?

A. Right.

2

Q. Does that have any significance to you?

A. No.

Q. Across the page, Accid P-R-E-V.

A. No.

Q. *Next line, Tape at airport. Were you aware of a tape?*

A. *They were looking for a possible tape. I don't know of any tape that existed of communications.*

Q. The next two lines, maybe if they are joined together, EMT people, Troop HID unit?

A. Who was on scene.

Q. Across the page from Troop HID unit it reads, Overweight, part 103 regulation, NTSB occurrence. Do you know what the significance of any of that is?

A. *No, again, speculation by the note-taker, I would imagine.* What could have caused it. I don't know. I can't comment.

Q. Next line is on the left, August 10th, 1900. Do you have any idea of the significance of that?

A. No.

Q. Next line, Airport manager mowing. Does that sound right?

A. That may have been what he was doing, Mr. Fuess.

Q. Next line, Airplane taking off not that close. Do you know what that means?

A. No.

Q. Do you know what the source of that comment was or who --

A. *I would imagine he was talking to Mr. Fuess* just because he wrote Airport manager above it.

Q. Next line, What ultralight saw taking off dash doing 360 degree turn. Do you know what the significance of that is?

3

> A. No, I don't. I can't comment on that.
>
> Q. And the next line, Sharp right turn dash steep on. Do you know what the significance of that is?
>
> A. No.
>
> Q. And then there are four lines. Have you ever heard of AG Rotors?
>
> A. No.
>
> Q. Gettysburg. No. Weather. Pilot info. Witness statements. None of that is yours, correct?
>
> A. No. ***That might have been*** what that person intended to gather.
>
> Q. Do you believe that was another member of your department who would have made those notes?
>
> A. Yes.
>
> Q. Could you -- is there any way you can narrow it down from there?
>
> A. No.

[Yatsko at pp. 77-83]

The statements in these notes are nothing more than classic hearsay: an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801. Even the broad hearsay exceptions contemplated by Rule 803 do not justify the use of these notes at trial.

> Fed. R. Evid. 803 provides as follows:
>
> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> **(8) Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, ***factual findings resulting from an investigation***

4

***made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.***

These handwritten notes are not the type of document contemplated by Rule 803(8) because the circumstances surrounding their creation indicate a lack of trustworthiness. As highlighted above, Officer Yatsko himself concluded that much of the "information" contained in these notes is nothing more than speculation. Further, the testimony of other witnesses either conflicts with or fails to support the conclusions contained in the notes.[2] Under the circumstance, admission of these notes into evidence would be improper and prejudicial to Plaintiffs.

For all of the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant their Motion.

Respectfully submitted,

*/s/ Alan D. Mattioni, Esq.*
Arthur Alan Wolk, Esquire
Alan D. Mattioni, Esquire
THE WOLK LAW FIRM
1710-12 Locust Street
Philadelphia, PA 19103
(215) 545-4220

---

[2] For example, Defendants deposed the York Airport manager not once, but twice, in a futile effort to establish that an aircraft pulled onto the runway in front of the accident aircraft as suggested in the notes.

5

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served upon the following via first class mail, postage prepaid, on September 30, 2005:

>Robert J. Kelly, Esquire
>WILSON ELSER MOSKOWITZ
>  EDELMAN & DICKER LLP
>33 Washington Street, 18th Floor
>Newark, NJ  07102

>**THE WOLK LAW FIRM**


>*/s/ Alan D. Mattioni, Esq.*
>Alan D. Mattioni, Esquire
>1710-12 Locust Street
>Philadelphia, PA  19103
>(215) 545-4220