IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA MARIE SIMEONE, Personal Representative of the Estate of Albert Francis Simeone, Jr., Deceased, and THERESA MARIE SIMEONE, In Her Own Right, and MARY ANN LENGYEL, Personal Representative of the Estate of George Lengyel, Deceased, and MARY ANN LENGYEL, In Her Own Right<br><br>Plaintiffs,<br><br>v.<br><br>BOMBARDIER-ROTAX GmbH, et al.<br><br>Defendants. | : : : CIVIL ACTION NO. 02CV4852 : : : : : JURY TRIAL DEMANDED : : : : : : : : |

**PLAINTIFFS' MOTION IN LIMINE
TO PRECLUDE CERTAIN
<u>TESTIMONY BY WILLIAM LOSEY</u>**

It is believed that Defendants may attempt to elicit certain opinions from William Losey, the pilot of the aircraft that was flying in loose formation with Messrs. Simeone and Lengyel on the accident flight.

At his deposition, Mr. Losey gave the following testimony:

Q.   Were you able to develop an understanding of who was piloting at the time of the crash?

A.   No.

Q.   The answer was no?

A.   No. I can tell you what I think but that's beside the point, I'm sure.

Q.   Why don't you tell us what you think and then I'll ask you how you got there.

A.   Okay, with the objections. I think that George was fond of flying these low patterns on the nontraffic side of the airport, which he had read about

in one of these -- I think an FAA circular that had to do with ultralight airport landings, and as I told you before, I was -- I never did this, although he had suggested we do it on many occasions. I think what they did, I think they powered back and they descended to make a low inside pattern on the opposite side of the airport, and when powering back they stalled the airplane. I think when the airplane stalled there was a struggle for the controls because just -- if the engine had stopped, they still shouldn't have went straight in. They went straight in. A couple of guys were reported to be on a roof doing a roof and saw the airplane go over and it just pitched over and went in and pirouetted in.[1] That was their explanation of what happened. I think that's what happened, there was a struggle for the controls. You don't have much time to sort it out.

Q. What makes you suggest that there was a struggle for the controls, just what you would expect to happen?

MR. MATTIONI: Objection to the form.

THE WITNESS: Pardon me?

MR. MATTIONI: Just noting an objection.

BY MR. KELLY:
Q. When you say there was a struggle for the controls --

A. I'm guessing. I'm guessing, it is true, because I know the temperament of Mr. Simeone.

Q. Would you elaborate on that, please?

A. He was a -- the man had -- had more confidence than ability. Much, much more confidence than ability. Much, much, much more.

[Losey at pp. 82-85]

It should be noted, however, that Mr. Losey never flew with Mr. Simeone in any aircraft, let alone an Interplane Skyboy.[2]

---

[1] Actually, the only witness to the accident, Ron Madison, testified that the airplane did NOT spiral, spin, or "pirouette" but rather glided into the corn field.

[2] On the other hand, when Mr. Losey wished to become an ultralight pilot, he sought out Mr. Lengyel for flight instruction and considered him to be a "cautious and safe" instructor. [Losey at p. 114]

Rule 702, *Testimony by Experts,* provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

At the risk of overstating that obvious, aircraft accident investigation is not a subject for lay witnesses as specialized knowledge is required in order to assist the trier of fact. *See*, <u>Springer v. U.S.</u>, 819 F.2d 1139 (4th Cir. 1987). Although Mr. Losey is an ultralight pilot, he has no training as an accident investigator and never investigated an aircraft accident. [Losey at p. 148] In short, he is not qualified to express any opinions concerning the crash.

Fed. R. Evid. 701, *Opinion Testimony by Lay Witness*, states:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

As discussed in <u>Asplundh Mfg. Div. v. Benton Harbor Engineering</u>, 57 F.3d 1190 (3rd Cir. 1995),

the admissibility of opinion evidence under the strictures of Rule 701 is not without limit. Rule 701's requirement that the opinion be "rationally based on the perception of the witness" demands more than that the witness have perceived something firsthand; rather, it requires that the witness's perception provide a truly rational basis for his or her opinion. Similarly, the second requirement--that the opinion be "helpful to a clear understanding of the witness's testimony or the determination of a fact in issue"--demands more than that the opinion have a bearing on the issues in the case; in order to be "helpful," an opinion must be reasonably reliable. In other words, Rule 701 requires that a lay opinion witness have a reasonable basis grounded either in *experience or specialized knowledge* for arriving at the opinion that he or she expresses.

3

*Id*. at 1201.

Mr. Losey's assertions concerning the "temperament" of Mr. Simeone as related to flying aircraft (and his suggestion that Mr. Simeone had "more confidence than ability") cannot possibly be rationally based on the perception of the witness because Mr. Losey never flew with Mr. Simeone. [3]

For all of the foregoing reasons, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs' Motion.

Respectfully submitted,

*/s/ Alan D. Mattioni, Esq.*
Arthur Alan Wolk, Esquire
Alan D. Mattioni, Esquire
THE WOLK LAW FIRM
1710-12 Locust Street
Philadelphia, PA 19103
(215) 545-4220

---

[3] Defendants may suggest that Mr. Losey is permitted to render this opinion because he later became an ultralight flight instructor. However, it doesn't change the fact that he never flew with Mr. Simeone. Further, it seems to be no coincidence that he himself was involved in an accident in which there was a "struggle for the controls" with a student. [Losey at pp. 14-19]

4

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served upon the following via first class mail, postage prepaid, on September 30, 2005:

>Robert J. Kelly, Esquire
>WILSON ELSER MOSKOWITZ
>  EDELMAN & DICKER LLP
>33 Washington Street, 18th Floor
>Newark, NJ  07102

>**THE WOLK LAW FIRM**

>*/s/ Alan D. Mattioni, Esq.*
>Alan D. Mattioni, Esquire
>1710-12 Locust Street
>Philadelphia, PA  19103
>(215) 545-4220

5