**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THERESA MARIE SIMEONE, Personal | : | |
| Representative of the Estate of Albert Francis | : | |
| Simeone, Jr., Deceased, and THERESA MARIE | : | CIVIL ACTION NO. 02CV4852 |
| SIMEONE, In Her Own Right, and | : | |
| MARY ANN LENGYEL, Personal | : | |
| Representative of the Estate of George Lengyel, | : | |
| Deceased, and MARY ANN LENGYEL, | : | JURY TRIAL DEMANDED |
| In Her Own Right | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BOMBARDIER-ROTAX GmbH, et al. | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE**
**OPINIONS OF OFFICER JOSEPH YATSKO AND HANDWRITTEN NOTES**

Defendants BRP-Rotax GmbH & Co. KG f/k/a Bombardier-Rotax GmbH & Co. KG and

Bombardier Inc. (collectively herein, "Defendants") submit the following Opposition to

Plaintiffs' motion *in limine* to exclude opinions of Officer Joseph Yatsko and handwritten notes:

Defendants incorporate by reference, their Memorandum of Law and Reply

Memorandum of Law in connection with their motion for summary judgment.

Plaintiffs seek to exclude, (1) the opinions contained in Officer Yatsko's reports/notes

(Exhibit "A"); and (2) handwritten notes (one (1) page, last page) contained within Officer

Yatsko's reports/notes (Exhibit "B"). Plaintiffs seek to exclude Officer Yatsko's conclusions

(which Plaintiffs refer to as "opinions"), claiming that they  amount to expert opinion pursuant to

444481.1

Fed. R. Evid. 702 and that Officer Yatsko is not a qualified expert. Plaintiffs contend that, at his deposition, "Officer Yatsko was…asked by Defendants to offer expert opinions on virtually every question in this case." This assertion by Plaintiffs is baseless. At his deposition, Officer Yatsko was asked only to answer questions about the investigation relating to the accident which he conducted, an investigation which Plaintiffs do not dispute Officer Yatsko performed. Plaintiffs also seek to exclude one (1) page of handwritten notes (Exhibit "B", last page) contained within Officer Yatsko's reports/notes based on Fed. R. Evid. 803(8), which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> **(8) Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, *factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.*

First, Plaintiffs incorrectly assert that Defendants will attempt offer expert "opinions" of Officer Yatsko at trial. Defendants do not seek expert testimony from Officer Yatsko. In fact, Defendants will not seek to seek to elicit from Officer Yatsko that he concluded that "pilot error was the cause of the crash." (Exhibit "A"). However, Defendants will seek to introduce the "records, reports, statements, or data compilations" and Officer Yatsko's "factual findings" contained within the records, pursuant to Fed. R. Evid. 803(8)(C). At the time of the accident, Officer Yatsko was a member of the Jackson Township, Pennsylvania Police Department. Officer Yatsko was responsible for conducting an investigation in connection with the subject accident. The Rules of Evidence permit Officer Yatsko to testify about what his investigation

444481.1

consisted of and the conclusions that he reached as a result of his investigation.  Specifically, the Rules permit Officer Yatsko to testify about his "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8)(C).  There is nothing whatsoever to indicate, and Plaintiffs have not offered any evidence, that Officer Yatsko's sources of information lack trustworthiness.  Therefore, the report (Exhibit "A") should be admissible as an exception to the Hearsay rule. Fed. R. Evid. 803(8)(C)

Plaintiffs' attempt to frame Officer Yatsko's conclusions as "expert testimony" is another attempt by Plaintiffs to exclude relevant evidence.  At trial Plaintiffs can ask Officer Yatsko questions about his work experience or any other question they desire and which is permitted by the Rules.

Plaintiffs also seek to exclude the handwritten notes that are contained within Officer Yatsko's records (Exhibit "B"), which were assimilated in connection with his investigation of the accident.  The notes contained within Exhibit B consist of two (2) pages of notes written by Officer Yatsko and one (1) page containing handwritten notes from an unknown source.  Defendants do not contest Plaintiffs position concerning the one (1) page containing handwritten notes from an unknown source.  However, it is Defendants' position Officer Yatsko's handwritten notes, which are part of his investigation records, are admissible under Fed. R. Evid. 803(8)(C).  Since the handwritten notes are part and parcel of Officer Yatsko's records of his investigation, they should not be excluded.  Again, Plaintiffs can question Officer Yatsko about how the notes came to be in his records and the jury can make a credibility assessment of same.

Additionally, all of Officer Yatsko's opinions and reports may be relied upon by Defendants' experts in reaching their conclusions. Fed. R. Evid. 703 states, in pertinent part:

-3-

> The facts or data in the particular case upon which an expert bases
> an opinion or inference may be those perceived by or made known
> to him at or before the hearing. If of a type reasonably relied upon
> by experts in the particular field in forming opinions or inferences
> upon the subject, the facts or data need not be admissible in
> evidence.

Clearly, based on Fed. R. Evid. 703, Officer Yatsko's opinions and reports may be relied upon by Defendants' experts because experts are permitted to base their opinions on information that is perceived by or made know to an expert. In the instant case, even though the information may be inadmissible for other purposes, Defendants' experts may rely on reports and documents prepared by a Police Officer in connection with an investigation, the kind of information that experts rely on all the time.

Based on the foregoing, the evidence that Plaintiffs seek to exclude should not be excluded and, pursuant to Fed. R. Evid. 803(8)(C)1, Defendants should be permitted to introduce Officer Yatsko's testimony and investigation records (including all pages containing handwritten notes) and his factual findings contained within. Further, Defendants' experts, pursuant to Fed. R. Evid. 703, should be permitted to rely on, and testify about, Officer Yatsko's investigation records.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorney for Defendant BRP-Rotax GmbH & Co. KG

BY:    /s/ Robert J. Kelly
       Robert J. Kelly, Esquire
       33 Washington Street – 18th Floor
       Newark, N.J.  07102

444481.1

And

By:    Jonathan Dryer, Esq.
         P.A. Attorney ID 34496
         The Curtis Center-Suite  1130 East
         Independence Square West
         Philadelphia, PA 19106

Date:  October 6, 2005

444481.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA MARIE SIMEONE, Personal Representative of the Estate of Albert Francis Simeone, Jr., Deceased, and THERESA MARIE SIMEONE, In Her Own Right, and MARY ANN LENGYEL, Personal Representative of the Estate of George Lengyel, Deceased, and MARY ANN LENGYEL, In Her Own Right | : : : CIVIL ACTION NO. 02CV4852 : : : : JURY TRIAL DEMANDED : : |
| Plaintiffs, | : : |
| v. | : : |
| BOMBARDIER CORPORATION GmbH, et al. | : : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I, Christopher W. McClanahan, certify as follows:

I am an attorney with the law firm of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, attorneys for BRP-Rotax GmbH & Co. KG f/k/a Bombardier-Rotax GmbH & Co. KG and Bombardier Inc.

I certify that the foregoing Opposition to motion *in limine* was forwarded to the United States District Court, Eastern District of Pennsylvania, pursuant to the direct filing system on this same date.

I further certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

/s/ Christopher W. McClanahan
Christopher W. McClanahan

Dated: October 6, 2005

444481.1

# EXHIBIT A

#: 00-1538                    COMPLAINT REPORT

Page No.    1
08/07/2000

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COMPLAINT NUMBER -> 00-1538

   Received by: JOSEPH YATSKO

   Date/Time received: 07/22/2000 @ 12:49  How received: Radio dispatch

   Time dispatched: 12:49   Time arrived: 12:52   Time cleared: 18:00

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COMPLAINANT -> YCC

   Address:
   City:                    State:        Zip:            Phone: (717

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TYPE OF COMPLAINT -> Traffic accident

   Nature of     T/O WAS DISPATCHED VIA PHONE BY YCC WHO WAS CONCERNED ABOUT
   complaint     PHONE CALLS THEY RECEIVED REGARDING A POSSIBLE PLANE DOWN
                 APPROACHING THOMASVILLE AIRPORT

   How Handled: Officer dispatched
   Location code: T       Location dispatched: YORK AIRPORT

   Officer dispatched:  JOSEPH YATSKO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TIME ANALYSIS

   Queue time     <time received to dispatched>  =    0 minutes
   Travel time    <time dispatched to arrived>   =    3 minutes
   Response time  <time received to arrived>    =    3 minutes
   Action time    <time arrived to cleared>     =  308 minutes

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Yatsko
EXHIBIT NO. 4
KM 6-21-05

Jackson Township Police Department

# 00-1538          INCIDENT REPORT          Page No.
08/07/2000

PLANE DOWN IN CORNFIELD

```
----------------------------------------------------------------
     Date occurred:   /  /                    Date reported: 07/22/200
S    Time occurred: 12:15  to  12:15          Time reported: 12:49
T                                             Jurisdiction: 66214
A    Officer dispatched: JOSEPH YATSKO
T    Reviewed by:                             Date reviewed:
U
S    Cleared by:                              Date cleared:
     Case status:                             Date closed:
----------------------------------------------------------------
     ALBERT F SIMEONE JR              DOB: 11/01/1948 Age at incident: 51
V    52 PUSEY MILL RD                 Sex: M Race: WHI Ethnicity: NONH
I    COCHRANVILLE, PA  19330          SSN:    -  -
C                                     Interviewed?
T                                     Statement taken?      Resident?
I
M    Hospital:                        Doctor:
     Transported by:
     Injury type: Death

     Related offenses:
----------------------------------------------------------------
     GEORGE J LENGYEL JR              DOB: 06/04/1956 Age at incident: 44
V    3 CANNONEER CIRCLE               Sex: M Race: WHI Ethnicity: NONH
I    CHADSFORD, PA  19317             SSN:    -  -
C                                     Interviewed?
T                                     Statement taken?      Resident?
I
M    Hospital:                        Doctor:
     Transported by:
     Injury type: Death

     Related offenses:
----------------------------------------------------------------
P    WILLIAM LOSEY                    Association: Witness
E    329 FAGGSMANOR RD                DOB:   /  /    Age at incident:
R    COCHRANVILLE, PA  19330          Sex: M Race: WHI Ethnicity: NONH
S                                     SSN:    -  -
O
N    Interviewed?    Statement taken?
----------------------------------------------------------------
P    WILLIAM MILLER                   Association: Other
E    400 AIRPORT RD                   DOB:   /  /    Age at incident:
R    NEW CUMBERLAND, PA  17070        Sex: M Race: UNK Ethnicity: UNK
S    (717) 774-8271                   SSN:    -  -
O
N    Interviewed?    Statement taken?
----------------------------------------------------------------
```

Jackson Township Police Department

Sequence: 01                    INCIDENT SUPPLEMENTAL REPORT                    Page No.
                                                                              08/07/2000
#00-1538                         PLANE DOWN IN CORNFIELD
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Reported by: JOSEPH YATSKO                  Date reported: 07/22/2000
Reviewed by:                                Date reviewed:   / /

IT APPEARS, ACCORDING TO WITNESS'S, CALLS TO THE AIRPORT WERE
MADE AT 1220 HRS, REGARDING A PLANE CRASH, NO INFO WAS TAKEN BY
THE AIRPORT.  HOWEVER, NO CALLER INFO WAS RECORDED. AN AREA OF
KBS RD WAS GIVEN , EXTENDING THE SEARCH FOR MILES.  AIRPORT
OFFICIALS CONDUCTED THEIR OWN SEARCH PRIOR TO CALLING YCC.
    I WAS DISPATCHED AT 1249 HRS, BY YCC. UPON ARRIVAL AT 1252 HRS,
I MET WITH AIRPORT & CIVIL AIR PATROL PERSONNEL, AS WELL AS PILOT
WILLIAM LSOEY WHO EXPLAINED 2 PLANES,HIS INCLUDED, HAD DEPARTED
FROM SE PENNA, ENROUTE TO THE CHAMBERSBURG AIR SHOW, STOPPING TO
REFUEL SEVERAL TIMES ALONG THE WAY. THE AIRCRAFT RAN INTO SOME
HEADWINDS, WHICH FORCED THEM TO REFUEL AT THOMASVILLE AIRPORT,
UNEXPECTEDLY.  MR LOSEY STATES HE WAS ABLE TO LAND, HOWEVER HE
WAS CERTAIN THAT HIS COMPANIONS WERE NOT ABLE TO LAND.
    AIRPORT MANAGER RICH FOESS ADVISED THE PLANE WAS FORCED INTO
AT LEAST MISSED APPROACH DUE TO COMPLICATIONS AT THE AIRPORT AND
HAD TO CIRCLE EAST, THEN SOUTH TO LINE UP FOR ANOTHER LANDING. IT
NEVER RETURNED.  I ASKED YCC TO HAVE FIRE DEPARTMENTS RESPOND TO
ASSIST IN THE SEARCH ADN THE AIRPORT HAD SEVERAL PLANES LOOKING.
DUE TO CROP HEIGHT AND LACK OF MANPOWER, I DID REQUEST A
HELICOPTER ASSIST FROM PA STATE POLICE.
    THE HELICOPTER WAS ABLE TO FIND THE PLANE W/I MINUTES OF ITS
ARRIVAL.. EMS ARRIVED AT THE CRASH SITE WITH MYSELF AND CONFIRMED
2 FATALITIES.  T/O DID SECURE THE SCENE FOR THE CORONER'S
ARRIVAL.  NTSB & FAA OFFICIAL INVESTIGATIONS CONTINUE BY THOSE
DEPARTMENTS.
    THE AIRCRAFT WAS IMPOUNDED TO OLD FORGE BY THE SAME FOR FAA
OFFICIALS.  THEY MAY HAVE ISSUES WITH THE REGISTRATION,
CLASSIFICATION AND PILOTING OF THIS SMALL 2-SEAT AIRCRAFT, TAIL #
A10AFS.  SHOULD THIS AIRCRAFT BE LABELED OR CLASSED AS AN
ULTRALIGHT, THE INVESTIGATION WILL BE ASSUMED BY THIS DEPARTMENT
AND WE WILL CLOSE OUT SAME.  IF IT IS DETERMINED THE AIRCRAFT IS
AN AIRPLANE, NTSB WILL ASSUME THAT RESPONSIBILITY.

Jackson Township Police Department

Sequence: 02                     INCIDENT SUPPLEMENTAL REPORT                    Page No.  1
                                                                                08/07/2000
00-1538                    .     PLANE DOWN IN CORNFIELD
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Reported by: JOSEPH YATSKO                    Date reported: 07/25/2000
Reviewed by:                                  Date reviewed:    /  /

     I, OFFICER YATSKO, HAVING BEEN ASSIGNED BY CHIEF RUFF TO
COMPLETE AN INVESTIGATION OF THE ULTRA LIGHT TRAINING AIRCRAFT
(A10AFS) HAVE FORMED AN OPINION AS TO THE CAUSE OF THE CRASH.
DUE TO MY LACK OF KNOWLEDGE OF AIRCRAFT PILOTING IN GENERAL, I
WAS FORCED TO RELY HEAVILY ON OUTSIDE AGENCIES TO PIECE TOGETHER
THE FACTS OF THIS ACCIDENT WHICH CLAIMED 2 LIVES.
     PHYSICAL EVIDENCE, WHICH HAS BEEN RECORDED, AS WELL AS
WITNESS TESTIMONY AND CITIZEN INFORMATION, WOULD SUGGEST THE
ULTRA LIGHT DID COME INTO CONTACT WITH POWER LINES SOUTHEAST OF
THE RUNWAY, AFTER HAVING TO ABORT ITS LANDING ATTEMPT DUE TO
CIRCUMSTANCES BEYOND THE PILOT'S CONTROL AT THE YORK AIRPORT.
     SCUFF MARKS BEGINNING ON THE WINDSHIELD FORMED IN A LINEAR
MANNER CONSISTENT WITH POWER LINES, DID TRAVEL UP OVER THE
ENCLOSED COCKPIT, BENDING AN EXPOSED ANTENNA AND SCARRING THE
LEFT WING.  THESE MARKS ARE ALL IN LINE AND SYMETRICAL AS IF THE
PLANE WAS TURNING WITH ITS RIGHT WING DIPPED DOWN.
     HOMEOWNERS AND LEASEES OF PROPERTY ON KBS RD AND SPRING FORGE
PLAZA REPORT ELECTRICITY DISRUPTIONS AT APPROXIMATELY THE SAME
TIME AS THE PLANE WOULD HAVE GONE DOWN. (SUPPORTED BY A STOPPED
TIMEPIECE ON THE PLANE WHEN FOUND).  INSPECTION OF THE POWER
LINES REVEAL NO ORANGE BALLS CONNECTED TO THE POWER LINES,
POSSIBLY LIMITING VISIBILITY, HOWEVER THERE WERE NO ADVERSE
WEATHER CONDITIONS AT THE TIME OF THE PLANE'S APPROACH.
     I WAS ALSO ON SCENE WHEN MEDICAL PERSONNEL DID ARRIVE AT THE
CRASH SITE, AFTER HAVING BEEN FOUND BY PA. STATE POLICE
HELICOPTOR.  THE TWO OCCUPANTS WERE DECEASED AND, ACCORDING TO
CORONER BARRY BLOSS, DIED INSTANTLY UPON IMPACT.
     CHIEF RUFF HAS SINCE TURNED OVER ANY AND ALL PHYSICAL EVIDENCE
TO FAMILY MEMBERS OF THE DECEASED, THUS HALTING MY INVESTIGATION.
TTHERE IS NO REASON TO PURSUE ANY FURTHER FROM THE POLICE
DEPARTMENT'S PERSPECTIVE, AS I DO NOT BELLIEVE THESE DEATHS ARE
IN ANY WAY SUSPICIOUS.
     MY INVESTIGATION LEADS ME TO BELIEVE PILOT ERROR WAS THE
CAUSE OF THE CRASH AND FATALITIES.  I WOULD LIKE TO STRESS THAT
THIS IS A LAY PERSON'S OPINION, IN THAT I HAVE NO FORMAL TRAINING
IN THESE TYPES OF INVESTIGATIONS.  I WAS IN THE PROCESS OF A MORE
FORMAL INVESTIGATION AND MADE ARRANGEMENTS TO HAVE DIFFERENT
PARTS OF THE AIRCRAFT SENT OUT FOR MECHANICAL INSPECTION.  THIS
IS NOW IMPOSSIBLE AS THE PLANE HAS BEEN RELEASED BY CHIEF RUFF.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Jackson Township Police Department

# EXHIBIT B



Preliminary Findings -

1210 - Fuess sees ZX miss Approach plane Banks Crisp.

1215 - witnesses say electricity flashes off for seconds

1216 - 1220 witnesses say plane crashes and call Airport

- Airport Launches its own investigation
  Does Not contact RCC.

- Bill Losey Advises his Travel companion
  Are Past Due

1248 - RCC is Advised.

1249 - County Dispatches myself, I called for
  Assistance in the Search via fire Dept.

1408 - Plane found By RS.P. helicopter.

1430 - Pronounced Dead Coroner.

1530 - PSP IR Unit Begins Photography

- Investigation Begins.

- Fused Plane Together at 01's farther
  Service Station. The following Are
  Pertinent facts -

- Scuff marks found on Nose, windshield and
  Canopy indicating the plane may have
  Struck A power Line.

- Pieces of fiberglass found in fuel filter

- Map indicates Air route plotted for their
  Due to need for fuel.

KMW-21-05
EXHIBIT NO.
J09590

— ANTENNA found to have Been Bent
In A MANNER Consistent with A linear
object passing over the Cockpit in
Contact with the plane.

— only 38 hrs on ENGINE (Run time)
ENGINE NOT SIEZED, MAINTAINED
Compression.

Caller    1517 KBS Rd    Witness

Brother- Ronald Francis Sr    Simone

☎ 610 622 1060    Phone/Fax

610 656 3111    Cell

Blue/White aircraft pulled out in front of

FAA - turbulance air in front of the plane

DASH Right/                           Accid Prov.

TAPE AT AIRPORT.

EMT People.

Troop H ID Unit                OVER WEIGHT

                               Part 103 Regulation

                               NTSB -

Aug 10th 1900                    Occurrance

Airport Manager - mowing

Airplane    Taking off    hit    that close-

what ultra light    saw    Taking off -    Done 360° Turn

Sharp Right Turn - Stopped

AG Rotors    Gettysburg PA

Weather,

Pilot Info

Witness Statements.