IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA MARIE SIMEONE, Personal Representative of the Estate of Albert Francis Simeone, Jr., Deceased, and THERESA MARIE SIMEONE, In Her Own Right, and MARY ANN LENGYEL, Personal Representative of the Estate of George Lengyel, Deceased, and MARY ANN LENGYEL, In Her Own Right<br><br>Plaintiffs,<br><br>v.<br><br>BOMBARDIER-ROTAX GmbH, et al.<br><br>Defendants. | : : : : : : : : : : : : : : : : : : : | CIVIL ACTION NO. 02CV4852<br><br><br>JURY TRIAL DEMANDED |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PREVIOUS PRECAUTIONARY LANDING BY MR. SIMEONE

Defendants BRP-Rotax GmbH & Co. KG f/k/a Bombardier-Rotax GmbH & Co. KG and Bombardier Inc. (collectively herein, "Defendants") submit the following Opposition to Plaintiffs' motion *in limine* to exclude evidence of a previous precautionary landing by Mr. Simeone:

Defendants incorporate by reference, their Memorandum of Law and Reply Memorandum of Law in connection with their motion for summary judgment. The evidence that Plaintiffs seek to exclude shows the Decedents' awareness of the risks of ultralight flying and demonstrates the knowledge and experience base that Decedents brought to this situation, and supports Defendants' contention that the cause of the accident was pilot error.

444748.1

Plaintiffs, in their motions, seek to exclude what they call a previous "precautionary landing" (and which Defendants term an "emergency landing), which occurred shortly before the July 22, 2000 accident. Decedent Simeone was flying with another individual in his Interplane Skyboy ultralight aircraft when, as Plaintiffs correctly point out, the throttle became stuck in the open position. Plaintiffs imply that Decedent Simeone's <u>only</u> option was to immediately shut down the engine and make a "precautionary landing." In any event, the aircraft made an emergency landing in a cornfield and struck a rock, causing damage to at least its landing gear. Plaintiffs seek to exclude evidence of this prior emergency landing because, as Plaintiffs allege, it "does not establish that Mr. Simeone had knowledge of the defects that caused the fatal accident, it is simply not relevant to the issues in this case (Plaintiffs motion, page 2). As the Court is aware, Defendants unequivocally deny that the engine was defective and that this contention by Plaintiffs is only a theory, one which they will be unable to prove at trial. For the reasons set forth below, Plaintiffs arguments fail and Defendants suspect that the real reason for the instant *in* limine motion is because Plaintiffs recognize that the precautionary landing firmly establishes that Decedent Simeone had prior experience making an engine-off landing, and should have been able to land the subject aircraft safely, had the engine failed.

Plaintiffs first contend that this evidence may not be used by Defendants to support an assumption of risk defense. This argument lacks merit. Plaintiffs appear to argue that decedents must have been aware of allegedly defective components in the aircraft engine in order for decedents to have assumed any risk. In other words, by way of example, Plaintiffs contend that Decedents would have needed to be aware that the engine had a faulty carburetor and proceeded in spite of this knowledge. This logic is flawed. "Assumption of risk is based on the notion that, by taking the chance of injury from a known risk, the plaintiff has consented to relieve the

defendant of its duty toward him." <u>Wagner v. Firestone Tire & Rubber Co.</u>, 890 F.2d 652 (3d Cir. 1989). <u>See</u> <u>Green v. Sanitary Scale Co.</u>, 431 F.2d 371, 374 (3d Cir. 1970); <u>Restatement (Second) of Torts</u> § 496C. The defense is predicated on a plaintiff's "subjective awareness of the risk inherent in the activity and a willingness to accept it. <u>Mucowski v. Clark</u>, 404 Pa. Super. 197, 201 (1990), quoting <u>Berman v. Radnor Rools, Inc.</u>, 374 Pa. Super. 118, 136 (1988).

Defendants should be able to admit this evidence in order to demonstrate Decedent Simeone's knew or should have known that flying ultralight aircraft is dangerous and could result in injury or death. A jury, as the reasonable trier of fact, should be make the determination whether Decedent Simeone "should have some apprehension about flying in general" as Plaintiffs suggest, or whether this evidence, considered in conjunction with all of the other evidence made Decedent Simeone aware of the real possibilities of injury or death.

Plaintiffs next contend that evidence of this prior landing should not be admitted into evidence because it is not relevant. This assertion, too, is not correct. This evidence certainly has the "tendency to make the existence of [a] fact this is of consequence to the determination of the action more probably or less probably that it would be with the evidence." <u>Fed. R. Evid.</u> 401 The evidence is relevant for a variety of reasons. It is Defendants' position that this emergency landing further provided Decedent Simeone with knowledge that flying ultralight aircraft was dangerous. Additionally, it clearly establishes that Decedent Simeone had previously made an off-engine landing, which supports Defendants' argument that the accident was the result of pilot error because he should have been able to land the aircraft safely at the time of this accident, if the engine had failed. Specifically, assuming Plaintiffs' contention that the engine failed did occur (which Defendants do not concede), then this evidence demonstrates that Decedents failed to properly execute an emergency landing, something they know how to and should have been

able to perform. Moreover, Decedent Simeone had instruction on how to handle situations involving engine failure. Ben Dawson, at his deposition, confirmed this:

> Q. Do the rules include a rule for being able to land the aircraft in case of sudden engine failure?
>
> \*\*\*
>
> A. Yes.
>
> Q. Did you discuss that with Mr. Simeone at some point?
>
> A. It says I did stall stuff there. And yes, engine out procedures are—like I say, those are taught early on. After just a few flights we reduce the throttle to idle and show them how the plane will glide and we tell them what speed the airplane should be at that point. We actually go up to 1500, 2000 feet and reduce the power and then glide down as much as 500 feet or so and demonstrating how much the plane will glide and making turns. Turning while the engine is at idle is also taught as part of the process.

[Dawson deposition Page 31.]

Moreover, this evidence, coupled with all of the other evidence set forth in Defendants' summary judgment motion papers, demonstrates Decedent Simeone's knowledge of the risks and goes directly towards the issue causation, an element that Plaintiffs must prove under their strict liability and negligence theories. Defendants contend that the cause of the accident was pilot error. This evidence is just another manifestation of Decedent Simeone's knowledge, demonstrating that he knew or should have known of the risks involved with flying ultralight aircraft and the possibility that injury or death could result. Hence, the evidence tends to show that Decedents, armed with this knowledge, failed to us it and committed pilot error.

Finally, Plaintiffs argue that the evidence, even if relevant, should not be admitted, pursuant to Fed. R. Evid. 403, because "the previous precautionary landing was the result of an entirely different problem, totally unrelated to the defects that caused the fatal crash, the jury might be swayed to conclude that Mr. Simeone assumed some general risk of flying ultralight

aircraft-a result apparently desired by Defendants" (Plaintiffs' motion, page 2). This evidence will not confuse or sway the jury. It will only make the jury aware of Decedent Simeone's knowledge of the risks associated with fly ultralight aircraft and that he had prior experience in engine-off landings.

Based on the foregoing, the evidence of previous precautionary landing by Decedent Simeone should not be excluded.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorney for Defendant BRP-Rotax GmbH & Co. KG

BY: /s/ Robert J. Kelly
Robert J. Kelly, Esquire
33 Washington Street – 18th Floor
Newark, N.J. 07102

And

By: Jonathan Dryer, Esq.
P.A. Attorney ID 34496
The Curtis Center-Suite 1130 East
Independence Square West
Philadelphia, PA 19106

Date: October 6, 2005

-5-

444748.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA MARIE SIMEONE, Personal Representative of the Estate of Albert Francis Simeone, Jr., Deceased, and THERESA MARIE SIMEONE, In Her Own Right, and MARY ANN LENGYEL, Personal Representative of the Estate of George Lengyel, Deceased, and MARY ANN LENGYEL, In Her Own Right<br><br>            Plaintiffs,<br><br>v.<br><br>BOMBARDIER CORPORATION GmbH, et al.<br><br>            Defendants. | : CIVIL ACTION NO. 02CV4852<br>:<br>:<br>: JURY TRIAL DEMANDED<br>: |

### CERTIFICATE OF SERVICE

I, Christopher W. McClanahan, certify as follows:

I am an attorney with the law firm of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, attorneys for BRP-Rotax GmbH & Co. KG f/k/a Bombardier-Rotax GmbH & Co. KG and Bombardier Inc.

I certify that the foregoing Opposition to motion *in limine* was forwarded to the United States District Court, Eastern District of Pennsylvania, pursuant to the direct filing system on this same date.

I further certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

                                          /s/ Christopher W. McClanahan
                                          Christopher W. McClanahan

Dated: October 6, 2005

444748.1